1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CURTIS MCWASHINGTON, EDWARD M. MESHURIS, EMILY SANCHEZ, JAMES ALBRIGHT, and CORY R. CROUCHLEY, individually as participants in the Nordstrom 401(k) Plan and as representatives of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORDSTROM, INC., BOARD OF DIRECTORS OF NORDSTROM, INC., NORDSTROM 401K PLAN RETIREMENT COMMITTEE,<br><br>Defendants. | No. 2:24-cv-1230<br><br>CLASS ACTION COMPLAINT |

10
11
12
13
14
15
16
17
18
19

20    1.    Plaintiffs Curtis McWashington, Edward M. Meshuris, Emily Sanchez, James

21  Albright, and Cory R. Crouchley ("Plaintiffs"), participants in the Nordstrom 401(k) Plan

22  ("Plan" or "Nordstrom Plan"), bring this action under the Employee Retirement Income Security

23  Act of 1974, 29 U.S.C. § 1001, *et seq*., ("ERISA") on behalf of the Plan under 29 U.S.C.

24  §§ 1132(a)(2) and (3), and under Fed. R. Civ. P. 23 as representatives of a class of participants

25  and beneficiaries of the Plan, against defendants Nordstrom, Inc. ("Nordstrom"), the Board of

26

Directors of Nordstrom, Inc. ("Board"), and the Nordstrom 401(k) Plan Retirement Committee ("Plan Committee") (collectively, "Defendants") for breach of ERISA's fiduciary duties and transactions prohibited by ERISA. The claims are brought on behalf of the Plan and seek to remedy losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

2.    Nordstrom and the Board are the sponsor of the Plan.

3.    The Plan Committee is the plan administrator of the Plan and the named fiduciary of the plan identified in the Plan document. The Plan Committee is also expressly vested with discretionary authority to determine whether Plan forfeitures would be used to reduce expenses paid by Plan participants or reduce Nordstrom's obligations to make future contributions to the Plan.

4.    All Defendants are either express or de facto ERISA fiduciaries under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), with some level of discretionary authority or control over the matters set forth herein. As a result of their relationships with Nordstrom, all Defendants were affiliates of Nordstrom and shared interests with Nordstrom.

5.    Defendants failed to fulfill their fiduciary obligation to manage the Plan prudently and loyally in the interests of the Plan and its participants and engaged in prohibited transactions by engaging in self-dealing with Plan assets.

## INTRODUCTION

6.    With 104,811 active participants as of December 31, 2022 and $3.4 billion in net assets, the Plan is one of the largest retirement plans in the country.  It ranks in the top 0.01% of over 500,000 United States 401(k) plans in terms of the number of participants and the top 0.04% of plans in terms of the value of its assets.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

7.     As set forth in more detail below, Defendants, as fiduciaries of the Plan, failed to fulfill their fiduciary duties to prudently and loyally ensure the Plan's total recordkeeping and other administrative expenses were reasonable and not excessive, as well as engaged in self-dealing with regard to Plan forfeitures in violation of ERISA fiduciary prohibited transaction rules.

8.     401(k) defined contribution plans such as the Nordstrom Plan have become America's primary retirement savings vehicle.  As with all defined contribution retirement plans that require participants to bear the costs of plan administration, the Plan participants' retirement savings suffer when the Plan charges participants high fees or when companies use Plan assets for their own benefit.

9.     The marketplace for retirement plan services, like recordkeeping and managed accounts, is established and competitive.  Retirement plans the size of the Nordstrom Plan have the bargaining power to obtain very low-cost recordkeeping and administrative ("RKA") services from financial services providers.  The overall trend in 401(k) plan RKA fees has been markedly downward over time.

10.     However, because of Defendants' failure to implement a prudent process to control the Plan's overall RKA expenses, and failure to properly understand and evaluate the amount being paid for those services from all sources despite the express regulatory command to do so, the Plan's participants paid vastly more than what comparable very large retirement plans pay for comparable recordkeeping, administrative, and managed account services.

11.     In addition, the Defendants imprudently and disloyally failed to use the Plan's forfeitures to reduce the Plan's expenses, and instead used that money to benefit Nordstrom by reducing Nordstrom's obligation to make future benefit contribution to Plan. This conduct also

violated the fiduciary prohibited transaction rules against self-dealing by companies.

## JURISDICTION AND VENUE

12.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

13.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

14.     This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES AND THE PLAN

15.     Nordstrom is a fashion retailer incorporated in the State of Washington. Nordstrom is publicly traded on the New York Stock Exchange. Nordstrom employs roughly 54,000 people and has annual revenues exceeding $14 billion.

16.     The Nordstrom Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

17.     Nordstrom is the Plan's sponsor under 29 U.S.C. § 1002(16)(B).

18.     The Plan Committee is the Plan's administrator within the meaning of 29 U.S.C. § 1002(16)(A), and is a fiduciary for the Plan. In addition, the members of the Committee (the "Plan Committee Members") are also fiduciaries for the Plan. "[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 4

company." *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000).

19.    Membership in the Plan Committee is limited to individuals who are officers, directors, former directors, or employees of Nordstrom, and the Plan stipulated that the Plan Committee would have at least three members.

20.    As required by 29 U.S. C. § 1102(a)(1), the Plan is established and maintained by a written plan document.

21.    Defendants chose Alight Solutions, LLC ("Alight") to provide the Plan's recordkeeping and administrative (RKA) services.

22.    Defendants also chose Alight Financial Advisors, LLC ("AFA") to provide managed account services to Plan participants.

23.    Plaintiff Curtis McWashington is a resident of Spring, Texas. McWashington worked for Nordstrom in Austin, Texas from 2009 until 2019 and had an active account in the Plan until 2020 or 2021, and was also enrolled in the Alight Financial Advisors (AFA) managed account program operated by Financial Engines.

24.    Plaintiff Edward M. Meshuris is a resident of Bellevue, Washington.  He was employed by Nordstrom from 2018 until 2023 and had an active account in the Plan until 2023.

25.    Plaintiff Emily Sanchez is a resident of Los Angeles, California. She has been employed by Nordstrom since 2015 and is currently an active participant in the Plan.

26.    Plaintiff James Albright is a resident of Redmond, Washington. He was employed by Nordstrom from 1994 to 2021 and had an active account in the Plan until 2021.

27.    Plaintiff Cory R. Crouchley is a resident of Brush Prairie, Washington. He was employed by Nordstrom from 2015 to 2023 and is currently an active participant in the Plan.

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 5

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

28.    Plaintiffs have Article III standing to bring this action on behalf of the Nordstrom 401(k) Plan because they suffered actual injuries through breach of fiduciary duty with regard to recordkeeping and managed account fees, as well as the misallocation of Plan forfeitures by Defendants with regard to the Nordstrom 401(k) Plan during the Class Period. Those injuries are fairly traceable to Defendants' unlawful conduct in paying excessive recordkeeper and managed account fees, and using Plan forfeitures for their own benefit, and these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

29.    Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

30.    The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the excessive recordkeeping and managed accounts, as well as the misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

31.    Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the fees associated with Plan recordkeeping and managed account services, and lacked knowledge of how Plan forfeitures should be allocated.

## ERISA FIDUCIARY STANDARDS

32.    ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Plan, that are covered by ERISA.  ERISA provides that  "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

33.    ERISA's fiduciary duties under have been described as being among the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

34.    The obligation to ensure that retirement plan fees are reasonable is at the heart of ERISA fiduciary duties. *Marshall v. Snyder*, 572 F.2d 894, 897 (2d Cir. 1978) ("The responsibility for paying reasonable compensation was the unequivocal fiduciary responsibility of the [plan's fiduciaries].").

35.    As the Ninth Circuit explained, "cost-conscious management is fundamental to prudence in the investment function." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts § 90(c)(3), cmt. *b*); *see also Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 566 (4th Cir. 2017) ("Fiduciaries ... ordinarily have a duty to seek ... the lowest level of risk and cost for a particular level of expected return—or, inversely, the highest return for a given level of risk and cost.").

36.    The content of ERISA fiduciary's duties is "derived from the common law of trusts." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2465 (2014). Therefore "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble v. Edison Int'l,* 575 U.S. 523, 528-529 (2015). Under the common law of trusts, fiduciaries may "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." Restatement (Third) of Trusts § 90(c)(3) (2007).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

37.     In determining whether ERISA fiduciary defendants fulfilled their duties under the statute, courts consider how a prudent and loyal financial expert familiar with investment industry practices and fees would have acted.  As explained below, here, a prudent and loyal financial expert would have acted very differently than did Defendants.

38.     Defendants failed to fulfill their duty to prudently and loyally control the administrative expenses paid by the Plan, and in so doing caused the Plan's participants to incur millions of dollars in unnecessary expenses.

39.     Furthermore, in deciding to use Plan forfeitures to benefit themselves as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under 29 U.S.C. § 1106(b).

## FACTUAL ALLEGATIONS

**A.    ERISA's Fiduciary Standards in the Defined Contribution Industry**

40.     The Plan is an individual account, defined contribution pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

41.     The Plan is funded by a combination of salary withholdings by plan participants and employer matching contributions.

42.     Participant accounts in the Plan are comprised of employee contributions, any employer contributions and any investment income from the investment options selected within the participant account, less fees and expenses.

43.     In a defined contribution retirement plan such as the Nordstrom Plan, the plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses … which

may be allocated to such participant's accounts." ERISA § 3(34), 29 U.S.C. § 1002(34).

44.    Unlike traditional defined benefit pension plans, which obligate employers to pay a particular amount at retirement (benefits that are guaranteed by the Pension Benefit Guarantee Corporation), participants in defined contribution plans (like the Plan) get no more at retirement than they have in their accounts at that time.

45.    As such, ERISA's fiduciary duty to ensure fees paid by the Plan are reasonable is especially important in the context of fees paid by defined contribution plan participants, as the fees reduce dollar for dollar (and more, when compounded) the amount of benefits participants will receive at retirement.

46.    As the Supreme Court explained in 2015, in defined contribution plans like the Plan, employees' benefits at retirement "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, _**less expenses**_." *Tibble*, 575 U.S. at 525 (emphasis added).

47.    Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement -- "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Id.* In the context of individual account defined contribution plans, additional fees of only 0.18% can have a large effect on investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble*, 843 F.3d at 1190.

48.    Seemingly small differences in fees can lead to vastly different outcomes at retirement. For example, a 1% difference in fees can mean 28% less in retirement assets over a

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 9

thirty-five-year period, U.S. Dept. of Labor, A Look at 401(k) Plan Fees, (August 2013) at 1-2, *https://www.dol.gov/ebsa/publications/401k_employee.html*. Therefore, fees are of critical importance to an ERISA fiduciary's prudent investment menu selection.

49.     As such, plan fiduciaries like Defendants here must: (1) establish a prudent process for selecting service providers and reviewing investments; (2) ensure that fees paid to service providers are reasonable in light of the level and quality of services provided; and (3) monitor service providers and investments once selected to make sure they continue to be prudent choices.

**B.     Retirement Plan Services ("RKA")**

50.     Defined contribution plan fiduciaries of very large 401(k) plans hire service providers to deliver a retirement plan benefit to their employees. There is a group of national retirement plan services providers commonly and generically referred to as "recordkeepers," that have developed bundled service offerings that can meet all the needs of mega retirement plans with a prudent and materially identical level and caliber of services. Alight is one of the largest of such recordkeepers.

51.     There are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to very large defined contribution plans like the Plan.

52.     The cost of RKA services depends mostly on the number of participants, and less so on the amount of assets in the participant's account.

53.     Because the cost of recordkeeping services depends primarily on the number of participants, and not on the amount of assets in the participant's account, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.

54.    According to the 2023 notes to Plan's financial statements, attached to the Annual Report on Form 5500, "[s]ubstantially all the administrative expenses, including recordkeeping, trustee and other fees, incurred in connection with the Plan are paid by the Plan through an allocation to participant accounts."

55.    There are at least three types of RKA services provided by all recordkeepers and other service providers.

56.    The first type, "Bundled RKA," may include, but are not limited to:

a.    Recordkeeping;

b.    Transaction Processing (which includes the technology to process purchases and sales of participants' assets as well as providing the participants the access to investment options selected by the plan sponsor);

c.    Administrative Services related to converting a plan from one recordkeeper to another recordkeeper;

d.    Participant communications (including employee meetings, call centers/phone support, voice response systems, web account access, and the preparation of other communications to participants, e.g., Summary Plan descriptions and other participant materials);

e.    Maintenance of an employer stock fund;

f.    Plan Document Services which include updates to standard plan documents to ensure compliance with new regulatory and legal requirements;

g.    Plan consulting services including assistance in selecting the investments offered to participants;

h.    Accounting and audit services including the preparation of annual reports, e.g., Form 5500;

i.    Compliance support which would include, e.g., assistance interpreting plan provisions and ensuring the operation of the plan follows legal requirements and the provisions of the plan;

j.    Compliance testing to ensure the plan complies with Internal Revenue nondiscrimination rules; and

k.    Trustee/custodian services.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

57.     The services Alight is providing for the Plan and its participants consist in these standard recordkeeping services, and Alight is not providing anything exceptional, unusual, or customized, with regard to the Bundled RKA services provided to the Plan and its participants.

58.     Bundled RKA services are necessary for every defined contribution plan. These services for a qualified retirement plan, like the Plan, are essentially fixed and largely automated. It is a system where costs are driven purely by the number of inputs and the number of transactions. In essence, it is a computer-based bookkeeping system.

59.     In other words, the Plan provided participants all the commoditized Bundled RKA services provided to all other very large 401(k) plan participants. The quality or type of Bundled RKA services provided by competitor recordkeepers are comparable to that provided by Alight and other non-Alight service providers. Any differences in RKA services are immaterial to the price quoted by recordkeepers other service providers for such services.

60.     Bundled RKA services are largely standardized because the RKA providers must provide these services at scale to a large number of plans and must comply with regulatory requirements.  They cannot offer customized sets of services to each individual plan.

61.     The bulk of the fee paid for Bundled RKA services pays for core services that do not vary from plan to plan.

62.     Industry experts have maintained for years that for very large retirement plans like the Plan, prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price. "Custody and recordkeeping are 'commodity' services. Like any commodity, given equal quality, the key benchmark for these services is price. The cheaper you can find competent custody and recordkeeping services, the better for participants." Eric Droblyen, *Evaluating 401(k) Providers: Separating Commodity from Value-Added Services*,

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 12

https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services (Feb. 10, 2015).

63.    Because Bundled RKA services are commoditized, recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for very large plans like the Plan.

64.    Bundled RKA services are essentially fungible and the market for them is highly competitive. This highly competitive Bundled RKA market is filled with equally capable recordkeepers and other Alight service providers, who can provide comparable Bundled RKA services for less if only asked to provide bids to very large plans like the Plan.

65.    Given the very large size of the Plan, the price paid by the Plan for Bundled RKA services to Alight, and the trend of price compression for Bundled RKA services over the last six years, it is possible to infer that Defendants did not engage in any competitive solicitation of Bundled RKA service bids during the class period.

66.    The second type of essential RKA services, hereafter referred to as "A La Carte services," provided by all recordkeepers, often have separate, additional fees based on the conduct of individual participants and the usage of the service by individual participants. These "A La Carte RKA" services typically include the following:

a.    Loan processing;

b.    Brokerage services/account maintenance;

c.    Distribution services; and

d.    Processing of Qualified Domestic Relations Orders (QDROs).

67.    The third type of RKA fees are Ad Hoc fees which are transaction fees and other administrative fees, and include such things as ESOP fees, fees for service, and terminated

1    maintenance fees.

2        68.    Bundled RKA fee numbers represent the best methodology for determining

3    apples-to-apples comparisons of plans as far as what is being charged to plan participants for

4    RKA, as A La Carte and Ad Hoc Fees are negligible in comparison.

5        69.    Because the Bundled RKA offerings are fungible among all recordkeepers and

6    other non-service providers who provide services to very large plans, like the Plan, it is the

7    standard and prevailing practice for retirement plan consultants and advisors to request quotes by

8    asking what the "revenue requirement" is on a per participant basis for providing the Bundled

9    RKA services.

10       70.    This approach is validated by the structure of the request for proposals (RFPs)

11   sent out by retirement plan consultants and advisors and the responses provided by the

12   recordkeepers and other service providers and then the summary of the evaluations created by

13   the retirement plan consultants and advisors.

14       71.    Fidelity, the largest 401k recordkeeper in the country and a direct competitor of

15   Alight, has in fact conceded in another recent case that the Bundled RKA services that it

16   provides to very large plans are commodified, including the plan services provided to its own

17   employees.

18       72.    As part of stipulated facts in a previous case, Fidelity stated: "The value of the

19   recordkeeping services that Fidelity provided to the Plan in 2014 was $21 per participant; the

20   value of the recordkeeping services that Fidelity provided to the Plan in 2015 and 2016 was $17

21   per participant, per year, and the value of the recordkeeping services that Fidelity has provided to

22   the Plan since January 1, 2017 is $14 per participant, per year. Had the Plan been a third-party

23   plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity it could

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

have obtained recordkeeping services for these amounts during these periods. *The Plan did not receive any broader or more valuable recordkeeping services from Fidelity than the services received by any other Fidelity-recordkept plan with at least $1 billion in assets during the Class Period (November 18, 2014 to the present).*" See *Moitoso v. FMR LLC, et al.*, 1:18-CV-12122-WGY, Stipulation of Facts, Dkt. 128-67, at 4-5 (D. Mass. Sep. 6, 2019) (emphasis added).

73.    By the start of, and during the entire Class Period, the level of fees that recordkeepers and other service providers have been willing to accept for providing Bundled RKA has stabilized, and has not materially changed for very large plans, including the Plan.

74.    Reasonable Bundled RKA fees paid throughout the Class Period in 2021 are therefore representative of the reasonable fees during the entire Class Period. *See The Economics of Providing 401(k) Plans: Services, Fees, and Expenses, 2020*, ICI Research Perspective, at 4 (June 2021).

75.    The investment options selected by plan fiduciaries also often have a portion of the total expense ratio allocated to the provision of recordkeeping performed by the recordkeepers on behalf of the investment manager.

76.    Recordkeepers often collect a portion of the total expense ratio fee of the mutual fund in exchange for providing services that would otherwise have to be provided by the mutual fund. These fees are known as "revenue sharing" or "indirect compensation."

77.    The Plan paid both direct and indirect RKA fees during the Class Period to Alight.

78.    The comparator plans either paid direct and indirect RKA fees or only direct RKA fees, but indirect compensation was taken into consideration for both the Plan and the comparator plans.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**C.      Standard of Care for Prudent Fiduciaries Selecting &
Monitoring Retirement Plan Service Providers**

3

4      79.      Prudent plan fiduciaries ensure they are paying only reasonable fees for Bundled

RKA by engaging in an "independent evaluation," see *Hughes v. Northwestern Univ.*, 142 S. Ct.

5

737, 742 (2022), and soliciting competitive bids from other recordkeepers to perform the same

6

level and quality of services currently being provided to the Plan.

7

8      80.      Prudent plan fiduciaries can easily receive a quote from other RKA providers to

9      determine if the current level of Bundled RKA fees is reasonable in light of the level and quality

10     of Bundled RKA fees. It is not a cumbersome or expensive process.

11     81.      It is the standard of care prevailing among industry experts to solicit competitive

12     bids every three to five years. *See* CAPTRUST, *Understanding and Evaluating Retirement Plan*

13     *Fees | Part One: A Holistic Approach*, https://www.captrust.com/understanding-and-evaluating-

14     retirement-plan-fees-part-one-a-holistic-approach/ (stating "best practice is . . . a more formal

15     recordkeeper search and selection process conducted approximately every three to five years.

16     Recordkeeping and administrative fees should be evaluated and compared to plans of similar size

17     and type that are receiving analogous services. While each plan is unique—making an apples-to-

18     apples comparison imperfect—evaluating fees against similarly situated and sized plans provides

19     a good reference point in helping to determine if plan fees are reasonable.")

20

21     82.      Having received bids, prudent plan fiduciaries can negotiate with their current

22     RKA providers for a lower fee or move to a new RKA provider to provide a materially similar

23     level and qualities of services for a more competitive reasonable fee if necessary.

24     83.      An internal benchmarking survey from CapTrust, Fiduciary Decisions, or similar

25     benchmarking service providers, is inadequate to determine a reasonable Bundled RKA fee.

26

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Such surveys skew to higher "average prices," that favor inflated Bundled RKA fees. To receive a "reasonable" Bundled RKA fee in the prevailing market, prudent plan fiduciaries engage in solicitations of competitive bids on a periodic basis.

84.     Prudent fiduciaries implement three related processes to prudently manage and control a plan's RKA costs. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014).

85.     First, a hypothetical prudent fiduciary tracks RKA provider's expenses by demanding documents that summarize and contextualize their compensation, such as fee transparencies, fee analyses, fee summaries, relationship pricing analyses, cost-competitiveness analyses, and multi-practice and standalone pricing reports.

86.     Second, to make an informed evaluation as to whether a RKA provider is receiving no more than a reasonable fee for the quality and level of services provided to a plan, prudent hypothetical fiduciaries must identify all fees, including direct compensation and revenue sharing being paid to the plan's RKA provider.

87.     Third, a hypothetical plan fiduciary must remain informed about overall trends in the marketplace regarding the fees being paid by other plans, as well as the RKA rates that are available. By soliciting bids from other RKA providers, a prudent plan fiduciary can quickly and easily gain an understanding of the current market for the same level and quality of RKA services.

88.     Accordingly, the best way to determine the *reasonable*, as opposed to the *cheapest* or *average*, market price for a given quality and level of RKA services is to obtain competitive bids from other providers in the market. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 625-626 (7th Cir. 2023) ("*Hughes II*") (although "a fiduciary *need not constantly solicit quotes* for recordkeeping services to comply with its duty of prudence, . . . fiduciaries who fail to

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

monitor the reasonableness of plan fees and *fail to take action to mitigate excessive fees—such as by* adjusting fee arrangements, *soliciting bids*, consolidating recordkeepers, negotiating for rebates with existing recordkeepers, or other means—may violate their duty of prudence.") (emphasis added).

**D.    The Plan's Bundled RKA Fees Were Too High**

89.    Every defined contribution plan requires recordkeeping.  There are numerous vendors that can provide high quality recordkeeping services to defined contribution plans such as the Nordstrom Plan. These vendors strenuously compete against each other by offering the lowest price for the best service.

90.    A plan fiduciary must monitor its Bundled RKA fees on an ongoing basis by regularly conducting an independent evaluation of those fee to ensure they are reasonable and remove RKA providers if those fees are unreasonable. *See Hughes*, 142 S. Ct. at 742.

91.    Defendants, as the Plan's fiduciaries, selected the recordkeeping and administrative (RKA) service providers for the Plan and controlled which investment options and investment vehicles were available in the Plan. Defendants were responsible for monitoring those service providers, and the fees they charged, on an ongoing basis.

92.    Alight and AFA are wholly owned subsidiaries of Alight, Inc.

93.    Large plans are generally able to leverage their size to obtain lower fees per participant, in part because of the economies of scale that large plans provide recordkeepers.

94.    With over 110,000 participants and four billion dollars in assets during the class period, the Plan is one of the largest defined contribution plans in the United States.

95.    The Plan thus had the bargaining power to obtain and maintain very low fees for recordkeeping and other administrative services and had significant leverage to procure high

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

quality management and administrative services at a low cost.

96. Defendants failed to leverage the Plan's size to obtain reasonable Bundled RKA fees.

97. And, for those lower prices, other very large plans receive equivalent or better recordkeeping and administrative services than did the Plan.

98. During the Class Period, Defendants egregiously failed to regularly monitor the Plan's Bundled RKA fees paid to Alight.

99. During the Class Period, Defendants failed to regularly solicit quotes and/or competitive bids from RKA providers, including but not limited to Alight, in order to avoid paying unreasonable Bundled RKA fees.

100. During the Class Period, and unlike a hypothetical prudent fiduciary, Defendants followed a fiduciary process that was ineffective given the objectively unreasonable Bundled RKA fees it paid to Alight for at least six years, and in light of the level and quality of Bundled RKA services it received that were materially similar fungible services available through other RKA providers and provided to other very large plans.

101. As set forth in the table below, from the years 2018 through 2023, based upon information provided by the Plan fiduciaries to Plan participants in the Participant Required Disclosures under Section 404(a)(5) and in audited financial statements, the Plan paid an effective average annual Bundled RKA fee of $42 per participant.

### Bundled Recordkeeping and Administration (Bundled RKA) Fees

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Average |
|---|---|---|---|---|---|---|---|
| Participants | 80,250 | 81,116 | 78,556 | 105,901 | 104,811 | 103,450 | 92,347 |
| Est. Bundled RKA Fees | $3,370,500 | $3,406,872 | $3,299,352 | $4,447,842 | $4,402,062 | $4,344,900 | $3,878,588 |
| Est. Bundled RKA Per Participant | $42 | $42 | $42 | $42 | $42 | $42 | $42 |
| Reliable Est. of Reasonable Bundled RKA Fees | $1,765,500 | $1,784,552 | $1,728,232 | $2,329,822 | $2,305,842 | $2,275,900 | $2,031,641 |
| Reliable Est. of Reasonable Bundled RKA Fees Per PP | $22 | $22 | $22 | $22 | $22 | $22 | $22 |
| Est. Bundled RKA Losses | $1,605,000 | $1,622,320 | $1,571,120 | $2,118,020 | $2,096,220 | $2,069,000 | $1,846,947 |
| Est. Bundled RKA Losses Per PP | $20 | $20 | $20 | $20 | $20 | $20 | $20 |

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 19

102.    The table below illustrates the annual Bundled RKA fees paid by other similarly-sized, comparable plans, receiving a materially similar level and quality of fungible Bundled RKA services, compared to the average annual Bundled RKA fees paid by the Plan (as identified in the table above).

**Comparable Plans' Bundled RKA Fees (2021) Based on Publicly Available Information from Participant Fee Disclosures or Financial Statements**

| Plan | Participants | Bundled RKA Fee ($) | Bundled RKA Fee ($ per participant) | Recordkeeper |
|---|---|---|---|---|
| Aldi Inc. Retirement Savings Plan | 56,577 | $1,301,271 | $23 | T. Rowe Price |
| **Estimated Nordstrom Plan 2021 Fee** | **105,901** | **$4,447,842** | **$42** | **Alight** |
| UPS 401 (K) Savings Plan | 135,312 | $3,112,176 | $23 | Voya |
| Lowes 401(K) Plan | 154,402 | $2,856,437 | $18.50 | Wells Fargo |
| Costco 401K Retirement Plan | 200,128 | $4,002,560 | $20 | T. Rowe Price |



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

103.     To provide evidence that the Plan paid unreasonable and excessive fees for RKA services, the Plaintiffs considered the Bundled RKA fee rates set forth in participant fee disclosures of other comparable plans or in the audited financial statements. The evidence of the Bundled RKA fee rates paid by these comparable plans provides additional evidence that the RKA fees paid by the Plan were excessive and unreasonable and leads to a likely inference that the Plan fiduciaries employed an imprudent process.

104.     The Bundled RKA fee rates paid by each of these comparable plans provides evidence that the Plan paid excessive fees because there are no RKA services offered by any recordkeeper that would warrant or reasonably explain the disparity between the effective Bundled RKA fee rate paid by the Plan and the Bundled RKA fee rate that other comparable plans received for the materially similar Bundled RKA services during the Class Period.

105.     In the October 2023 Participant Fee disclosure, Administrative Fees are described as "Historically, these fees have ranged from $2 to $5 each month."

106.     Accordingly, under the Plan's fee structure, using the midpoint between $2 and $5 as a conservative estimate, the Plan paid an estimated annual Bundled RKA fee rate of $42 per participant in the years from 2018 to 2023. That is calculated by taking the midpoint of $2 and $5 and multiplying by 12.

107.     However, actual fees paid by Plan participants may have been considerably above the $42 per year figure. As an example, as set forth in the December 31, 2023 Participant Statement provided to one of the Plaintiffs, that Plaintiff was charged a quarterly "Administrative Fee" rate of $13.93 for the period October 1, 2023 through December 31, 2023. Annualized, this would equate to $55.72.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

108.    The Plan's Bundled RKA fee rate of at least $42 per participant can then be compared to the Bundled RKA fee rate of other comparable plans.

109.    **Aldi Inc. Retirement Savings Plan** ("Aldi"): The comparable fee rate of $23 per participant is taken directly from the "Administrative Expenses" section of the November 2021 Plan and Investment Disclosure. The section indicates a Recordkeeping Fee of $5.75, charged quarterly.

110.    The Aldi Plan is a meaningful benchmark because at the end of 2021, the Aldi Plan had around 56,577 participants, less than the 105,901 participants in the Plan in 2021. The costs to a recordkeeper for providing Bundled RKA services to a plan with more than 3,000 participants are driven primarily by the number of participants. There are no material differences in the RKA services provided to plans as large as both the Aldi Plan and the Nordstrom Plan and any service differentials cannot explain the disparity between the fees paid by the Aldi Plan and the fees paid by the Nordstrom Plan.

111.    For example, the disparity of $19 per participant between the $23 per participant bundled RKA rate for the Aldi Plan's fee compared to the Bundled RKA rate of $42 per participant paid by the Nordstrom Plan represents over $2,010,000 annually and would conservatively represent more than 40,200 hours of RKA services in one year provided by employees of the recordkeeper. There are no special or different Bundled RKA services provided to any plan with between around 50,000 and 200,000 participants that would reasonably warrant incremental additional fees of over $2,010,000 for plans with similar numbers of participants.

112.    All else being equal, if the Aldi plan can obtain a fee of $23 per participant with 56,577 participants, then the Nordstrom Plan, which ranged in participants from around 80,250 to around 103,450 throughout the Class Period, should be able to obtain a fee of around $23 per

participant, *or lower*, as indicated by the trend line generated from the Bundled RKA Fee Rates paid by all the comparable plans.

113.    The Aldi Plan is one of the closest 0.01% (one hundredth of 1%) of all defined contribution plans governed by ERISA. The massive disparity between the Bundled RKA fees paid by the Aldi Plan and the Nordstrom Plan's estimated effective Bundled RKA fee rate of around $42 per participant, viewed holistically and in conjunction with the evidence of the fees paid by all the other comparable plans, leads to a plausible inference that the Plan paid excessive and unreasonable Bundled RKA fees and the Plan's fiduciary process was imprudent.

114.    **UPS 401(k) Savings Plan** ("UPS"): The comparable fee rate of $23 per participant is taken directly from the August 2021 Disclosure of Plan-Related Information document.  The document indicates $23 per participant through $17.50 charged to participants and $5.50 paid by UPS.

115.    The UPS plan is a meaningful benchmark because at the end of 2021 the UPS plan had around 135,312 participants, slightly more than the 105,901 participants in the Nordstrom Plan. The costs to a recordkeeper for providing Bundled RKA services to a plan with more than 3,000 participants are driven primarily by the number of participants. There are no material differences in the Bundled RKA services provided to plans as large as both the UPS plan and the Nordstrom Plan and any service differentials cannot explain the disparity between the fees paid by the UPS Plan and the fees paid by the Nordstrom Plan.

116.    For example, the disparity of $19 per participant between the $23 per participant bundled RKA rate for the UPS Plan's fee compared to the bundled RKA rate of $42 per participant paid by the Nordstrom Plan represents over $2,010,000 annually and would conservatively represent more than 40,200 hours of RKA services in one year provided by

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

employees of the recordkeeper. There are no special or different RKA services provided to any plan with between around 50,000 and 200,000 participants that would reasonably warrant incremental additional fees of over $2,010,000 for plans with similar numbers of participants.

117.    All else being equal, if the UPS Plan can obtain a fee of $23 per participant with 135,312 participants, then the Plan, which ranged in participants from around 80,250 to around 103,450 throughout the Class Period, should be able to obtain a fee of around $22-23 per participant, as indicated by the trend line generated from the Bundled RKA Fee Rates paid by all the comparable plans.

118.    The UPS plan is one of the closest 0.01% (one hundredth of 1%) of all defined contribution plans governed by ERISA. The massive disparity between the Bundled RKA fees paid by the UPS Plan and the Nordstrom Plan's estimated effective Bundled RKA fee rate of around $42 per participant, viewed holistically and in conjunction with the evidence of the fees paid by all the other comparable plans, leads to a plausible inference that the Nordstrom Plan paid excessive and unreasonable Bundled RKA fees and the Plan's fiduciary process was imprudent.

119.    **Lowes 401(k) Plan** ("Lowes"): The comparable fee rate of $18.50 per participant is taken directly from the October 2018 Investment Performance and Operating Expenses document.  The document indicates an $18.50 Per Participant Charge Per Year.

120.    The Lowes Plan is a meaningful benchmark because at the end of 2021 the Lowes Plan had around 154,402 participants, slightly more than the 105,901 participants in the Nordstrom Plan. The costs to a recordkeeper for providing Bundled RKA services to a plan with more than 3,000 participants are driven primarily by the number of participants. There are no material differences in the Bundled RKA services provided to plans as large as both the Lowes

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plan and the Nordstrom Plan and any service differentials cannot explain the disparity between the fees paid by the Lowes Plan and the fees paid by the Nordstrom Plan.

121.    For example, the disparity of $23.50 per participant between the $18.50 per participant bundled RKA rate for the Lowes Plan's fee compared to the bundled RKA rate of $42 per participant paid by the Nordstrom Plan represents over $2,488,674 annually and would conservatively represent more than 49,600 hours of RKA services in one year provided by employees of the recordkeeper. There are no special or different RKA services provided to any plan with between around 50,000 and 200,000 participants that would reasonably warrant incremental additional fees of over $2,480,000 for plans with similar numbers of participants.

122.    All else being equal, if the Lowes Plan can obtain a fee of $18.50 per participant with 154,402 participants, then the Plan, which ranged in participants from around 80,250 to around 103,450 throughout the Class Period, should be able to obtain a fee of around $22-$23 per participant, as indicated by the trend line generated from the Bundled RKA Fee Rates paid by all the comparable plans.

123.    The Lowes Plan is one of the closest 0.01% (one hundredth of 1%) of all defined contribution plans governed by ERISA. The massive disparity between the Bundled RKA fees paid by the Lowes Plan and the Nordstrom Plan's estimated effective Bundled RKA fee rate of around $42 per participant, viewed holistically and in conjunction with the evidence of the fees paid by all the other comparable plans, leads to a plausible inference that the Nordstrom Plan paid excessive and unreasonable Bundled RKA fees and the Plan's fiduciary process was imprudent.

124.    **Costco 401(k) Retirement Plan** ("Costco"): The comparable fee rate of $20 per participant is taken directly from the January 2020 Plan and Investment Disclosure document.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The document indicates $5 per quarter ($20 annually) Per Participant for recordkeeping charges.

125.    The Costco Plan is a meaningful benchmark because at the end of 2020 the Costco Plan had around 200,128 participants, which, while more than the Plan, is still among the closest comparable plans. Moreover, for plans with more than 100,000 participants, recordkeepers have already achieved the vast majority of the benefits of scale such that the marginal cost of providing services to one more participant is virtually identical to the variable cost and the cost curve is extremely close to linearly horizontal for participant ranges from 100,000 to 200,000.

126.    Additionally, the costs to a recordkeeper for providing RKA services to a plan with more than 3,000 participants are driven primarily by the number of participants. There are no material differences in the Bundled RKA services provided to plans as large as both the Costco Plan and the Nordstrom Plan and any service differentials cannot explain the disparity between the fees paid by the Costco Plan and the fees paid by the Nordstrom Plan.

127.    For example, the disparity of $22 per participant between the $20 per participant bundled RKA rate for the Costco Plan's fee compared to the Bundled RKA rate of $42 per participant paid by the Plan represents over $2,320,000 annually and would conservatively represent more than 46,400 of RKA services in one year provided by employees of the recordkeeper. There are no special or different RKA services provided to any plan with between around 50,000 and 200,000 participants that would reasonably warrant incremental additional fees of over $2,320,000 for plans with similar numbers of participants.

128.    All else being equal, if the Costco Plan can obtain a fee of $20 per participant with 200,128 participants, then the Plan, which ranged in participants from around 80,250 to around 103,450 throughout the Class Period, should be able to obtain a fee of around $22-$23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

per participant, as indicated by the trend line generated from the Bundled RKA Fee Rates paid by all the comparable plans.

129.    The Costco Plan is one of the closest 0.01% (one hundredth of 1%) of all defined contribution plans governed by ERISA. The massive disparity between the Bundled RKA fees paid by the Costco Plan and the Nordstrom Plan's estimated effective Bundled RKA fee rate of around $42 per participant, viewed holistically and in conjunction with the evidence of the fees paid by all the other comparable plans, leads to a plausible inference that the Nordstrom Plan paid excessive and unreasonable Bundled  RKA fees and the Plan's fiduciary process was not imprudent.

130.    The comparable plans, acting as meaningful benchmarks, establish that the Bundled RKA fees paid by the Nordstrom Plan to Alight during the Class Period were excessive relative to the Bundled RKA services rendered, especially give the fungible and commoditized nature of those Bundled RKA services for very large plans like the Nordstrom Plan.

131.    From the years 2018 through 2023, and based upon information derived from the Plan participant disclosure forms and audited financials in similarly sized plans, had Defendants been acting prudently, the Plan actually would have paid significantly less than an average of approximately $3,878,588 per year in Bundled RKA fees that the Plan in fact paid, which equated to an effective average of approximately $42 per participant per year.

132.    From the years 2018 through 2023, and based upon information derived from the Plan participant disclosure forms and audited financials in similarly sized plans, as compared to other plans of similar sizes receiving a materially similar level and quality of Bundled RKA services, had Defendants been acting prudently, the Plan actually would have paid on average a reasonable effective annual market rate for total RKA of approximately $2,031,641 per year,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

which equates to approximately $22 per participant per year.

133.    During the entirety of the Class Period, a hypothetical prudent plan fiduciary would not agree to pay *a 91% premium* for what they could otherwise pay for the materially similar level and quality of Bundled RKA services.

134.    From the years 2018 through 2023, and based upon information derived from the Plan participant disclosure forms and audited financials in similarly sized plans, the Plan additionally cost its participants on average approximately $1,846,947 per year in unreasonable and excessive Bundled RKA fees, which equates to, on average, approximately $20 per participant per year.

135.    From the years 2018 to 2023, and because Defendants did not act with prudence, and as compared to other plans of similar sizes and with a materially similar level and quality of Bundled RKA services, the Plan actually cost its participants a total minimum amount of approximately $11,081,680 in unreasonable and excessive Bundled RK&A fees.

136.    From the years 2018 to 2023, and based upon information derived from the Plan participant disclosure forms and audited financials, because Defendants did not act prudently, and as compared to other plans of similar sizes and with a materially similar level and quality of Bundled RKA services, the Nordstrom Plan caused Plan participants to suffer losses (when accounting for compounding percentages/lost market investment opportunity) a total cumulative amount in excess of $12,694,590 in Bundled RKA fees.

137.    Defendants could have received Bundled RKA services during the Class Period of the same level and quality from Alight that provide Bundled RKA services to very large plans, like the Nordstrom Plan, because the participant fee disclosures and audited financials establish that the Nordstrom Plan received no services that were materially different than the fungible and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

commoditized services received by all the comparable plans.

138.    Defendants failed to take advantage of the Plan's substantial size to timely negotiate lower fees from Alight or any other service provider during the class period.

139.    Defendants could have obtained the materially same Bundled RKA services for less from other RKA providers or from Alight had the Defendants only leveraged the Plan's substantial size on the RKA provider marketplace in a more timely and prudent manner.

140.    Defendants did not conduct effective or competitive bidding for Bundled RKA services during the Class Period, and failed to use the Plan's substantial size to negotiate rebates from Alight.

141.    Plaintiffs and Class Members paid these excessive Bundled RKA fees in the form of direct and indirect compensation to the Plan and suffered injuries to their Plan accounts as a result.

142.    During the entirety of the Class Period, and had Defendants engaged in regular and/or reasonable examination and competitive comparison of the Bundled RKA fees it paid to Alight, it would have realized that the Plan was compensating Alight unreasonably and inappropriately for its size and scale, passing these objectively unreasonable and excessive fee burdens to Plaintiffs and other Plan participants.

143.    Defendants should have removed Alight as Plan RKA provider during the class period. Instead, it kept Alight at these inflated Bundled RKA fee prices.

144.    Those Bundled RKA costs were ultimately borne by all the Plan's participants.

145.    By failing to implement an objective oversight process, the Plan fiduciaries failed to understand the enormous additional compensation Alight gleaned from the Bundled RKA services. As a result, Defendants have violated the duties of prudence by failing to account for all

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 29

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the direct and indirect compensation received by Alight.

146.    Moreover, the disclosures provided to Plan participants (such as summary plan descriptions ("SPDs") and periodic account statements) as well as in other publicly available documents (such as the Form 5500s) are so opaque that it is impossible to determine either the total amount of compensation (direct and indirect) that participants pay to Alight.

147.    The Plan's 5500s, for example, do not report either the amount of Alight's indirect compensation or the formula used to determine that amount. It is also impossible to determine from these documents whether any particular fees were counted as direct or indirect, or even the nature or sources of the types of compensation that participants are paying Fidelity apart from the flat fee. Nor do the disclosures provide any direct information about Defendants' fiduciary process with respect to these recordkeeping fees.

148.    During the entirety of the Class Period, and by failing to recognize that the Nordstrom Plan and its participants were being charged excessive Bundled RKA fees and by failing to take effective remedial actions, Defendants breached their fiduciary duty of prudence to Plaintiffs and to other Plan participants, causing tens of millions of dollars of harm to Plaintiffs and Class Member's retirement accounts.

**E.    Alight/AFA Charged Excessive Managed Account Service Fees**

149.    The Plan Fiduciaries also made a Managed Account service (hereafter "MAS") provided by its recordkeeper ("Alight") available to Plan Participants through its wholly-owned subsidiary, Alight Financial Advisors ("AFA").

150.    MAS are a service provided to retirement plan participants that purport to provide a personalized asset allocation to an individual participant in contrast to a target date fund ("TDF"), which provides the same asset allocation to all participants that are expected to retire

within roughly the same five-year period.

151.    MAS are a discretionary portfolio management service for a fee that makes investment decisions for the participant within the confines of a plan and its fund options.

152.    Most plan participants are expected to receive a TDF-like experience with MAS. *See* Aon, *Are Managed Accounts More Efficient Than Target Date Funds?* (2020).

153.    Without personalization provided by Plan participants through investment questionnaire or similar mechanisms to customize their portfolios, managed account services are fundamentally the same as TDFs, the QDIA favored by almost all large plans.

154.    Many MAS providers build simple portfolios with less diversification than the most "vanilla" TDFs. *Id.*

155.    MAS portfolios are often meaningfully more expensive and not meaningfully more effectively diversified. There is no meaningful difference in the level or the personalization of the diversification. *Id.*

156.    Recordkeepers can deliver many of the benefits they claim to deliver through managed accounts via other services that are provided as part of the bundled recordkeeping offering for no additional fee, such as auto-escalation or TDFs with multiple glide paths. *Id.*

157.    MAS fees often account for a significant portion of administrative fees. The portion of MAS fees paid to the recordkeeper is often not disclosed transparently. The lack of transparency makes it hard to determine whether the MAS provides value. *See* Aon, *Can You Truly Evaluate Managed Accounts Through Marketing's Rose-Colored Glasses?* (2019).

158.    For example, Fidelity is one of the largest MAS providers. An analysis of defined contribution plans required to file the Form 5500 from 2014 through 2022 reveals that by the end of 2014, Fidelity had 686 recordkeeping plans that had adopted its MAS, but by the end of 2022,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Fidelity had 2,659 recordkeeping plans that had adopted its MAS, a growth of almost 288%.



159.    In contrast, Fidelity's total growth of recordkeeping clients was just under 38% over that same period.

160.    Similarly, as illustrated in the graph below, Fidelity's direct compensation per plan from the subset of 382 Fidelity recordkeeping plans that consistently used its MAs from 2014 through 2022 grew 282%.

161.    In contrast, Fidelity's direct compensation from the subset of 4,515 Fidelity recordkeeping plans that consistently did *not* use its MAS from 2014 through 2022 grew only 145%.

162.    In other words, Fidelity's revenue grew roughly twice as fast among plans using the MAS compared to those not using the MAS. As a result, Fidelity has had a powerful financial incentive to sell its managed account services to retirement plan fiduciaries.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



163.    As a result, Fidelity, and other recordkeepers like AFA that provide MAS, have a powerful financial incentive to sell their managed account services to retirement plan fiduciaries.

164.    Yet, TDFs outperformed MAs in median, upside, and downside cases. See Alight Solutions, *2018 Professional Investment Assistance Report: The Impact of Managed Accounts and Target Date Funds in Defined Contribution Plans 2007-2016*.

165.    AFA, the MAS for the Nordstrom Plan, provided MAS through its subadviser, Financial Engines.

166.    Where the recordkeeper (Alight) is the face of the MAS offering to participants (AFA), the recordkeeper collects fees though various structures, is economically incented to have managed accounts utilized, and revenue received is often 50% or more of participant fees.

167.    Like Fidelity, Alight has a strong financial incentive to sell its MAS through AFA to its recordkeeping clients.

168.    Alight achieved similar comparative results from plans using and not using its MAS. A similar analysis of defined contribution plans required to file the Long Form 5500 from 2018 through 2022 illustrates that Alight's direct compensation from the subset of fifteen (15)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Alight recordkeeping plans that consistently used its MAS from 2018 through 2022 grew from around $35M to around $43M, or 23%.

169.    In contrast, Alight's direct compensation from the subset of 44 Alight recordkeeping plans that consistently did *not* use its MAS from 2018 through 2022 grew from around $44M to around $45M, or only 2%.

170.    In other words, Alight's revenue disparity is even greater than Fidelity's. Alight's recordkeeping and MAS plans' revenue grew *more than 11 times* as much as its recordkeeping plans that did *not* use its MAS. As a result, Alight has had an even greater financial incentive to sell its managed account services to retirement plan fiduciaries.



171.    So just like Fidelity, Alight also has had a powerful financial incentive to sell its managed account services to retirement plan fiduciaries.

172.    While Alight's average MAS fees among plans consistently using the MAS service from 2018 through 2022 (including the Nordstrom Plan) grew 47%, Alight's MAS fees from the Nordstrom Plan grew 374%.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



173.    According to the October 2023 Plan participant fee disclosure, the Nordstrom

Plan fiduciaries agreed to pay AFA an effective fee rate of 0.60% for the first $100,000 of Plan

assets for MAS.

174.    By 2022, Alight's MAS fees had grown to about 43% of the total compensation

Alight earned from providing services to the Nordstrom Plan and totaling over $2.5M in

unreasonable and unnecessary fees that did not add any value to the Plan.

175.    Under the minimum standard of care for prudent plan fiduciaries, there is no

reasonable basis to conclude that having Plan participants pay Alight/AFA a MAS fee rate of

0.60% would result in a net benefit to the Plan participants using the service or to the Plan in

aggregate on a net basis.

176.    A plan fiduciary must monitor the total administrative fees, including managed

account compensation, it pays to the MAS service provider by regularly conducting an

independent evaluation of those fees to ensure that such administrative fees are reasonable and

remove the MAS if those fees are unreasonable or imprudent.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

177.    During the Class Period, Defendants egregiously failed to regularly monitor the administrative fees, including the MAS compensation, paid to Alight and AFA.

178.    During the Class Period, Defendants failed to consider other alternatives to the AFA MAS, including TDFs, in order to avoid having Plan participants pay excessive and unreasonable administrative fees.

179.    Without personalization of MAS provided by Plan participants through investment questionnaires, MAS rely on age primarily just like TDFs, except they are many magnitudes more expensive when it comes to administrative fees.

180.    Plaintiff McWashington's experience is representative of many Plan participants who were defaulted into the AFA MAS in the Nordstrom Plan without their knowledge, who did not provide any personalization to customize their MA solution to provide additional value, and did not have the financial literacy to understand they were being charged unnecessary administrative fees in the form of MAS fees, all the while losing retirement monies unnecessarily.

181.    During the class period, and unlike a hypothetical prudent fiduciary, Defendants followed a fiduciary process that was ineffective given the objectively unreasonable administrative fees associated with MAS compensation it paid to AFA, and in light of the lack of value of MAS given the disengaged, financially illiterate, and uninformed nature of most Nordstrom Plan participants who were defaulted into the AFA MAS.

182.    The Plan Committee, as Plan fiduciaries, should have compared MAS to TDFs through periodic reviews to determine whether given cost, risk, performance, and other pertinent factors (like participants' disengagement) whether establishing the MA as a Plan service was prudent.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

183.     According to the October 2023 Plan Participant Fee Disclosure, in addition to the average Bundled RKA fee of $42 per participant per year, the AFA MAS costs Nordstrom Plan participants an annual fee of 0.60% of assets under management balances up to $100,000, the next $150,000 at a cost of 0.45%, of assets under management, and for any additional assets beyond that at a cost of 0.30%.

184.     In comparison, there are no administrative fees associated with TDFs and participants only pay the $42 average recordkeeping fee per year.

185.     The appropriate comparison is not managed account versus managed account with regard to a comparison of fees associated with the MAS or services provided by those MAS, but instead whether a TDF should have been selected instead of *any* MAS.

186.     The selection of the MAS as a Plan option was therefore imprudent without any evidence that a fiduciary process was followed or that these additional MAS fees provided any value to Plan participants who did not even know they were defaulted into the Plan, like Plaintiff McWashington, and who did not provides any personalized information to permit more investment individualization.

187.     The comparable plans, which utilized only TDFs, are examples of a choice that a prudent fiduciary could have made had they performed the required fiduciary analysis and determined that establishing MAS as a Plan option with higher fees was imprudent when TDFs could have provided similar asset allocations purposes as MAS for Plan participants at a much lower cost.

188.     As set forth in the table below, from the years 2018 through 2023, based upon information provided in Participant Fee Disclosures, Audited Financial Statements attached to 5500 Forms, and/or in participant quarterly account statements, the Nordstrom Plan paid an

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 37

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

effective average annual rate of $63 per participant for RKA fees (which is the sum of Bundled

RKA fees and MAS compensation):

**Bundled Recordkeeping and Administration Fees**
**Plus Managed Account Compensation (Bundled RKA+MA)**

|  | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | *Average* |
|---|---|---|---|---|---|---|---|
| Participants | 80,250 | 81,116 | 78,556 | 105,901 | 104,811 | 103,450 | *92,347* |
| Est. Bundled RKA Fees+MA Fees | $3,908,675 | $4,849,966 | $5,302,157 | $7,173,476 | $6,953,287 | $6,980,989 | *$5,861,425* |
| Est. Bundled RKA+MA Fees Per Participant | $49 | $60 | $67 | $68 | $66 | $67 | *$63* |
| Reliable Est. of Reasonable Bundled RKA+MA Fees | $1,765,500 | $1,784,552 | $1,728,232 | $2,329,822 | $2,305,842 | $2,275,900 | *$2,031,641* |
| Reliable Est. of Reasonable Bundled RKA+MA Fees Per PP | $22 | $22 | $22 | $22 | $22 | $22 | *$22* |
| Est. Bundled RKA Losses | $2,143,175 | $3,065,414 | $3,573,925 | $4,843,654 | $4,647,445 | $4,705,089 | *$3,829,784* |
| Est. Bundled RKA Losses Per PP | $27 | $38 | $45 | $46 | $44 | $45 | *$41* |

189.    The table below illustrates the administrative fees paid by other similarly-situated

plans, providing a comparable level and quality of administrative services, but having TDFs

alone and no MAS like the Nordstrom Plan:

**Comparable Plans' Bundled RKA+MA Fees Based on Publicly Available**
**Information from Participant Fee Disclosures or Financial Statements**

| Plan | Participants | Bundled RKA+MA Fee ($) | Bundled RKA+MA Fee ($ per participant) | Recordkeeper |
|---|---|---|---|---|
| Aldi Inc. Retirement Savings Plan | 56,577 | $1,301,271 | $23 | T. Rowe Price |
| **Estimated Nordstrom Plan 2021 Fee** | **105,901** | **$7,173,476** | **$68** | **Alight** |
| UPS 401 (K) Savings Plan | 135,312 | $3,112,176 | $23 | Voya |
| Lowes 401(K) Plan | 154,402 | $2,856,437 | $18.50 | Wells Fargo |
| Costco 401K Retirement Plan | 200,128 | $4,002,560 | $20 | T. Rowe Price |

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**Years:** 2018-2023

190.    The comparable plans above are not used to show that RKA fees are excessive, rather that the MAS fees were unnecessary and unreasonable.

191.    The Nordstrom Plan's average Bundled RKA rate should have been $22 per year on average during the relevant class period, but the use of the AFA MAS, which was unnecessary for asset allocation purposes for Plan participants, generated an additional $41 per participant per year for Alight/AFA during the class period.

192.    If the Nordstrom Plan had instead used TDFs and auto-escalation for asset allocation purposes and no MAS, the administrative fee would have been $22 per participant per year.

193.    The Nordstrom Plan additionally cost its participants average approximately $3,829,784 per year in additional recordkeeping and managed account fees, which equates to on average approximately $41 per participant per year.

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 39

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

194.    By using the AFA MAS, instead on relying on TDFs like the comparator plans, the Nordstrom Plan cost its participants (when accounting for compounding percentages) a total, cumulative amount in excess of $25,750,297 through December 31, 2023, according to the chart below:

### Bundled Recordkeeping and Administration Fees
### Plus Managed Account Compensation (Bundled RKA+MA)

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Est. Bundled RKA Fees+MA Fees | $3,908,675 | $4,849,966 | $5,302,157 | $7,173,476 | $6,953,287 | $6,980,989 |
| Reliable Est. of Reasonable Bundled RKA | $1,765,500 | $1,784,552 | $1,728,232 | $2,329,822 | $2,305,842 | $2,275,900 |
| Est. Bundled+MA Fee Losses | $2,143,175 | $3,065,414 | $3,573,925 | $4,843,654 | $4,647,445 | $4,705,089 |
| Compounding Percentage (Plan Return) | | 19.27% | 13.60% | 11.25% | -15.30% | 16.04% |
| Est. Conservative Cumulative Bundled+MA Fee Losses | $2,143,175 | $5,621,647 | $9,960,041 | $15,924,112 | $18,135,945 | $25,750,297 |

195.    Alternatively, Defendants paid excessive amounts in managed account fees when compared to similarly-sized plans receiving materially similar managed account services from Financial Engines.

196.    The MAS provided by AFA were provided through an agreement with Financial Engines.

197.    Financial Engines provides the same core asset allocation services to all Plan for which it acts as the managed account service provider.

198.    For instance, plans that use Financial Engines all receive the same managed account services and methodology which feature the same key drivers of asset allocation risk level:

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(a) A participant's selected retirement age and selected risk preference will drive allocation;

(b) Majority of participants use default age (65) and risk preference ("typical");

(c) "Typical" asset allocation primarily based on DIY participant asset allocations;

(d) Outside account composition will affect asset allocation (not amount of assets); and

(e) Other factors such as income and savings may affect retirement income forecast but not managed asset allocations.

199.    With regard to investment manager selection for Financial Engines, underlying investment manager selection for MAS is primarily based on two factors: (1) the plan line-up made available by the Plan Committee from which the MA provider can select; and (2) the MA provider's methodology for analyzing and selecting among strategies. Across service plans, Financial Engines will primarily select the passive managers in a given Plan, the primary drivers will be fees, turnover, and analysis of representative asset class, and may also continue to hold managers a participant held prior to enrollment.

200.    Because the managed account services provided by Financial Engines to plans are uniform, the costs of managed account services can be compared across plans as an apples-to-apples comparison. Just like Bundled RKA, Financial Engines managed account services are fungible and commoditized.

201.    Nevertheless, as the following illustrations show, Nordstrom pays a very excessive amount for MAS provided by Financial Engines through AFA as part of the Nordstrom Plan:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

| Plan | Participants | Calculated Fee (%) @ Avg Account Balance | Managed Account Provider |
|---|---|---|---|
| BRISTOL-MYERS SQUIBB COMPANY | 32,662 | 0.164% | Financial Engines |
| DUKE ENERGY CORPORATION | 36,219 | 0.195% | Financial Engines |
| DELL INC. | 62,009 | 0.226% | Financial Engines |
| CISCO SYSTEMS,INC. | 66,636 | 0.187% | Financial Engines |
| Nordstrom | 90,127 | 0.600% | Financial Engines via Alight Financial Advisors |
| AMERICAN AIRLINES, INC. - RETIREMENT | 99,540 | 0.185% | Financial Engines |
| INTERNATIONAL BUSINESS MACHINES CORPORATION | 162,870 | 0.170% | Financial Engines |
| AT&T INC. | 213,195 | 0.155% | Financial Engines |

202.    More specifically, these figures for the comparator plans are taken directly from comparator plan fee disclosures:

**Bristol Myers:**

| Professional Management Fees – Effective July 1, 2023 | |
|---|---|
| Managed Account Balance | Annual Fee |
| For the balance up to **$10,000** you'll pay: | 0.00% of this balance |
| For the balance greater than **$10,000** you'll pay: | 0.17% of this balance |

**Duke Energy:**

| Professional Management Fees – Effective | |
|---|---|
| Managed Account Balance | Annual Fee |
| For the entire Managed Account balance, you'll pay: | 0.195% of this balance |

**Dell:**

| Professional Management Fees – Effective January 1, 2020 | |
|---|---|
| Managed Account Balance | Annual Fee |
| For the balance up to **$100,000** you'll pay: | 0.25% of this balance |
| For the balance between **$100,000.01 and $250,000** you'll pay: | 0.20% of this balance |
| For the balance greater than **$250,000** you'll pay: | 0.10% of this balance |

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 42

1

**Cisco:**

| Professional Management Fees – Effective April 1, 2019 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$10,000 you'll pay:** | 0% of this balance |
| For the balance greater than **$10,000 you'll pay:** | 0.195% of this balance |

**American Airlines:**

| Professional Management Fees – Effective January 1, 2021 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For all assets you'll pay: | 0.185% of this balance |

**IBM:**

| Professional Management Fees – Rates Effective January 1, 2020 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$375,000 you'll pay:** | 0.17% of this balance |
| For the balance greater than **$375,000 you'll pay:** | 0.12% of this balance |

**AT&T:**

| Professional Management Fees – Effective October 1, 2023 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| **All assets:** | **0.155% of this balance** |

203.    By using a very conservative 25 bps for average managed account fees (which is higher than the comparator plans' fees for managed account fees above) in comparison to the 60 basis points paid by Nordstrom Plan participant for the first $100,000 for assets under management, the following excessive managed account fee calculation can be made:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Strategic Advisors - Excess Compensation over 25bps**

| Provider | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|
| Financial Engines via ALIGHT FINANCIAL ADVISORS, LLC | $538,175 | $1,443,094 | $2,002,805 | $2,725,634 | $2,551,225 | $2,636,089 | $11,897,022 |
| | | | | | | | |
| Estimated Assets @ .60% | $89,695,833 | $240,515,667 | $333,800,833 | $454,272,333 | $425,204,167 | $439,348,167 | |
| Estimated Compensation at .25% | $224,240 | $601,289 | $834,502 | $1,135,681 | $1,063,010 | $1,098,370 | |
| | | | | | | | |
| Excess Compensation | $313,935 | $841,805 | $1,168,303 | $1,589,953 | $1,488,215 | $1,537,719 | |
| Compounding Percentage (Plan Return) | | 19.27% | 13.60% | 11.25% | -15.30% | 16.04% | |
| Estimated Cumulative Losses | $313,935 | $1,216,246 | $2,549,942 | $4,426,741 | $5,237,880 | $7,615,829 | |

204.    During the entirety of the class period, and had Defendants engaged in regular and/or reasonable examination and competitive comparison of the total administrative fees it paid to Alight/AFA, including MAS account compensation, it would have realized that the Plan was compensating Alight/AFA unreasonably and inappropriately for its size and scale, passing these objectively unreasonable and excessive fee burdens to Plaintiffs and other Plan participants.

205.    During the entirety of the class period and by failing to recognize that the Plan and its participants were being charged much higher Plan administrative fees than they should have been and/or by failing to take effective and timely remedial actions including replacing the imprudent MAS asset allocation option with prudent TDFs and auto-escalation options, Defendants breached their fiduciary duty of prudence to Plaintiffs and to other Plan participants, causing tens of millions of dollars of harm to Plaintiffs and Class Member's retirement accounts.

**F.    Nordstrom's Imprudent, Disloyal, and Prohibited Use of Plan Forfeitures**

206.    The Nordstrom Plan is funded by a combination of wage withholdings by Plan participants and Company matching and non-elective contributions, each of which is

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 44

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deposited into the Plan's trust fund.

207. Nordstrom is obligated to make contributions that match employee contributions dollar for dollar on the first 1% of eligible compensation and 50 cents per dollar on the next 6% of eligible compensation, up to a total of 4% of eligible compensation.

208. Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

209. As an individual account, defined contribution retirement plan, the Nordstrom Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

210. Participants are fully vested in their salary deferrals plus actual earnings thereon. Vesting in Employer contributions is based on years of qualified service with and vest fully after two years of service.

211. Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

212. Nordstrom's Plan gave the Retirement Committee a choice about how to use the forfeitures each year. In particular, the Retirement Committee could allocate the forfeited funds to reduce the Plan's expenses, thereby saving the Participants (who otherwise pay those expenses) money, or the Retirement Committee could elect to use the forfeited funds to offset Nordstrom's own obligation to make matching contributions.

213. The Plan document provided that:

> ¶ 5.1.2 Forfeitures. To the extent not used to restore amounts previously forfeited under Section 10.8.2, forfeitures under Section 8.3 for the then completed Plan

Year shall be used to reduce the Employer contribution obligations or to pay expenses of Plan administration, as determined by the Retirement Committee in its sole discretion.

214.    In 2018, Company non-elective contributions to the Plan were reduced by $1,436,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $7,663,067 in Plan expenses.

215.    In 2019, Company non-elective contributions to the Plan were reduced by $1,262,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $9,991,899 in Plan expenses.

216.    In 2020, Company non-elective contributions to the Plan were reduced by $1,361,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $9,243,218 in Plan expenses.

217.    In 2021, Company non-elective contributions to the Plan were reduced by $3,700,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $12,355,971 in Plan expenses.

218.    In 2022, Company non-elective contributions to the Plan were reduced by $7,254,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $11,111,915 in Plan expenses.

219.    In 2023, Company non-elective contributions to the Plan were reduced by $8,469,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $11,190,756 in Plan expenses.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

220.    The following table illustrates the amount the Plan and its participants (including Plaintiffs) lost as a result of Defendants' failure to use forfeitures to defray Plan expenses:

### Forfeitures Used for Employer's Benefit

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| *Compounding Percentage (Plan Return)* | | 19.27% | 13.60% | 11.25% | -15.30% | 16.04% |
| Forfeitures Used by Plan to Reduce Employer Contributions | $1,436,000 | $1,262,000 | $1,361,000 | $3,700,000 | $7,254,000 | $8,469,000 |
| **Cumulative Compounded Reduce Employer Contribution Losses** | **$1,436,000** | **$2,974,763** | **$4,740,291** | **$8,973,532** | **$14,855,020** | **$25,706,975** |
| **Sources:** | 2018 Form 5500, Page 32 of 56 | 2019 Form 5500, Page 33 of 48 | 2020 Form 5500, Page 33 of 50 | 2021 Form 5500, Page 35 of 52 | 2022 Form 5500, Page 35 of 50 | 2023 Form 5500, Page 37 of 52 |

221.    Thus from 2018-2023, Defendants used forfeited funds to reduce the Company's contributions to the Plan by at least $23,482,000, which compounded over the relevant time period is $25,706,795.

222.    ERISA explicitly requires Plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

223.    Furthermore, in deciding to use Plan forfeiture to benefit itself as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under 29 U.S.C. § 1106(b).

224.    Defendants have not used the forfeited funds to pay Plan expenses and have thereby failed to reduce or eliminate the amounts charged to the participants' individual accounts to cover such expenses.

225.    Instead, Defendants have consistently utilized the forfeited funds in the Plan exclusively for the Company's own benefit, to the detriment of the Plan and its participants, by

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

using these Plan assets solely to reduce Nordstrom's obligation to making matching contributions to the Plan.

226.    It would have been in the best interests of the Plan and its participants for Nordstrom to use the forfeiture amounts to defray the Plan's administrative expenses, rather than to reduce Nordstrom's own contribution obligation, which amounted to self-dealing on Nordstrom's part as a fiduciary with plan assets.

227.    While Defendants' reallocation of the forfeitures in the Plan's trust fund to reduce its future non-elective contributions benefitted the Company by reducing Nordstrom's own contribution expenses, it harmed the Plan, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plan assets and by causing participants to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds.

228.    In so doing, Defendants breached their fiduciary duty of loyalty to the Plan, engaged in fiduciary prohibited transactions, and cost the Plaintiffs and class members tens of millions of dollars of lost retirement income.

**G.    Class Action Allegations**

229.    Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1), or, in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons (the Class):

> All participants in and beneficiaries of the Nordstrom 401(k) Plan at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

230.    The members of the Class are so numerous that joinder of all members is impracticable. At all relevant times, the number of class members was one hundred and ten thousand (110,000) or more.

231.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the class.  Among such questions are:

    i.    Whether Defendants failed in their fiduciary duties with respect to the administration, management and supervision of recordkeeping providers;

    ii.    Whether Defendants failed in their fiduciary duties to act as prudent financial managers and to minimize plan administrative and managed account fees;

    iii.    Whether Defendants failed in their fiduciary duties, and engaged in prohibited transactions with plan assets, by using forfeitures to save Nordstrom money rather than defray Plan expenses; and,

    iv.    Whether Defendants' breaches of fiduciary duties caused losses to the Plan and its participants, and if so, in what amount.

232.    Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

233.    Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

234.    Class certification of Plaintiffs' claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 49

would as a practical matter be dispositive of the interests of non-party Class members.

235. In the alternative, certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

236. Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

237. The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and does not involve mismanagement of individual accounts.

238. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

239. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

240. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

241. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

administrator's legal analysis and interpretation.

## FIRST CLAIM FOR RELIEF
### Breach of Duty of Prudence Under ERISA, as Amended
### (Plaintiffs, on Behalf of Themselves and Class,
### Against Defendant Plan Committee – Bundled RKA Fees)

242.    Plaintiffs restate the above allegations as if fully set forth herein.

243.    Defendant Plan Committee is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

244.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Plan Committee in its administration of the Plan.

245.    Defendant Plan Committee, as a fiduciary of the Plan, is responsible for selecting a recordkeeper that charges reasonable Bundled RKA fees.

246.    During the Class Period, Defendant Plan Committee had a fiduciary duty to do all of the following: ensure that the Plan's Bundled RKA fees were reasonable; defray reasonable expenses of administering the Plan; and act with the care, skill, diligence, and prudence required by ERISA.

247.    During the Class Period, Defendant Plan Committee breached its fiduciary duty of prudence to Plan participants, including to Plaintiffs, by failing to: ensure that the Plan's Bundled RKA fees were reasonable, defray reasonable expenses of administering the Plan, and act with the care, skill, diligence, and prudence required by ERISA.

248.    During the Class Period, Defendant Plan Committee further had a continuing duty to regularly monitor and evaluate the Plan's recordkeeper, Alight, to make sure it was providing the Bundled RKA services at reasonable cost, given the highly competitive, commodified and fungible market surrounding recordkeeping and the enormous bargaining power the Plan had to negotiate the best fees, and remove Alight if it provided RKA services at objectively

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

unreasonable fee levels.

249.     During the Class Period, Defendant Plan Committee breached its duty to Plan participants, including to Plaintiffs, by failing to employ a prudent process and by failing to evaluate the cost of the Plan's recordkeeper critically or objectively in comparison to other recordkeeper options.

250.     Defendant Plan Committee failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

251.     As a result of Defendant Plan Committee's breach of their fiduciary duties of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered tens of millions of dollars in unreasonable and unnecessary monetary losses.

252.     Defendant Plan Committee is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Nordstrom Plan the losses resulting from the breaches, to restore to the Plan any profits Defendant Plan Committee made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendant Plan Committee is subject to other equitable relief as set forth in the Prayer for Relief.

### SECOND CLAIM FOR RELIEF
**Failure to Adequately Monitor Other
Fiduciaries under ERISA, as Amended
(Plaintiffs, on Behalf of Themselves and Class, Against
Defendants Nordstrom and Board – Bundled RKA Fees)**

253.     Plaintiffs restate the above allegations as if fully set forth herein.

254.     Defendants Nordstrom and Board had the authority to appoint and remove

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 52

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

members or individuals responsible for Plan Bundled RKA fees and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

255.    In light of this authority, Defendants Nordstrom and Board had a duty to monitor those individuals responsible for Plan Bundled RKA fees to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

256.    Defendants Nordstrom and Board had a duty to ensure that the individuals responsible for Plan Bundled RKA fees possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's Bundled RKA fees; and reported regularly to Defendants.

257.    The unreasonable Bundled RKA fees paid by the Plan inferentially establish that Defendants Nordstrom and Board breached their duty to monitor by, among other things:

(a)    Failing to monitor and evaluate the performance of individuals responsible for Plan Bundled RKA fees or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of unreasonable Bundled RKA expenses;

(b)    Failing to monitor the process by which the Plan's recordkeeper, Alight, was evaluated and failing to investigate the availability of more reasonably-priced recordkeepers; and

(c)    Failing to remove individuals responsible for Plan Bundled RKA fees whose performance was inadequate in that these individuals continued to pay the same Bundled RKA fees over numerous years even though solicitation of competitive bids would have shown that maintaining Alight as the recordkeeper at the contracted price was imprudent, excessively costly, all to the detriment of the Plaintiffs' and other Plan participants' retirement savings.

258.    As the consequences of the breaches of the duty to monitor for Bundled RKA fees

the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively

unreasonable monetary losses.

259.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants Nordstrom and

Board are liable to restore to the Nordstrom Plan all losses caused by their failure to adequately

monitor individuals responsible for Plan Bundled RKA fees. In addition, Plaintiffs and the Class

are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

### THIRD CLAIM FOR RELIEF
**Breach of Duty of Prudence of ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class, Against**
**Defendant Plan Committee – Excessive Managed Account Fees)**

260.    Plaintiffs restate the above allegations as if fully set forth herein.

261.    Defendant Plan Committee is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21)

and/or 1102(a)(1).

262.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant

Plan Committee in its administration of the Plan.

263.    Defendant Plan Committee, as a fiduciary of the Plan, is responsible for selecting

RKA providers that charge objectively reasonable managed account fees.

264.    During the Class Period, Defendant Plan Committee had a fiduciary duty to do all

of the following: ensure that the Plan's managed account fees were objectively reasonable;

defray reasonable expenses of administering the Plan; and act with the care, skill, diligence, and

prudence required by ERISA.

265.    During the Class Period, Defendant Plan Committee breached its fiduciary duty of

prudence to Plan participants, including to Plaintiff, by failing to: ensure that the Plan's managed

account fees were objectively reasonable, defray reasonable expenses of administering the Plan,

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  and act with the care, skill, diligence, and prudence required by ERISA.

2  266.    During the Class Period, Defendant Plan Committee further had a continuing duty

3  to regularly monitor and evaluate the Plan's recordkeeper, Alight, and managed account

4  provider, AFA, to make sure they were providing the managed account services at reasonable

5  costs, given the highly competitive market surrounding managed account services and the

6  enormous bargaining power the Plan had to negotiate the best fees, and replace the imprudent

7  managed account with prudent TDFs.

8  267.    During the Class Period, Defendant Plan Committee breached its duty to Plan

9  participants, including to Plaintiffs, by failing to employ a prudent process and by failing to

10 evaluate the cost of the Plan's managed account service critically or objectively in comparison to

11 other asset allocations options available to the Plan, such as TDFs.

12 268.    Defendant Plan Committee's failure to discharge its duties with respect to the

13 Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a

14 prudent person acting in a like capacity and familiar with such matters would have used in the

15 conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C.

16 § 1104(a)(1)(B).

17 269.    As a result of Defendant Plan Committee's breach of fiduciary duty of prudence

18 with respect to the Plan, the Plaintiffs and Plan participants suffered tens of millions of dollars in

19 objectively unreasonable and unnecessary monetary losses.

20 270.    Defendant Plan Committee is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to

21 make good to the Nordstrom Plan the losses resulting from the breaches, to restore to the Plan

22 any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits

23 resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendant Plan

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Committee is subject to other equitable relief as set forth in the Prayer for Relief.

## FOURTH CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries under ERISA, as Amended
### (Plaintiffs, on Behalf of Themselves and Class, Against
### Defendants Nordstrom and Board – Managed Account Fees)

271.    Plaintiffs restate the above allegations as if fully set forth herein.

272.    Defendants Nordstrom and Board had the authority to appoint and remove members or individuals responsible for managed accounts on the Plan Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

273.    In light of this authority, Defendants Nordstrom and Board had a duty to monitor those individuals responsible for managed account fees on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

274.    Defendants Nordstrom and Board had a duty to ensure that the individuals responsible for managed account fees possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to managed account fees; and reported regularly to Defendants Nordstrom and Board.

275.    The objectively unreasonable and excessive managed account fees paid by the Plan by having AFA's managed account program inferentially establish that Defendants Nordstrom and Board breached their duty to monitor by, among other things:

    (a)    Failing to monitor and evaluate the performance of individuals responsible for managed account fees on the Plan Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of objectively unreasonably managed account fees;

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(b)     Failing to monitor the process by which the Plan's recordkeeper, Alight, was evaluated and failing to investigate the availability of more reasonably-priced asset allocation alternatives; and

(c)     Failing to remove individuals responsible for managed account fees on the Plan Committee whose performance was inadequate in that these individuals continued to pay the same managed account fees over numerous years even though the contracted price was imprudent and excessively costly, given the lack of value associated with the AFA managed account programs.

276.    As a consequence of the breach of the duty to monitor the Plan's managed account fees, the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

277.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants Nordstrom and Board are liable to restore to the Nordstrom Plan all losses caused by their failure to adequately monitor individuals responsible for Plan managed account fees on the Plan Committee. In addition, Plaintiffs and the Class are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## FIFTH CLAIM FOR RELIEF
### Breach Of Duty Of Loyalty
### (Plaintiffs, On Behalf Of Themselves And Class,
### Against Plan Committee – Misallocation Of Forfeitures)

278.    Plaintiffs restate the above allegations as if fully set forth herein.

279.    Defendant Plan Committee is a fiduciary of the Nordstrom Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

280.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendant Plan Committee was required to discharge its duties to the Nordstrom Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

281.    Defendant Plan Committee has continually breached this duty of loyalty with respect to its control and management of the Plan's assets throughout the class period by choosing to utilize forfeited funds in the Plan for the benefit of Nordstrom rather than solely in the interest of the Plan participants and beneficiaries.

282.    Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce or eliminate the administrative expenses charged to their individual accounts, Defendant Plan Committee chose to use Plan assets for the exclusive purpose of reducing Nordstrom's outstanding and future contributions to the Plan, thereby saving Nordstrom tens of millions of dollars at the expense of the Plan which received decreased company contributions and its participants and beneficiaries who were forced to incur avoidable expense deductions to their individual accounts or did not receive administrative credits for Plan expenses to their individual accounts.

283.    In making this decision, Defendant Plan Committee was motivated primarily or exclusively by its own self-interest rather than the interests of the Plan's participants and beneficiaries.

284.    As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which it is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

285.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## SIXTH CLAIM FOR RELIEF
**Breach of Duty of Prudence**
**(Plaintiffs, On Behalf Of Themselves and Class, Against**
**Defendant Plan Committee – Misallocation Of Forfeitures)**

286.   Plaintiffs restate the above allegations as if fully set forth herein.

287.   Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant Plan Committee was required to discharge its duties with respect to the Nordstrom Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

288.   Defendant Plan Committee has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the class period by declining to use the forfeited funds in the Plan to either eliminate the administrative expenses charged to participant accounts or provide administrative credits to participant accounts, and instead used such Plan assets to reduce Nordstrom's own future contributions to the Plan.

289.   In deciding how to allocate forfeitures, Defendant Plan Committee utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own future contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

whether participants would be better served by another use of these Plan assets after considering all relevant factors.

290.    By refusing to use forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce Nordstrom's own future contribution expenses, Defendant Plan Committee caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses.

291.    As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

292.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

### SEVENTH CLAIM FOR RELIEF
**Fiduciary Prohibited Transactions**
**(Plaintiffs, On Behalf Of Themselves and Class,**
**Against Plan Committee – Self-Dealing With Forfeitures)**

293.    Plaintiff restates the above allegations as if fully set forth herein.

294.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not,"

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 60

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

among other things, "deal with the assets of the plan in his own interest or for his own account."

295. Defendant Plan Committee violated this prohibition in its management and control of forfeiture funds in the Plan. By allocating these Plan assets toward offsetting Nordstrom's future contributions owing to the Plan, thereby saving Nordstrom tens of millions of dollars in contribution expenses, Defendant Plan Committee dealt with the assets of the Plan in their own interest and for their own account.

296. As a result of this prohibited conduct, Defendant Plan Committee caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer future contributions and the lost investment returns on those assets.

297. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## EIGHTH CLAIM FOR RELIEF
**Failure to Adequately Monitor Other Fiduciaries
(Plaintiffs, on behalf of Themselves and Class,
Against Defendants Nordstrom and Board – Misallocation of Forfeitures)**

298. Plaintiffs restate the above allegations as if fully set forth herein.

299. Defendants Nordstrom and Board had the authority to appoint and remove members or individuals responsible for Plan forfeitures on the Plan Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

300. In light of this authority, Defendants Nordstrom and Board had a duty to monitor those individuals responsible for Plan forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Nordstrom Plan in the event that these individuals were not fulfilling those duties.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

301.    Defendants Nordstrom and Board had a duty to ensure that the individuals responsible for Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Nordstrom Plan's forfeitures; and reported regularly to Defendants Nordstrom and Board.

302.    The objectively disloyal, imprudent, and conflicted manner in which Defendant Plan Committee handled Plan forfeitures inferentially establish that Defendants Nordstrom and Board breached their duty to monitor by, among other things:

(a)    Failing to monitor and evaluate the performance of individuals responsible for Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the Nordstrom Plan misallocated Plan forfeiture for Nordstrom's benefit;

(b)    Failing to monitor the process by which the Plan Committee was evaluated and failing to investigate the proper use of Plan forfeitures; and

(c)    Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures for the benefit of Nordstrom.

303.    As the consequences of the breaches of the duty to monitor for Plan forfeitures, the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

304.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants Nordstrom and Board are liable to restore to the Nordstrom Plan all losses caused by their failure to adequately monitor individuals responsible for Plan forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration the Defendants are fiduciaries, have breached their fiduciary duties of loyalty and prudence under ERISA, and engaged in fiduciary prohibited transactions, causing harm to Plan participants and beneficiaries;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty and prohibited transactions, including restoring to the Plan all losses resulting from paying unreasonable Bundled RKA fees, managed account fees, and misallocating Plan forfeitures, and restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.    An Order requiring Nordstrom to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Nordstrom as necessary to effectuate relief, and to prevent Nordstrom's unjust enrichment;

F.    An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

G.    Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary/consultant or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

H.    An award of pre-judgment interest;

I.    An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.    Such other and further relief as the Court deems equitable and just.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    DATED this 12th day of August, 2024.

2
                                    By: /s Erin M. Riley
3                                       Erin M. Riley, WSBA #30401

4                                       KELLER ROHRBACK L.L.P.
                                        1201 Third Avenue, Suite 3400
5                                       Seattle, WA 98101-3268
                                        Tel.: 206) 623-1900
6                                       Fax: (206) 623-3384
                                        eriley@kellerrohrback.com
7

8                                    By: /s Paul M. Secunda
                                        Paul M. Secunda (*pro hac vice* forthcoming)
9
                                        WALCHESKE & LUZI LLC
10                                      235 N. Executive Drive, Suite 240
                                        Brookfield, WI 53005
11                                      Tel.: (414) 828-2372
                                        Fax: (262) 565-6469
12                                      psecunda@walcheskeluzi.com
13
                                     By: /s Todd M. Schneider
14                                      Todd M. Schneider (*pro hac vice* forthcoming)

15                                   By: /s James A. Bloom
                                        James A. Bloom (*pro hac vice* forthcoming)
16
                                        SCHNEIDER WALLACE COTTRELL
17                                      KONECKY LLP
                                        2000 Powell Street, Suite 1400
18                                      Emeryville, California 94608
                                        Tel.: (415) 421-7100
19                                      Fax: (415) 421-7105
                                        tschneider@schneiderwallace.com
20                                      jbloom@schneiderwallace.com

21                                   ***Attorneys for Plaintiffs***

22

23

24

25

26

CLASS ACTION COMPLAINT
(2:24-cv-1230) - 64