UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURTIS MCWASHINGTON,
EDWARD M. MESHURIS, EMILY
SANCHEZ, JAMES ALBRIGHT, and
CORY R. CROUCHLEY, individually as
participants in the Nordstrom 401(k) Plan
and as representatives of all persons
similarly situated,

                                    Plaintiffs,

        v.

NORDSTROM, INC., BOARD OF
DIRECTORS OF NORDSTROM, INC.,
NORDSTROM 401K PLAN RETIREMENT
COMMITTEE,

                                    Defendants.

No. 2:24-cv-1230

CLASS ACTION AMENDED
COMPLAINT

        1.      Plaintiffs Curtis McWashington, Edward M. Meshuris, Emily Sanchez, James Albright, and Cory R. Crouchley ("Plaintiffs"), participants in the Nordstrom 401(k) Plan ("Plan" or "Nordstrom Plan"), bring this ERISA action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3), and under Fed. R. Civ. P. 23 as representatives of a class of participants and beneficiaries of the Plan, against defendants Nordstrom, Inc. ("Nordstrom"), the Board of Directors of Nordstrom, Inc. ("Board"), and the Nordstrom 401(k) Plan Retirement Committee

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 1

("Plan Committee") (collectively, "Defendants") for breach of ERISA's fiduciary duties and transactions prohibited by ERISA. These representative claims are brought on behalf of the Plan and seek to remedy losses suffered by the Plan under 1132(a)(2) and 409(a).

2. Nordstrom and the Board are the sponsors of the Plan.

3. The Plan Committee is the plan administrator of the Plan and the named fiduciary of the plan identified in the Plan document. The Plan Committee is also expressly vested with discretionary authority to determine whether Plan forfeitures would be used to reduce expenses paid by Plan participants or reduce Nordstrom's obligations to make future contributions to the Plan.

4. All Defendants are either express or de facto ERISA fiduciaries under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), with some level of discretionary authority or control over the matters set forth herein. As a result of their relationships with Nordstrom, all Defendants were affiliates of Nordstrom and shared interests with Nordstrom.

5. Defendants failed to fulfill their fiduciary obligation to manage the Plan prudently and loyally in the interests of the Plan and its participants, and engaged in prohibited transactions by engaging in self-dealing with Plan assets.

**INTRODUCTION**

6. With 111,352 active participants as of December 31, 2023 and $3,919,870,165 in assets, the Nordstrom Plan is one of the largest retirement plans in the country.  It ranks in the top 0.01 % of over 500,000 American 401(k) plans in terms of the number of participants and the top 0.03% of plans in terms of the value of its assets.

7. As set forth in more detail below, Defendants, as fiduciaries of the Plan, failed to fulfill their fiduciary duties to prudently and loyally ensure the Plan's bundled recordkeeping and administrative ("Bundled RKA") and managed account ("MA") expenses were reasonable and not excessive, as well as engaged in self-dealing with regard to Plan forfeitures in violation of ERISA fiduciary prohibited transaction rules by favoring their own selfish interests instead those

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 2

of Plan participants.

8.      401(k) defined contribution plans such as the Nordstrom Plan have become America's primary retirement savings vehicle. As with all defined contribution retirement plans that require participants to bear the costs of plan administration, the Plan participants' retirement savings suffer when the Plan charges participants high fees or when companies use Plan assets for their own benefit.

9.      The marketplace for retirement plan services, like Bundled RKA and managed accounts, is established and competitive. Retirement plans the size of the Nordstrom Plan have the bargaining power to obtain very low-cost Bundled RKA and managed account services from financial services providers.  The overall trend in Bundled RKA and managed account fees has been markedly downward over time.

10.      However, because of Defendants' failure to implement a prudent process to control the Plan's Bundled RKA and managed account expenses, and failure to properly understand and evaluate the amount being paid for those services from all sources despite the express regulatory command to do so, the Plan's participants paid vastly more than what comparable very large retirement plans paid for comparable Bundled RKA and managed account services.

11.      In addition, the Defendants imprudently and disloyally failed to use the Plan's forfeitures to reduce the Plan's expenses, and instead used that money to benefit Nordstrom by reducing Nordstrom's obligation to make future benefit contribution to Plan. This conduct also violated the fiduciary prohibited transaction rules against self-dealing by companies.

## JURISDICTION AND VENUE

12.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this is an action under 29 U.S.C. §§ 1132(a)(2) and (3) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

13.      This Court has personal jurisdiction over Defendants because they transact

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

14.    This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES AND THE PLAN

15.    Nordstrom is a fashion retailer incorporated in the State of Washington. Nordstrom is publicly traded on the New York Stock Exchange. Nordstrom employs roughly 54,000 people and has annual revenues exceeding $14 billion.

16.    The Nordstrom Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

17.    Nordstrom is the Plan's sponsor under 29 U.S.C. § 1002(16)(B).

18.    The Plan Committee is the Plan's administrator within the meaning of 29 U.S.C. § 1002(16)(A), and are fiduciaries for the Plan. In addition, the members of the Committee (the Plan Committee Members) are also fiduciaries for the Plan. "[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000).

19.    Membership in the Committee is limited to individuals who are officers, directors, former directors, or employees of Nordstrom, and the Plan has stipulated that the Plan Committee would have at least three members.

20.    As required by 29 U.S.C. § 1102(a)(1), the Plan is established and maintained by a written plan document.

21.    Defendants chose Alight Solutions, LLC ("Alight") to provide the Plan's Bundled RKA services during the Class Period.

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 4

22.    Defendants also chose Alight Financial Advisors, LLC ("AFA"), subadvised by Financial Engines ("FE"), to provide managed account services to Plan participants during the Class Period.

23.    Plaintiff Curtis McWashington is a resident of Spring, Texas. He worked for Nordstrom in Austin, Texas from 2009 until 2019 and had an active account in the Plan until 2020 or 2021, and was also enrolled in the AFA managed account program subadvised by FE.

24.    Plaintiff Edward M. Meshuris is a resident of Bellevue, Washington.  He was employed by Nordstrom from 2018 until 2023 and had an active account in the Plan until 2023.

25.    Plaintiff Emily Sanchez is a resident of Los Angeles, California. She has been employed by Nordstrom since 2015 and is currently an active participant in the Plan.

26.    Plaintiff James Albright is a resident of Redmond, Washington. He was employed by Nordstrom from 1994 to 2021 and had an active account in the Plan until 2021.

27.    Plaintiff Cory R. Crouchley is a resident of Brush Prairie, Washington. He was employed by Nordstrom from 2015 to 2023 and is currently an active participant in the Plan.

28.    Plaintiffs have Article III standing to bring this action on behalf of the Nordstrom 401(k) Plan because they suffered actual injuries through breach of fiduciary duty with regard to recordkeeping and managed account fees and the misallocation of Plan forfeitures by Defendants with regard to the Nordstrom 401(k) Plan during the Class Period. Those injuries are fairly traceable to Defendants' unlawful conduct in paying excessive Bundled RKA and managed account fees, and using Plan forfeitures for their own benefit, and these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings by tens of millions of dollars.

29.    Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

30.    The Plaintiffs and all participants in the Plan did not have knowledge of all

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

material facts (including, among other things, the excessive Bundled RKA and managed accounts, as well as the misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

31.     Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the fees associated with Plan Bundled RKA and managed account services, and lacked knowledge of how Plan forfeitures should be allocated according to the Plan and ERISA.

## ERISA FIDUCIARY STANDARDS

32.     ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Plan, that are covered by ERISA.  ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)(A), (B).

33.     ERISA's fiduciary duties under have been described as being among the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

34.     The obligation to ensure that retirement plan fees are reasonable is at the heart of ERISA fiduciary duties. *See Marshall v. Snyder*, 572 F.2d 894, 897 (2d Cir. 1978) ("The responsibility for paying reasonable compensation was the unequivocal fiduciary responsibility of the [plan's fiduciaries].").

35.     As the Ninth Circuit explained, "cost-conscious management is fundamental to prudence in the investment function." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts § 90(c)(3), cmt. *b*).

36.     The content of ERISA fiduciary's duties is "derived from the common law of

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 6

trusts." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2465 (2014). Therefore "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble v. Edison Int'l,* 575 U.S. 523, 528-529 (2015). Under the common law of trusts, fiduciaries may "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." Restatement (Third) of Trusts § 90(c)(3) (2007).

37. In determining whether ERISA fiduciary defendants fulfilled their duties under the statute, courts consider how a prudent and loyal financial expert familiar with investment industry practices and fees would have acted. As explained below, here, a prudent and loyal financial expert would have acted very differently than did Defendants.

38. Defendants failed to fulfill their duty to prudently and loyally control the Bundled RKA and managed account expenses paid by the Plan, and in so doing caused the Plan's participants to incur tens of millions of dollars in unnecessary expenses.

39. Furthermore, in deciding to use Plan forfeitures to benefit themselves as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of Plan assets. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under 29 U.S.C. § 1106(b).

**FACTUAL ALLEGATIONS**

**A.      ERISA's Fiduciary Standards in the Defined Contribution Industry**

40. The Plan is an individual account, defined contribution pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

41. The Plan is funded by a combination of salary withholding by plan participants and employer matching contributions.

42. Participant accounts in the Plan are comprised of employee contributions, any employer contributions and any investment income from the investment options selected within the participant account, less fees and expenses.

43. In a defined contribution retirement plan such as the Nordstrom Plan, the plan

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 7

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses … which may be allocated to such participant's accounts." ERISA § 3(34), 29 U.S.C. § 1002(34).

44.     Unlike traditional defined benefit pension plans, which obligate employers to pay a particular amount at retirement (benefits that are guaranteed by the Pension Benefit Guarantee Corporation), participants in defined contribution plans (like the Nordstrom Plan) get no more at retirement than they have in their accounts at that time.

45.     As such, ERISA's fiduciary duty to ensure fees paid by the Plan are reasonable is especially important in the context of Plan fees paid by defined contribution plan participants, as the fees reduce dollar for dollar (and more, when compounded) the amount of benefits Plan participants will receive at retirement.

46.     As the Supreme Court explained in 2015, in defined contribution plans like the Plan, employees' benefits at retirement "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, *less expenses*." *Tibble*, 575 U.S. at 525 (emphasis added).

47.     Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement -- "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Id*. In the context of individual account defined contribution plans, additional fees of only 1% can have a large effect on investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble*, 843 F.3d at 1190.

48.     Seemingly small differences in fees can lead to vastly different outcomes at retirement. For example, a 1% difference in fees can mean 28% less in retirement assets over a thirty-five-year period, U.S. Dept. of Labor, A Look at 401(k) Plan Fees, (August 2013) at 1-2,

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 8

*https://www.dol.gov/ebsa/publications/401k_employee.html*. Therefore, fees are of critical importance to an ERISA fiduciary's prudent investment menu selection.

49.    As such, plan fiduciaries like Defendants here must: (1) establish a prudent process for selecting service providers and reviewing investments; (2) ensure that fees paid to service providers are reasonable in light of the level and quality of services provided; and (3) monitor service providers and investments once selected to make sure they continue to be prudent choices.

**B.    Bundled Recordkeeping and Administrative ("Bundled RKA") Services and Fees**

50.    Defined contribution plan fiduciaries of massive 401(k) plans, like the Nordstrom Plan, hire service providers to deliver a retirement plan benefit to their employees. There is a group of national retirement plan services providers commonly and generically referred to as "recordkeepers," that have developed bundled service offerings that can meet all the needs of massive retirement plans with a prudent and materially similar level and caliber set of Plan services. Alight is one of the largest of such recordkeepers.

51.    There are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to very large defined contribution plans like the Plan.

52.    The cost of RKA services depends mostly on the number of Plan participants, and less so on the amount of assets in the Plan.

53.    Because the cost of recordkeeping services depends primarily on the number of participants, and not on the amount of assets in the participant's account, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.

54.    There are at least three types of RKA services provided by all recordkeepers and other service providers to massive Plan like the Nordstrom Plan.

55.    The first type, "Bundled RKA," also referred to as "Plan Administration Fees" in the Plan Fee Disclosure to Participants, may include some or all of the following services:

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 9

a.    Recordkeeping;

b.    Transaction Processing (which includes the technology to process purchases and sales of participants' assets as well as providing the participants the access to investment options selected by the plan sponsor);

c.    Administrative Services related to converting a plan from one recordkeeper to another recordkeeper;

d.    Participant communications (including employee meetings, call centers/phone support, voice response systems, web account access, and the preparation of other communications to participants, e.g., Summary Plan descriptions and other participant materials);

e.    Maintenance of an employer stock fund;

f.    Plan Document Services which include updates to standard plan documents to ensure compliance with new regulatory and legal requirements;

g.    Plan consulting services including assistance in selecting the investments offered to participants;

h.    Plan professional services including accounting, audit, appraisal, and legal services (though these services may be paid separately outside of Bundled RKA);

i.    Compliance support which would include, e.g., assistance interpreting plan provisions and ensuring the operation of the plan follows legal requirements and the provisions of the plan;

j.    Compliance testing to ensure the plan complies with Internal Revenue nondiscrimination rules; and

k.    Trustee/custodian services (though Alight does not have in-house trustee or custodial services, so these fees are paid to a third-party outside of the Bundled RKA fees).

56.    These Bundled RKA services are fungible and commoditized, and are standard services provided by all major recordkeepers for massive ERISA 401(k) plans, like the Nordstrom Plan.

57.    This does not mean all plans have identical RKA services, only that plans are provided the *same set of Bundled RKA services*, and can pick and choose among them like an all-you-can-eat buffet.

58.    In other words, the Plan provided participants all the fungible and commoditized Bundled RKA services provided to all other very large 401(k) plan participants. The quality or

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

type of Bundled RKA services provided by competitor recordkeepers are comparable to that provided by Alight. Any differences in Bundled RKA services are immaterial to the price quoted by recordkeepers other service providers for such services.

59.     According to the 2023 notes to the Nordstrom Plan's Financial Statements, attached to the Annual Report on Form 5500, "[s]ubstantially all the administrative expenses, including recordkeeping, trustee and other fees, incurred in connection with the Plan are paid by the Plan through an allocation to participant accounts."

60.     According to the Plan October 2023 Annual Fee Disclosure Statement to Participants, "administrative fees" includes "Plan services such as trustee, legal, recordkeeping, and accounting services . . . . *Historically*, these fees have ranged from $2-$5 each month." (emphasis added).

**C.     The Bundled RKA Services are the Same Set of Services as all the Comparator Plans**

61.     The services listed in the Plan's Financial Statement and Fee Disclosures are basic Bundled RKA services and establish that Nordstrom had the *same set of services* (not identical) as all the comparator plans discussed in more detail below.

62.     In other words, there is nothing in Plan's Financial Statement and Fee Disclosures to suggest that there is anything exceptional, unusual, or customized, about the Bundled RKA services provided to the Nordstrom Plan participants by Alight.

63.     This action focuses only on ***Plan Bundled RKA fees paid to Alight*** and related to recordkeeping and trustee services, including recordkeeping services (code 15) and undisclosed direct payments from the plan (code 50), as outlined in Schedule C of the 2018-2023 Department of Labor ("DOL") 5500 Forms filed by the Nordstrom Plan fiduciaries.

64.     Because Alight is a recordkeeper only and does not provide custodial or trustee services, Alight's payment to Bank of New York Mellon for trustee services is included in the Bundled RKA fee to make an apples-to-apples comparison with regard to the selected

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

comparator plans which include trustee fees.

65.    The Plan paid separate amounts to other Plan service providers when Alight was the Plan recordkeeper and Bank of New York Mellon was the trustee/custodian, including the following:

**Schedule C - Direct Compensation**

| Provider | Relationship | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|---|
| ALIGHT SOLUTIONS LLC | RECORDKEEPER | $2,790,335 | $2,555,341 | $2,208,366 | $2,654,614 | $3,390,311 | $3,424,752 | $17,023,719 |
| ALIGHT FINANCIAL ADVISORS, LLC | NONE | $538,175 | $1,443,094 | $2,002,805 | $2,725,634 | $2,551,225 | $2,636,089 | $11,897,022 |
| BANK OF NEW YORK MELLON | CUSTODIAN | $722,919 | $747,590 | $667,896 | $818,033 | $895,364 | $1,181,928 | $5,033,730 |
| CALLAN ASSOCIATES | CONSULTANT | $217,833 | $197,833 | $357,833 | $311,433 | $315,141 | $358,961 | $1,759,034 |
| WILLIS TOWERS WATSON | NONE | $0 | $0 | $0 | $0 | $51,288 | $210,212 | $261,500 |
| DODGE & COX | INVESTMENT MANAGER | $1,744,425 | $1,873,674 | $1,307,636 | $2,512,219 | $1,700,959 | $789,833 | $9,928,746 |
| LANE POWELL | LAWYER | $14,480 | $27,241 | $20,679 | $0 | $0 | $0 | $62,400 |
| MOSS ADAMS | AUDITOR | $75,058 | $55,193 | $68,675 | $51,300 | $61,500 | $64,575 | $376,301 |
| VOYA INVESTMENT MANAGEMENT COI | NONE | $597,002 | $1,228,088 | $899,329 | $1,266,626 | $423,850 | $181,065 | $4,595,960 |
| WILLIAM BLAIR INVESTMENT MGMT LL | NONE | $921,975 | $1,854,195 | $1,704,178 | $1,947,757 | $1,578,008 | $2,033,231 | $10,039,344 |
| WILLIS TOWER WATSON | NONE | $36,315 | $0 | $0 | $0 | $0 | $0 | $36,315 |
| QDRO CONSULTANTS CO LLC | CONSULTANT | $0 | $9,100 | $4,200 | $6,650 | $4,200 | $2,800 | $26,950 |
| JACKSON LEWIS | ERISA COUNSEL (FORMER) | $0 | $0 | $0 | $32,114 | $0 | $0 | $32,114 |
| THOMPSON HINE | ERISA COUNSEL (CURRENT) | $0 | $0 | $0 | $28,790 | $138,044 | $255,013 | $421,847 |
| STATE STREET GLOBAL ADVISORS | NONE | $0 | $0 | $0 | $0 | $0 | $52,246 | $52,246 |
| **Total Schedule C Direct Compensation ($)** | | $7,658,517 | $9,991,349 | $9,241,597 | $12,355,170 | $11,109,890 | $11,190,705 | $61,547,228 |
| Total Schedule C Direct Compensation ($/pp) | | $95 | $123 | $118 | $117 | $106 | $108 | |

66.    The same true is for the comparator plans, as far as paying other Plan service providers:

**Lowes 401(k) Plan - Schedule C - Direct Compensation**

| Provider | Relationship | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|---|
| WELLS FARGO BANK NA | SERVICE PROVIDER | $1,014,486 | $1,119,334 | $3,074,274 | $620,029 | $0 | $0 | $5,828,123 |
| METROPOLITAN LIFE INSURANCE COMPANY | SERVICE PROVIDER | $152,209 | $142,477 | $154,925 | $181,445 | $173,636 | $94,421 | $899,113 |
| BPS&M | NONE | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| FINDLEY, INC | NONE | $52,500 | $52,000 | $34,750 | $15,500 | $0 | $0 | $154,750 |
| PRINCIPAL LIFE INSURANCE COMPANY | CONTACT ADMINISTRATOR | $0 | $0 | $0 | $845,437 | $1,320,447 | $1,175,633 | $3,341,517 |
| **Total Schedule C Direct Compensation ($)** | | $1,219,195 | $1,313,811 | $3,263,949 | $1,662,411 | $1,494,083 | $1,270,054 | $10,223,503 |
| Total Schedule C Direct Compensation ($/pp) | | $8 | $8 | $19 | $11 | $10 | $9 | $11 |

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### UPS 401 (K) Savings Plan - Schedule C - Direct Compensation

| Provider | Relationship | 2018 | 2019 | 2020 | 2021 | 2022 | Total |
|---|---|---|---|---|---|---|---|
| VOYA | NONE | $2,647,792 | $2,959,873 | $1,138,910 | $2,928,206 | $2,693,263 | $12,368,044 |
| BLACKROCK | NONE | $198,473 | $785,470 | $1,057,583 | $1,078,467 | $1,026,615 | $4,146,608 |
| STATE STREET GLOBAL ADVISORS | NONE | $581,611 | $1,069,216 | $191,340 | $0 | $0 | $1,842,167 |
| STATE STREET BANK | NONE | $556,467 | $228,900 | $996,740 | $863,852 | $0 | $2,645,959 |
| THE BANK OF NEW YORK MELLON | NONE | $0 | $0 | $0 | $197,582 | $154,116 | $351,698 |
| STATE STREET GLOBAL ADV TRUST COMP | NONE | $0 | $0 | $0 | $0 | $0 | $0 |
| QDRO BENEFITS FIRM, SUSAN L.DUBROF, | NONE | $0 | $0 | $0 | $0 | $73,498 | $73,498 |
| **Total Schedule C Direct Compensation ($)** | | $3,984,343 | $5,043,459 | $3,384,573 | $5,068,107 | $3,947,492 | $21,427,974 |
| Total Schedule C Direct Compensation ($/pp) | | $33 | $38 | $23 | $37 | $29 | $32 |

### Aldi Inc. Retirement Savings Plan - Schedule C - Direct Compensation

| Provider | Relationship | 2018 | 2019 | 2020 | 2021 | 2022 | Total |
|---|---|---|---|---|---|---|---|
| T ROWE PRICE RPS INC | NONE | $1,681,915 | $1,817,393 | $1,724,666 | $1,845,488 | $1,913,981 | $8,983,443 |
| **Total Schedule C Direct Compensation ($)** | | $1,681,915 | $1,817,393 | $1,724,666 | $1,845,488 | $1,913,981 | $8,983,443 |
| Total Schedule C Direct Compensation ($/pp) | | $41 | $37 | $35 | $33 | $32 | $35 |

67.     Although comparator plans, like the Leidos, Inc. Retirement Plan, Aldi Inc. Retirement Savings Plan, Fidelity Retirement Savings Plan, Deloitte 401K Plan, UPS 401(K) Savings Plan, and Lowes 401(K) Plan, use different service codes on their 5500 Forms than the Nordstrom Plan, as the Third Circuit recently observed in *Mator v. Wesco Distrib, Inc.*, "the different service codes do not undermine the [plan] comparisons because they apparently overlap." All of the plans list either "'Recordkeeping fees,' 'Recordkeeping and information management (computing, tabulating, data processing),' or both." *See id.*, 102 F.4th 172, 186 (3d Cir. 2024).

68.     Here, the following charts shows the same is true with regard to the Nordstrom Plan's comparator plans *for 2018-2023* with regard to both asset size and participant size. Each list recordkeeping fees (Code 64), "Recordkeeping and information management (computing, tabulating, data processing) (Code 15), or both," just as in *Mator*:

| Plan | Service / Compensation Codes |
|---|---|
| Leidos, Inc. Retirement Plan | 15, 16, 25, 26, 33, 37, 38, 52, 99 |
| Aldi Inc. Retirement Savings Plan | 15, 21, 25, 28, 37, 38, 49, 50, 52, 59, 62, 64, 65, 99 |
| Fidelity Retirement Savings Plan | 15, 50, 64, 65, 71 |
| **Nordstrom 401K Plan** | **15, 50** |

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 13

| Deloitte 401K Plan | 15, 37 |
| UPS 401 (K) Savings Plan | 15, 26, 50 |
| Lowes 401(K) Plan | 15, 21, 50, 62, 64 |

69.     Consequently, the Bundled RKA analysis focused on recordkeeping (Codes 15 and 64) and trustee fees (codes 21, 25, 50, 99) provided by Alight is an appropriate method to make an apples-to-apples comparison, and then infer a flawed fiduciary process from the disparity in RKA fees.

70.     The chart above provides an apples-to-apples comparison because all Bundled RKA fees from the comparator plans include recordkeeping, administration and trustee/custodial services – even if some just use "recordkeeping" as the terminology in the participant disclosure.

71.     In other words, all the comparable plans' "recordkeeping fees" *include* trustee/custodial services as part of Bundled RKA fees because it is industry standard for all service providers besides Alight to include that as part of their "recordkeeping fees."

72.     The first three comparators look like they do not include legal and accounting.  The last three comparators have the language that would suggest the comparable fee includes those services. Yet, the comparator plans' 5500 Forms do seem not include any legal or accounting, so it appears to be boilerplate language.

73.     In short, "[a]t this stage, the record does not reveal the codes' precise meanings, nor whether all plans define the codes consistently. But given that all the plans received some portion of an overlapping constellation of recordkeeping services, the comparisons help nudge the [plaintiffs'] claims across the line from possible to plausible." *Mator*, 102 F.4th at 186

74.     The Nordstrom Plan provided participants all the commoditized and fungible Bundled RKA services provided to all other massive 401(k) plan participants. The quality or type of RKA services provided by competitor recordkeepers are comparable to that provided by Alight to the Nordstrom Plan.

75.     Any differences in these Bundled RKA services are immaterial to the price quoted

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

by recordkeepers and trustees for such Bundled RKA services.

76. Industry experts have maintained for years that for very large retirement plans like the Plan, prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price. "Custody and recordkeeping are 'commodity' services. Like any commodity, given equal quality, the key benchmark for these services is price. The cheaper you can find competent custody and recordkeeping services, the better for participants." Eric Droblyen, *Evaluating 401(k) Providers: Separating Commodity from Value-Added Services*, https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services.

77. Because Bundled RKA services are commoditized, recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for very large plans like the Plan.

78. Given the very large size of the Plan, the price paid by the Plan for Bundled RKA services to Alight, and the trend of price compression for Bundled RKA services over the last six years for Bundled RKA service, it is possible to infer that Defendants did not engage in any effective competitive solicitation of Bundled RKA service bids during the Class Period.

79. The second type of essential RKA services, hereafter referred to as "A La Carte services," provided by all recordkeepers, often have separate, additional fees based on the conduct of individual participants and the usage of the service by individual participants. These "A La Carte RKA" services typically include the following:

        a. Loan processing;

        b. Brokerage services/account maintenance;

        c. Distribution services; and

        d. Processing of Qualified Domestic Relations Orders (QDROs).

80. These fees are included in all RFPs for recordkeeping that plans undertake, but only make up a small amount of the Total RKA fee and these fees are treated separately on Fee

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Disclosures under ERISA Section 404(a)(5), and not included for Nordstrom or the comparator plans for this analysis.

81. The third type of RKA fees are Ad Hoc fees which are transaction fees and other administrative fees, and include such things as ESOP fees, fees for service, and terminated maintenance fees.

82. Again, Ad Hoc fees are treated separately on Fee Disclosures under ERISA Section 404(a)(5), and not included for Nordstrom or the comparator plans for this analysis.

83. Bundled RKA fee numbers represent the best methodology for determining apples-to-apples comparisons of plans as far as what is being charged to plan participants for Bundled RKA, as A La Carte and Ad Hoc Fees are negligible in comparison.

84. Because the Bundled RKA offerings are fungible among all recordkeepers who provide services to massive plans, like the Nordstrom Plan, it is the standard and prevailing practice for retirement plan consultants and advisors to request quotes by asking what the "revenue requirement" is on a per participant basis for providing the Bundled RKA services.

85. This approach is validated by the structure of the RFPs sent out by retirement plan consultants and advisors and the responses provided by the recordkeepers and other service providers and then the summary of the evaluations created by the retirement plan consultants and advisors.

86. Fidelity, the largest 401k recordkeeper in the country and a direct competitor of Alight, has in fact conceded in another recent case that the Bundled RKA services that it provides to very large plans are commodified, including the plan services provided to its own employees.

87. As part of stipulated facts in a previous case, Fidelity stated: "The value of the recordkeeping services that Fidelity provided to the Plan in 2014 was $21 per participant; the value of the recordkeeping services that Fidelity provided to the Plan in 2015 and 2016 was $17 per participant, per year, and the value of the recordkeeping services that Fidelity has

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

provided to the Plan since January 1, 2017 is $14 per participant, per year. Had the Plan been a third-party plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity it could have obtained recordkeeping services for these amounts during these periods. *The Plan did not receive any broader or more valuable recordkeeping services from Fidelity than the services received by any other Fidelity-recordkept plan with at least $1 billion in assets during the Class Period (November 18, 2014 to the present).*" See *Moitoso v. FMR LLC, et al.*, 1:18-CV-12122-WGY, Stipulation of Facts, Dkt. 128-67, at 4-5 (D. Mass. Sep. 6, 2019) (emphasis added).

88.    By the start of, and during the entire Class Period, the level of fees that recordkeepers and other service providers have been willing to accept for providing Bundled RKA has stabilized, and has not materially changed for very large plans, including the Plan.

89.    The investment options selected by plan fiduciaries also often have a portion of the total expense ratio allocated to the provision of recordkeeping performed by the recordkeepers on behalf of the investment manager.

90.    Recordkeepers often collect a portion of the total expense ratio fee of the mutual fund in exchange for providing services that would otherwise have to be provided by the mutual fund. These fees are known as "revenue sharing" or "indirect compensation."

91.    The Plan paid both direct and indirect RKA fees during the Class Period to Alight.

92.    The comparator plans either paid direct and indirect RKA fees or only direct RKA fees, but either way, the same methodology was utilized and indirect compensation was taken into consideration for both the Plan and the comparator plans.

**D.    Standard of Care for Prudent Fiduciaries Selecting & Monitoring Retirement Plan Service Providers**

93.    Prudent plan fiduciaries ensure they are paying only reasonable fees for Bundled RKA by engaging in an "independent evaluation," see *Hughes v. Northwestern Univ.*, 142 S. Ct.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

737, 742 (2022), and soliciting competitive bids from other recordkeepers to perform the same level and quality of services currently being provided to the Plan.

94.     Prudent plan fiduciaries can easily receive a quote from other RKA providers to determine if the current level of Bundled RKA fees is reasonable in light of the level and quality of Bundled RKA fees. It is not a cumbersome or expensive process.

95.     It is the standard of care prevailing among industry experts to solicit competitive bids every three to five years. *See* CAPTRUST, *Understanding and Evaluating Retirement Plan Fees | Part One: A Holistic Approach*, https://www.captrust.com/understanding-and-evaluating-retirement-plan-fees-part-one-a-holistic-approach/.

96.     "Recordkeeping and administrative fees should be evaluated and compared to plans of similar size and type that are receiving analogous services. While each plan is unique—making an apples-to-apples comparison imperfect—evaluating fees against similarly situated and sized plans provides a good reference point in helping to determine if plan fees are reasonable." *Id.*

97.     "Give all of [bidding recordkeepers] complete and identical information about your plan and the features you want so that you can make a meaningful comparison. This information should include the *number of plan participants and the amount of plan assets as of a specified date.*") *See, e.g.,* U.S. DEPARTMENT OF LABOR, *Understanding Retirement Plan Fees and Expenses*, at 6, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf (last visited October 31, 2024) (emphasis added).

98.     Having received bids, prudent plan fiduciaries can negotiate with their current RKA providers for a lower fee or move to a new RKA provider to provide a materially similar level and qualities of services for a more competitive reasonable fee if necessary.

99.     An internal benchmarking survey from CapTrust, Fiduciary Decisions, or similar benchmarking service providers, is inadequate to determine a reasonable Bundled RKA fee.

Such surveys skew to higher "average prices," that favor inflated Bundled RKA fees. To receive a "reasonable" Bundled RKA fee in the prevailing market, prudent plan fiduciaries engage in solicitations of competitive bids on a periodic basis.

100.    Prudent fiduciaries implement three related processes to prudently manage and control a plan's RKA costs. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014).

101.    First, a hypothetical prudent fiduciary tracks RKA provider's expenses by demanding documents that summarize and contextualize their compensation, such as fee transparencies, fee analyses, fee summaries, relationship pricing analyses, cost-competitiveness analyses, and multi-practice and standalone pricing reports.

102.    Second, to make an informed evaluation as to whether a RKA provider is receiving no more than a reasonable fee for the quality and level of services provided to a plan, prudent hypothetical fiduciaries must identify all fees, including direct compensation and revenue sharing being paid to the plan's RKA provider.

103.    Third, a hypothetical plan fiduciary must remain informed about overall trends in the marketplace regarding the fees being paid by other plans, as well as the RKA rates that are available. By soliciting bids from other RKA providers, a prudent plan fiduciary can quickly and easily gain an understanding of the current market for the same level and quality of RKA services.

104.    Accordingly, the best way to determine the *reasonable*, as opposed to the *cheapest* or *average*, market price for a given quality and level of RKA services is to obtain competitive bids from other providers in the market. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 625-626 (7th Cir. 2023) ("*Hughes II*") (although "a fiduciary *need not constantly solicit quotes* for recordkeeping services to comply with its duty of prudence, . . . fiduciaries who fail to monitor the reasonableness of plan fees and *fail to take action to mitigate excessive fees—such as by* adjusting fee arrangements, *soliciting bids*, consolidating recordkeepers, negotiating for rebates with existing recordkeepers, or other means—may violate their duty of prudence.")

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 19

(emphasis added).

**E.    The Plan's Bundled RKA Fees Were Too High**

105.    Every defined contribution plan requires recordkeeping.  There are numerous vendors that can provide high quality recordkeeping services to defined contribution plans such as the Nordstrom Plan. These vendors strenuously compete against each other by offering the lowest price for the best service.

106.    A plan fiduciary must monitor its Bundled RKA fees on an ongoing basis by regularly conducting an independent evaluation of those fee to ensure they are reasonable and remove or renegotiate with RKA providers if those fees are unreasonable. *See Hughes*, 142 S. Ct. at 742.

107.    Defendants, as the Plan's fiduciaries, selected the recordkeeping and administrative (RKA) service providers for the Plan and controlled which investment options and investment vehicles were available in the Plan. Defendants were responsible for monitoring those service providers, and the fees they charged, on an ongoing basis.

108.    Large plans are generally able to leverage their size to obtain lower fees per participant, in part because of the economies of scale that large plans provide recordkeepers.

109.    With over 100,000 participants and nearly four billions dollars in assets during the Class Period, the Plan is one of the largest defined contribution plans in the United States.

110.    The Plan thus had enormous bargaining power to obtain and maintain very low fees for Bundled RKA services and had significant leverage to procure high quality management and administrative services at a low cost.

111.    Defendants failed to leverage the Plan's size to obtain reasonable Bundled RKA fees.

112.    During the Class Period, Defendants egregiously failed to regularly monitor the Plan's Bundled RKA fees paid to Alight.

113.    During the Class Period, Defendants failed to regularly solicit quotes and/or

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 20

competitive bids from RKA providers, including but not limited to Alight, in order to avoid paying unreasonable Bundled RKA fees.

114.    During the Class Period, and unlike a hypothetical prudent fiduciary, Defendants followed a fiduciary process that was ineffective given the objectively unreasonable Bundled RKA fees it paid to Alight for at least six years, and in light of the level and quality of Bundled RKA services it received that were materially similar and fungible services available through other RKA providers and provided to other massive plans.

115.    As set forth in the table below, from the years 2018 through 2023, based upon information provided by the Plan fiduciaries to Plan participants in the Participant Required Disclosures under Section 404(a)(5) and in audited financial statements, the Plan paid an effective average annual Bundled RKA fee of $39 per participant between 2018 and 2023:

### Bundled Recordkeeping and Administration (Bundled RKA) Fees

|  | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Average |
|---|---|---|---|---|---|---|---|
| Participants | 80,250 | 81,116 | 78,556 | 105,901 | 104,811 | 103,450 | 92,347 |
| Est. Bundled RKA Fees | $2,799,462 | $2,837,742 | $2,738,662 | $3,700,232 | $3,573,652 | $5,887,412 | $3,589,527 |
| Est. Bundled RKA Per Participant | $35 | $35 | $35 | $35 | $34 | $57 | $39 |

116.    The table and graph below illustrates the annual Bundled RKA fees paid by other similarly-sized, comparable plans, receiving a materially similar level and quality of commoditized and fungible Bundled RKA services, compared to the average annual Bundled RKA fees paid by the Plan (as identified in the table above), during different times periods of the Class Period.

### Comparable Plans' Bundled RKA Fees Based on Publicly Available Information from Participant Fee Disclosures or Financial Statements

| Plan | Participants | Assets | Bundled RKA Fee ($) | Bundled RKA Fee ($/pp) | Recordkeeper |
|---|---|---|---|---|---|
| Leidos, Inc. Retirement Plan | 46,995 | $10,028,148,473 | $1,080,885 | $23 | Vanguard |
| Aldi Inc. Retirement Savings Plan | 49,311 | $1,323,136,562 | $1,232,775 | $25 | T. Rowe Price |
| Aldi Inc. Retirement Savings Plan | 56,577 | $1,559,687,491 | $1,301,271 | $23 | T. Rowe Price |

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 21

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

| | | | | | |
|---|---|---|---|---|---|
| Fidelity Retirement Savings Plan | 64,113 | $24,332,734,660 | $897,582 | $14 | Fidelity |
| **Nordstrom Plan 2020 Fee** | **78,556** | **$3,834,162,869** | **$2,738,662** | **$35** | **Alight** |
| **Nordstrom Plan 2018 Fee** | **80,250** | **$3,148,259,217** | **$2,799,462** | **$35** | **Alight** |
| **Nordstrom Plan 2019 Fee** | **81,116** | **$3,702,872,924** | **$2,837,742** | **$35** | **Alight** |
| Deloitte 401K Plan | 98,051 | $9,949,148,795 | $2,353,224 | $24 | Vanguard |
| **Nordstrom Plan 2023 Fee** | **103,450** | **$3,915,279,299** | **$5,887,412** | **$57** | **Alight** |
| **Nordstrom Plan 2022 Fee** | **104,811** | **$3,436,596,376** | **$3,573,652** | **$34** | **Alight** |
| **Nordstrom Plan 2021 Fee** | **105,901** | **$4,146,880,456** | **$3,700,232** | **$35** | **Alight** |
| UPS 401 (K) Savings Plan | 135,312 | $13,766,529,403 | $3,112,176 | $23 | Voya |
| Lowes 401(K) Plan | 154,402 | $5,619,838,861 | $2,856,437 | $18.50 | Wells Fargo |

**Note:** Aldi's fee changed from $25 in 2020 to $23 in 2021.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



117. To provide evidence that the Plan paid unreasonable and excessive fees for RKA services, the Plaintiffs considered the Bundled RKA fee rates set forth in participant fee disclosures of other comparable plans or in the audited financial statements. The evidence of the Bundled RKA fee rates paid by these comparable plans provides additional evidence that the RKA fees paid by the Plan were excessive and unreasonable and leads to a likely inference that the Plan fiduciaries employed an imprudent process.

118. The Bundled RKA fee rates paid by each of these comparable plans provides evidence that the Plan paid excessive fees because there are no RKA services offered by any recordkeeper that would warrant or reasonably explain the disparity between the effective Bundled RKA fee rate paid by the Plan and the Bundled RKA fee rate that other comparable plans received for the materially similar Bundled RKA services during the Class Period.

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Bundled Recordkeeping and Administration (Bundled RKA) Fees**

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Average |
|---|---|---|---|---|---|---|---|
| Participants | 80,250 | 81,116 | 78,556 | 105,901 | 104,811 | 103,450 | 92,347 |
| Est. Bundled RKA Fees | $2,799,462 | $2,837,742 | $2,738,662 | $3,700,232 | $3,573,652 | $5,887,412 | $3,589,527 |
| Est. Bundled RKA Per Participant | $35 | $35 | $35 | $35 | $34 | $57 | $39 |
| Reliable Est. of Reasonable Bundled RKA Fees | $1,685,250 | $1,703,436 | $1,649,676 | $2,223,921 | $2,201,031 | $2,172,450 | $1,939,294 |
| Reliable Est. of Reasonable Bundled RKA Fees Per PP | $21 | $21 | $21 | $21 | $21 | $21 | $21 |
| Est. Bundled RKA Losses | $1,114,212 | $1,134,306 | $1,088,986 | $1,476,311 | $1,372,621 | $3,714,962 | $1,650,233 |
| Est. Bundled RKA Losses Per PP | $14 | $14 | $14 | $14 | $13 | $36 | $18 |

119.    The Plan's Bundled RKA fee rate of at least $39 per participant can then be compared to the Bundled RKA fee rate of other comparable plans.

120.    During the entirety of the Class Period, a hypothetical prudent plan fiduciary would not agree to pay *an over 85% premium* for what they could otherwise pay for the materially similar level and quality of Bundled RKA services.

121.    The comparable plans identified above are "meaningful benchmarks" that can support an inference that the Plan's fiduciaries did not follow a prudent process to ensure the Plan paid only reasonable fees for materially similar Bundled RKA fungible services.

122.    The Bundled RKA fees paid by the Plan to Alight during the Class Period were excessive relative to the Bundled RKA services rendered given the commoditized and fungible nature of Bundled RKA fees for massive plans like the Nordstrom Plan.

123.    From the years 2018 through 2023, and based upon information derived from the Plan participant disclosure forms and audited financials in similarly sized plans, the Plan additionally cost its participants on average approximately $1,650,223 per year in unreasonable and excessive Bundled RKA fees, which equates to, on average, approximately $18 per participant per year.

124.    From the years 2018 to 2023, and because Defendants did not act with prudence, and as compared to other plans of similar sizes and with a materially similar level and quality of Bundled RKA services, the Plan actually cost its participants a total minimum amount of approximately **$9,901,398** in unreasonable and excessive Bundled RK&A fees.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

125.    From the years 2018 to 2023, and based upon information derived from the Plan participant disclosure forms and audited financials, because Defendants did not act prudently, and as compared to other plans of similar sizes and with a materially similar level and quality of Bundled RKA services, the Nordstrom Plan caused Plan participants to suffer losses (when accounting for compounding percentages/lost market investment opportunity) a total cumulative amount of **$11,004,277** in unreasonable and excessive Bundled RKA fees:

### Bundled Recordkeeping and Administration (Bundled RKA) Fees

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Est. Bundled RKA Fees | $2,799,462 | $2,837,742 | $2,738,662 | $3,700,232 | $3,573,652 | $5,887,412 |
| Reasonable Bundled RKA Fees | $1,685,250 | $1,703,436 | $1,649,676 | $2,223,921 | $2,201,031 | $2,172,450 |
| Est. Conservative Bundled RKA Losses | $1,114,212 | $1,134,306 | $1,088,986 | $1,476,311 | $1,372,621 | $3,714,962 |
| Compounding Percentage (Plan Return) | | 19.27% | 13.60% | 11.25% | -15.30% | 15.96% |
| Est. Conservative Cumulative Bundled RKA Losses | $1,114,212 | $2,463,262 | $3,887,219 | $5,800,808 | $6,286,188 | $11,004,277 |

126.    Defendants could have received Bundled RKA services during the Class Period of the same level and quality from Alight that provide Bundled RKA services to massive plans, like the Nordstrom Plan, because the participant fee disclosures and audited financials establish that the Nordstrom Plan received no services that were materially different than the fungible and commoditized services received by all the comparable plans.

127.    For instance, Plan legal and accounting/auditing fees do not explain the large discrepancy between the Bundled RKA fees for Nordstrom and the same fees for the comparator plans, even if one concludes that "plan administrative" fees included these amounts:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 25

## Schedule C - Direct Compensation for Legal and Accounting

| Provider | Relationship | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|---|
| LANE POWELL | LAWYER | $14,480 | $27,241 | $20,679 | $0 | $0 | $0 | $62,400 |
| MOSS ADAMS | AUDITOR | $75,058 | $55,193 | $68,675 | $51,300 | $61,500 | $64,575 | $376,301 |
| JACKSON LEWIS | ERISA COUNSEL (FORMER) | $0 | $0 | $0 | $32,114 | $0 | $0 | $32,114 |
| THOMPSON HINE | ERISA COUNSEL (CURRENT) | $0 | $0 | $0 | $28,790 | $138,044 | $255,013 | $421,847 |
| Total Schedule C Direct Compensation ($) | | $89,538 | $82,434 | $89,354 | $112,204 | $199,544 | $319,588 | $892,662 |
| Total Schedule C Direct Compensation ($/pp) | | $1 | $1 | $1 | $1 | $2 | $3 | |

128. Defendants failed to take advantage of the Plan's massive size to timely negotiate lower fees from Alight or any other service provider during the class period.

129. Defendants could have obtained the materially same Bundled RKA services for less from other RKA providers or from Alight had the Defendants only leveraged the Plan's enormous size on the RKA provider marketplace in a more timely and prudent manner.

130. Defendants did not conduct effective or competitive bidding for Bundled RKA services during the Class Period, and failed to use the Plan's enormous size to negotiate rebates from Alight.

131. Plaintiffs and Class Members paid these excessive Bundled RKA fees in the form of direct and indirect compensation to the Plan and suffered injuries to their Plan accounts as a result.

132. During the entirety of the Class Period, and had Defendants engaged in regular and/or reasonable examination and competitive comparison of the Bundled RKA fees it paid to Alight, it would have realized that the Plan was compensating Alight unreasonably and inappropriately for its size and scale, passing these objectively unreasonable and excessive fee burdens to Plaintiffs and other Plan participants.

133. By failing to implement an objective oversight process, the Plan fiduciaries failed to understand the enormous additional compensation Alight gleaned from the Bundled RKA

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 26

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

services. As a result, Defendants have violated the duties of prudence by failing to account for all the direct and indirect compensation received by Alight.

134.    During the entirety of the Class Period, and by failing to recognize that the Nordstrom Plan and its participants were being charged excessive Bundled RKA fees and by failing to take effective remedial actions, Defendants breached their fiduciary duty of prudence to Plaintiffs and to other Plan participants, causing tens of millions of dollars of harm to Plaintiffs and Class Member's retirement accounts.

**F.    Financial Engines Charged the Plan Excessive Managed Account (MA) Service Fees**

135.    The key characteristics of managed account (MA) services are: (1) participants turn over discretion to the advice provider; (2) the provider assumes responsibility for the asset allocation and selection decisions, generally utilizing investment options offered with the plan; and (3) decisions are based on information provided to the provider by the plan sponsor and/or recordkeeper, as well as through interaction with the participant (this information may include investment objectives, risk preferences, and investments held outside the defined contribution plan.

136.    Over the past number of years, the managed account landscape has evolved as the total number of plans and participants using the MA service has steadily increased as other MA providers have sought to compete more effectively with Financial Engines (FE).

137.    The Nordstrom Plan provided a managed account (MA) service through Alight's wholly-owned subsidiary, Alight Financial Advisors ("AFA").

138.    In turn, AFA is sub-advised by Edelman Financial Engines ("FE").

139.    The MA services provided by Financial Engines to plans are materially the same whether provided directly by Financial Engines or whether they sub-advise through another entity like AFA, Empower, or Vanguard.

140.    Financial Engines provides a MA strategy distinctive from its two main

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 27

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

competitors, Morningstar and Fidelity.

141.    Unlike Morningstar and Fidelity, Financial Engines provides the same core asset allocation services to all plans for which it acts as the MA service provider.

142.    For instance, plans that use FE all receive the same MA services and methodology which feature the same key drivers of asset allocation risk level:

(a)    A participant's selected retirement age and selected risk preference will drive allocation;

(b)    Majority of participants use default age (65) and risk preference ("typical");

(c)    "Typical" asset allocation primarily based on DIY participant asset allocations;

(d)    Outside account composition will affect asset allocation (not amount of assets); and

(e)    Other factors such as income and savings may affect retirement income forecast but not managed asset allocations.

143.    With regard to investment manager selection for FE, underlying investment manager selection for MAs is primarily based on two factors: (1) the plan line-up made available by the Plan Committee from which the MA provider can select; and (2) the MA provider's methodology for analyzing and selecting among strategies.

144.    Across service plans, FE will primarily select the passive managers in a given plan, and the primary drivers will be fees, turnover, analysis of representative asset class, and FE may also continue to hold investments a participant already holds.

145.    Several recordkeepers have additional MA solutions or have built their own, creating downward pressure on managed account fees across the industry.

146.    Yet, according to the Plan October 2023 Annual Fee Disclosure Statement for the Participants, the MA participants paid at a rate of 0.60% of assets for the first $100,000, at a rate of 0.45% of assets for the next $100,001 to $250,000, and at a rate of 0.30% of assets for $250,001 or more.

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 28

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

147. Defendants paid excessive amounts in MA fees when compared to similarly-sized plans receiving materially similar MA services from Financial Engines.

148. Because the MA services provided by FE to plans are materially similar, the costs of MA services should also be materially similar for plans which have a similar number of participants and assets.

149. Just like Bundled RKA, Financial Engines managed account services are fungible and commoditized in this manner.

150. More specifically, these figures for the comparator plans are taken directly from the comparator plans' Fee Disclosures to Participants and show how much less they paid for materially similar FE MA services:

**Bristol Myers:**

| Professional Management Fees – Effective July 1, 2023 | |
| --- | --- |
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$10,000** you'll pay: | 0.00% of this balance |
| For the balance greater than **$10,000** you'll pay: | 0.17% of this balance |

**Duke Energy:**

| Professional Management Fees – Effective | |
| --- | --- |
| **Managed Account Balance** | **Annual Fee** |
| For the entire Managed Account balance, you'll pay: | 0.195% of this balance |

**Dell:**

| Professional Management Fees – Effective January 1, 2020 | |
| --- | --- |
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$100,000** you'll pay: | 0.25% of this balance |
| For the balance between **$100,000.01 and $250,000** you'll pay: | 0.20% of this balance |

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 29

| For the balance greater than **$250,000 you'll pay:** | 0.10% of this balance |
|---|---|

**Cisco:**

| Professional Management Fees – Effective April 1, 2019 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$10,000 you'll pay:** | 0% of this balance |
| For the balance greater than **$10,000 you'll pay:** | 0.195% of this balance |

**American Airlines:**

| Professional Management Fees – Effective January 1, 2021 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For all assets you'll pay: | 0.185% of this balance |

**IBM:**

| Professional Management Fees – Rates Effective January 1, 2020 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| For the balance up to **$375,000 you'll pay:** | 0.17% of this balance |
| For the balance greater than **$375,000 you'll pay:** | 0.12% of this balance |

**AT&T:**

| Professional Management Fees – Effective October 1, 2023 | |
|---|---|
| **Managed Account Balance** | **Annual Fee** |
| All assets: | 0.155% of this balance |

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 30

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

151. The average of all the comparative Plan MA fees is 18.3 basis points for FE services:

**Comparable Plans' Managed Account Fee Rate Average**

| Plan | Assets | Participants | Managed Account Direct Comp | Calculated Fee (%) @ Avg Account Balance | Managed Account Provider |
|---|---|---|---|---|---|
| Bristol-Myers Squibb Savings and Investment Program | $8,462,972,899 | 26,306 | $1,680,886 | 0.165% | Financial Engines |
| Duke Energy Retirement Savings Plan | $9,712,511,667 | 36,599 | $5,784,077 | 0.195% | Financial Engines |
| Dell Inc. 401(K) Plan | $12,265,169,167 | 62,549 | $2,707,075 | 0.225% | Financial Engines |
| Cisco Systems,Inc. 401(K) Plan | $15,851,876,376 | 62,491 | $3,518,822 | 0.187% | Financial Engines |
| American Airlines, Inc. 401(K) Plan | $13,464,697,817 | 103,773 | $5,816,063 | 0.185% | Financial Engines |
| IBM 401 (K) Plus Plan | $56,827,415,737 | 169,033 | $369,865 | 0.170% | Financial Engines |
| AT&T Retirement Savings Plan | $44,826,937,833 | 242,239 | $9,269,500 | 0.155% | Financial Engines |
| | | | Average | 0.183% | |

152. Yet, Nordstrom continues to pay unreasonable and excessive MA fees for the materially same FE MA services being received by these other comparator plans with similar numbers of participants and assets.

153. Whereas Nordstrom pays 60 basis points in fees for the first $100,000 in account balances (which accounts for the fees paid by most managed account participants), the comparators plans pay an average of 18.3 basis points for at least the first $100,000 in plan accounts (and sometimes for the entire plan account no matter the balance):

**Comparable Plans' Managed Account Fee Rates**

| Plan | Average Assets 2018-2023 | Average Participants 2018-2023 | Average Managed Account Direct Comp 2018-2023 ($) | Calculated Fee (%) @Avg Account Balance | Managed Account Provider |
|---|---|---|---|---|---|
| Bristol-Myers Squibb Savings and Investment Program | $8,462,972,899 | 26,306 | $1,680,886 | 0.165% | Financial Engines |
| Duke Energy Retirement Savings Plan | $9,712,511,667 | 36,599 | $5,784,077 | 0.195% | Financial Engines |
| Dell Inc. 401(K) Plan | $12,265,169,167 | 62,549 | $2,707,075 | 0.225% | Financial Engines |
| Cisco Systems,Inc. 401(K) Plan | $15,851,876,376 | 62,491 | $3,518,822 | 0.187% | Financial Engines |
| Nordstrom | $3,697,341,857 | 92,347 | $1,982,837 | 0.600% | Financial Engines |
| American Airlines, Inc. 401(K) Plan | $13,464,697,817 | 103,773 | $5,816,063 | 0.185% | Financial Engines |
| IBM 401 (K) Plus Plan | $56,827,415,737 | 169,033 | $369,865 | 0.170% | Financial Engines |
| AT&T Retirement Savings Plan | $44,826,937,833 | 242,239 | $9,269,500 | 0.155% | Financial Engines |

154. Nordstrom excessive and unreasonable payments to FE for materially the same MA services provided to other plans has cost Plan participants enrolled in the MA program

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 31

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

almost ten million dollars in lost retirement income:

**Excess Compensation over 18.3bps**

| Provider | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|
| Financial Engines | $538,175 | $1,443,094 | $2,002,805 | $2,725,634 | $2,551,225 | $2,636,089 | $11,897,022 |
| | | | | | | | |
| Estimated Assets @ .60% | $89,695,833 | $240,515,667 | $333,800,833 | $454,272,333 | $425,204,167 | $439,348,167 | |
| Estimated Compensation at .183% | $164,143 | $440,144 | $610,856 | $831,318 | $778,124 | $804,007 | |
| | | | | | | | |
| Excess Compensation | $374,032 | $1,002,950 | $1,391,949 | $1,894,316 | $1,773,101 | $1,832,082 | |
| Compounding Percentage (Plan Return) | | 19.27% | 13.60% | 11.25% | -15.30% | 15.96% | |
| Estimated Cumulative Losses | $374,032 | $1,449,070 | $3,038,073 | $5,274,146 | $6,240,560 | $9,068,488 | |

155.    A plan fiduciary must monitor the total administrative fees, including MA compensation, it pays to the MA service provider by regularly conducting an independent evaluation of those fees to ensure that such administrative fees are reasonable and remove or renegotiate with the MA if those fees are unreasonable or imprudent.

156.    During the Class Period, Defendants egregiously failed to regularly monitor the MA compensation paid to FE.

157.    During the Class Period, Defendants failed to consider other alternatives to the FE MA service in order to avoid having Plan participants pay excessive and unreasonable MA fees.

158.    During the class period, and unlike a hypothetical prudent fiduciary, Defendants followed a fiduciary process that was ineffective given the objectively unreasonable MA fees.

159.    The Plan Committee, as Plan fiduciaries, should have compared MAs to other MAs through periodic reviews to determine whether given cost, risk, performance, and other pertinent factors, maintaining FE as the Plan MA service provide was prudent.

160.    During the entirety of the class period, and had Defendants engaged in regular and/or reasonable examination and competitive comparison of the total administrative fees it paid to FE, it would have realized that the Plan was compensating FE unreasonably and

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 32

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

inappropriately for its size and scale, passing these objectively unreasonable and excessive fee burdens to Plaintiffs and other Plan participants.

161.   During the entirety of the class period and by failing to recognize that the Plan and its participants were being charged much higher Plan MA fees than they should have been and/or by failing to take effective and timely remedial actions including replacing FE, Defendants breached their fiduciary duty of prudence to Plaintiffs and to other Plan participants, causing tens of millions of dollars of harm to Plaintiffs and Class member's retirement accounts.

**G.     Nordstrom's Imprudent, Disloyal, and Prohibited Use of Plan Forfeitures**

162.   The Nordstrom Plan is funded by a combination of wage withholdings by Plan participants and Company matching and non-elective contributions, each of which is deposited into the Plan's trust fund.

163.   Nordstrom is obligated to make contributions that match employee contributions dollar for dollar on the first 1% of eligible compensation and 50 cents per dollar on the next 6% of eligible compensation, up to a total of 4% of eligible compensation.

164.   Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

165.   As an individual account, defined contribution retirement plan, the Nordstrom Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

166.   Participants are fully vested in their salary deferrals plus actual earnings thereon. Vesting in Employer contributions is based on years of qualified service and vest fully after two years of service.

167.   Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

168. Nordstrom's Plan gave the Retirement Committee a choice about how to use the forfeitures each year. In particular, the Retirement Committee could allocate the forfeited funds to reduce the Plan's expenses, thereby saving the Participants (who otherwise pay those expenses) money, or the Retirement Committee could elect to use the forfeited funds to offset Nordstrom's own obligation to make matching contributions.

169. The 2021 version of the Plan document has two pertinent provisions:

> 6.5 Forfeiture Suspense Account.
>
> ¶ 6.5.3 Allocation of Forfeitures held in the Forfeiture Suspense Account. The forfeiture suspense account will be used first to restore any previously forfeited amounts under Section 10.8.2, **and then to reduce Company contributions as provided under Section 5.1.2.** (emphasis added).

170. In turn, the pertinent provision in Section 5 states:

> 5.1 Employer Profit Sharing Contribution.
>
> ¶ 5.1.2 Forfeitures. To the extent not used to restore amounts previously forfeited under Section 10.8.2, forfeitures under Section 8.3 for the then completed Plan Year *shall be used to reduce the Employer contribution obligations or to pay expenses of Plan administration, as determined by the Retirement Committee in its sole discretion.* (emphasis added).

171. The combination of ¶¶ 6.5.3 and 5.1.2, working in tandem, means that the forfeiture suspense account will be used, after restoring previously forfeited amounts, to **either** reduce Company contributions **or** pay expenses of Plan administration, as determined by the Retirement Committee **in its sole discretion.** (emphasis added).

172. To read this Plan language to require the Retirement Committee to always use forfeitures to reduce Company contributions would render the "provided under Section 5.1.2" language in ¶6.5.3 superfluous.

173. The Retirement Plan is thus given "sole discretion" by the Plan to determine whether to use forfeitures from the forfeiture suspense account to reduce Company contributions or pay expenses of Plan administration.

174. In 2018, Company non-elective contributions to the Plan were reduced by

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

$1,436,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $7,663,067 in Plan expenses.

175.    In 2019, Company non-elective contributions to the Plan were reduced by $1,262,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $9,991,899 in Plan expenses.

176.    In 2020, Company non-elective contributions to the Plan were reduced by $1,361,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $9,243,218 in Plan expenses.

177.    In 2021, Company non-elective contributions to the Plan were reduced by $3,700,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $12,355,971 in Plan expenses.

178.    In 2022, Company non-elective contributions to the Plan were reduced by $7,254,000 as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $11,111,915 in Plan expenses.

179.    In 2023, Company non-elective contributions to the Plan were reduced by $8,469,000  as a result of Defendants' reallocation of forfeited funds for the Company's own benefit, and no forfeited funds were used to pay any part of the $11,190,756 in Plan expenses.

### Preliminary Forfeiture Claim Analysis for Nordstrom 401K Plan

| Plan Demographics | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Participants | 80,250 | 81,116 | 78,556 | 105,901 | 104,811 | 103,450 |
| Assets | $3,148,259,217 | $3,702,872,924 | $3,834,162,869 | $4,146,880,456 | $3,436,596,376 | $3,915,279,299 |
| Average Account Balance | $39,231 | $45,649 | $48,808 | $39,158 | $32,789 | $37,847 |
| Termed Participants < 100% Vested | 4,751 | 2,740 | 3,289 | 17,910 | 30,461 | 20,711 |

180.    The following table illustrates the amount the Plan and its participants (including Plaintiffs) lost as a result of Defendants' failure to use forfeitures to defray Plan expenses:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Direct Compensation - Schedule C Not Paid by Forfeitures** *(Disloyal Discretion Theory)*

|  | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Minimum Forfeitures Available to offset Plan Expenses | $1,436,000 | $1,262,000 | $1,361,000 | $3,700,000 | $7,254,000 | $8,469,000 |
| Total Direct Compensation | $7,658,517 | $9,991,349 | $9,241,597 | $12,355,170 | $11,109,890 | $11,190,705 |
| Forfeitures used to pay Plan Expenses | $0 | $0 | $0 | $0 | $0 | $0 |
| Potential Losses | $1,436,000 | $1,262,000 | $1,361,000 | $3,700,000 | $7,254,000 | $8,469,000 |
| Compounding Percentage (Plan Return) |  | 19.27% | 13.60% | 11.25% | -15.30% | 15.96% |
| Potential Cumulative Compounded Losses | $1,436,000 | $2,974,763 | $4,740,291 | $8,973,532 | $14,855,020 | $25,694,529 |

181.    Thus from 2018-2023, Defendants used forfeited funds to reduce the Company's contributions to the Plan by, which when compounded by Plan return, over the relevant time period is **$25,694,529**.

182.    ERISA explicitly requires Plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

183.    Furthermore, in deciding to use Plan forfeiture to benefit itself as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under 29 U.S.C. § 1106(b).

184.    Defendants have not used the forfeited funds to pay Plan expenses and have thereby failed to reduce or eliminate the amounts charged to the participants' individual accounts to cover such expenses.

185.    Instead, Defendants have consistently utilized the forfeited funds in the Plan exclusively for the Company's own benefit, to the detriment of the Plan and its participants, by using these Plan assets solely to reduce Nordstrom's obligation to making matching contributions to the Plan.

186.    It would have been in the best interests of the Plan and its participants for Nordstrom to use the forfeiture amounts to defray the Plan's administrative expenses, rather than to reduce Nordstrom's own contribution obligation, which amounted to self-dealing on Nordstrom's part as a fiduciary with plan assets.

187.    While Defendants' reallocation of the forfeitures in the Plan's trust fund to reduce its future non-elective contributions benefitted the Company by reducing Nordstrom's own contribution expenses, it harmed the Plan, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plan assets and by causing participants to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds.

188.    In so doing, Defendants breached their fiduciary duty of loyalty to the Plan, engaged in fiduciary prohibited transactions, and cost the Plaintiffs and class members tens of millions of dollars of lost retirement income.

**H.    Class Action Allegations**

189.    Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1), or, in the alternative, 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following subclasses of similarly situated persons:

RKA and Forfeiture Subclass

All participants in and beneficiaries of the Nordstrom 401(k) Plan at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment.

Managed Account Subclass

All participants in the Nordstrom 401(k) Plan, who were enrolled at any time in the Alight Financial Advisors/Financial Engine managed account service from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Defendants have concealed the

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 37

facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Defendants' breaches through the date of judgment.

190. The members of the Subclasses are so numerous that joinder of all members is impracticable. At all relevant times, the number of class members was over one hundred thousand (100,000) for the RKA and Forfeiture subclass and ten thousand (10,000) for the Managed Account subclass.

191. Common questions of law and fact exist as to all members of each of the Subclasses. Among such questions are:

i. Whether Defendants failed in their fiduciary duties with respect to the administration, management and supervision of recordkeeping or managed account providers;

ii. Whether Defendants failed in their fiduciary duties to act as prudent financial managers and to minimize plan RKA and managed account fees;

iii. Whether Defendants failed in their fiduciary duties, and engaged in prohibited transactions with plan assets, by using forfeitures to save Nordstrom money rather than defray Plan expenses; and,

iv. Whether Defendants' breaches of fiduciary duties caused losses to the Plan and its participants, and if so, in what amount.

192. Plaintiffs' claims are typical of the claims of each of the Subclasses pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct. Plaintiff McWashington alone has claims typical of the Managed Account Subclass.

193. Plaintiffs will adequately represent the Subclasses pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the Class Period, have no interest that conflicts with the Subclasses, are committed to the vigorous representation of the Subclasses, and have engaged experienced and competent lawyers to represent the Subclasses.

194. Class certification of Plaintiffs' claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 38

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Subclass members would as a practical matter be dispositive of the interests of non-party Subclass members.

195.    In the alternative, certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

196.    Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

197.    The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and does not involve mismanagement of individual accounts.

198.    The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

199.    Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

200.    Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

201.    Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 39

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**Breach of Duty of Prudence Under ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class,**
**Against Defendant Plan Committee – Bundled RKA Fees)**

202.    Plaintiffs restate the above allegations as if fully set forth herein.

203.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

204.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendants in its administration of the Plan.

205.    Defendants, as fiduciaries of the Plan, are responsible for selecting a recordkeeper that charges reasonable Bundled RKA fees.

206.    During the Class Period, Defendants had a fiduciary duty to do all of the following: ensure that the Plan's Bundled RKA fees were reasonable; defray reasonable expenses of administering the Plan; and act with the care, skill, diligence, and prudence required by ERISA.

207.    During the Class Period, Defendants breached their fiduciary duty of prudence to Plan participants, including to Plaintiffs, by failing to: ensure that the Plan's Bundled RKA fees were reasonable, defray reasonable expenses of administering the Plan, and act with the care, skill, diligence, and prudence required by ERISA.

208.    During the Class Period, Defendants further had a continuing duty to regularly monitor and evaluate the Plan's recordkeeper, Alight, to make sure it was providing the Bundled RKA services at reasonable cost, given the highly competitive, commodified and fungible market surrounding recordkeeping and the enormous bargaining power the Plan had to negotiate the best fees, and remove Alight if it provided RKA services at objectively unreasonable fee levels.

209.    During the Class Period, Defendants breached their duty to Plan participants,

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 40

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

including to Plaintiffs, by failing to employ a prudent process and by failing to evaluate the cost of the Plan's recordkeeper critically or objectively in comparison to other recordkeeper options.

210.    Defendants failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

211.    As a result of Defendants' breach of their fiduciary duties of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered tens of millions of dollars in unreasonable and unnecessary monetary losses.

212.    Defendants are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Nordstrom Plan the losses resulting from the breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendants are subject to other equitable relief as set forth in the Prayer for Relief.

**SECOND CLAIM FOR RELIEF**
**Failure to Adequately Monitor Other**
**Fiduciaries under ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class, Against**
**Defendants Nordstrom and Board – Bundled RKA Fees)**

213.    Plaintiffs restate the above allegations as if fully set forth herein.

214.    Defendants Nordstrom and Board had the authority to appoint and remove members or individuals responsible for Plan Bundled RKA fees and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

215.    In light of this authority, Defendants Nordstrom and Board had a duty to monitor those individuals responsible for Plan Bundled RKA fees to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

216.     Defendants Nordstrom and Board had a duty to ensure that the individuals responsible for Plan Bundled RKA fees possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's Bundled RKA fees; and reported regularly to Defendants.

217.     The unreasonable Bundled RKA fees paid by the Plan inferentially establish that Defendants Nordstrom and Board breached their duty to monitor by, among other things:

(a)     Failing to monitor and evaluate the performance of individuals responsible for Plan Bundled RKA fees or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of unreasonable Bundled RKA expenses;

(b)     Failing to monitor the process by which the Plan's recordkeeper, Alight, was evaluated and failing to investigate the availability of more reasonably-priced recordkeepers; and

(c)     Failing to remove individuals responsible for Plan Bundled RKA fees whose performance was inadequate in that these individuals continued to pay the same Bundled RKA fees over numerous years even though solicitation of competitive bids would have shown that maintaining Alight as the recordkeeper at the contracted price was imprudent, excessively costly, all to the detriment of the Plaintiffs' and other Plan participants' retirement savings.

218.     As the consequences of the breaches of the duty to monitor for Bundled RKA fees the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable monetary losses.

219.     Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants Nordstrom and Board are liable to restore to the Nordstrom Plan all losses caused by their failure to adequately monitor individuals responsible for Plan Bundled RKA fees. In addition, Plaintiffs and the Class are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 42

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**THIRD CLAIM FOR RELIEF**
**Breach of Duty of Prudence of ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class, Against**
**Defendant Plan Committee – Excessive Managed Account Fees)**

220.    Plaintiffs restate the above allegations as if fully set forth herein.

221.    Defendant Plan Committee is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

222.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Plan Committee in its administration of the Plan.

223.    Defendant Plan Committee, as a fiduciary of the Plan, is responsible for selecting MA providers that charge objectively reasonable managed account fees.

224.    During the Class Period, Defendant Plan Committee had a fiduciary duty to do all of the following: ensure that the Plan's managed account fees were objectively reasonable; defray reasonable expenses of administering the Plan; and act with the care, skill, diligence, and prudence required by ERISA.

225.    During the Class Period, Defendant Plan Committee breached their fiduciary duty of prudence to Plan participants, including to Plaintiffs, by failing to: ensure that the Plan's managed account fees were objectively reasonable, defray reasonable expenses of administering the Plan, and act with the care, skill, diligence, and prudence required by ERISA.

226.    During the Class Period, Defendant Plan Committee further had a continuing duty to regularly monitor and evaluate the Plan's managed account providers, AFA and FE, to make sure they were providing the managed account services at reasonable costs, given the highly competitive market surrounding managed account services and the enormous bargaining power the Plan had to negotiate the best fees, and replace the imprudent managed account service with less expensive services.

227.    During the Class Period, Defendant Plan Committee breached its duty to Plan participants, including to Plaintiffs, by failing to employ a prudent process and by failing to

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 43

evaluate the cost of the Plan's managed account service critically or objectively in comparison to other MA options available to the Plan.

228. Defendant Plan Committee's failure to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

229. As a result of Defendant Plan Committee's breach of fiduciary duty of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered millions of dollars in objectively unreasonable and unnecessary monetary losses.

230. Defendant Plan Committee is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Nordstrom Plan the losses resulting from the breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Defendant Plan Committee is subject to other equitable relief as set forth in the Prayer for Relief.

**FOURTH CLAIM FOR RELIEF**
**Failure to Adequately Monitor Other Fiduciaries under ERISA, as Amended**
**(Plaintiffs, on Behalf of Themselves and Class, Against**
**Defendants Nordstrom and Board – Managed Account Fees)**

231. Plaintiffs restate the above allegations as if fully set forth herein.

232. Defendants Bechtel and Board had the authority to appoint and remove members or individuals responsible for managed accounts on the Plan Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

233. In light of this authority, Defendants Nordstrom and Board had a duty to monitor those individuals responsible for managed account fees on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 44

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

234.    Defendants Nordstrom and Board had a duty to ensure that the individuals responsible for managed account fees possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to managed account fees; and reported regularly to Defendants Nordstrom and Board.

235.    The objectively unreasonable and excessive managed account fees paid by the Plan by having AFA and FE's managed account program inferentially establish that Defendants Bechtel and Board breached their duty to monitor by, among other things:

(a)    Failing to monitor and evaluate the performance of individuals responsible for managed account fees on the Plan Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses in the form of objectively unreasonably managed account fees;

(b)    Failing to monitor the process by which the Plan's MA providers, AFA and FE, were evaluated and failing to investigate the availability of more reasonably-priced MA service alternatives; and

(c)    Failing to remove individuals responsible for managed account fees on the Plan Committee whose performance was inadequate in that these individuals continued to pay the same managed account fees over numerous years even though the contracted price was imprudent and excessively costly, given the lack of value associated with the AFA and FE managed account program.

236.    As a consequence of the breach of the duty to monitor the Plan's managed account fees, the Plaintiffs and Plan participants suffered millions of dollars of objectively unreasonable and unnecessary monetary losses.

237.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants Nordstrom and Board are liable to restore to the Nordstrom Plan all losses caused by their failure to adequately monitor individuals responsible for Plan managed account fees on the Plan Committee. In addition, Plaintiffs and the Class are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 45

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**FIFTH CLAIM FOR RELIEF**
**Breach Of Duty Of Loyalty**
**(Plaintiffs, On Behalf Of Themselves And Class,**
**Against Plan Committee – Misallocation Of Forfeitures)**

238.    Plaintiffs restate the above allegations as if fully set forth herein.

239.    Defendant Plan Committee is a fiduciary of the Nordstrom Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

240.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendant Plan Committee was required to discharge their duties to the Nordstrom Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

241.    Defendant Plan Committee have continually breached this duty of loyalty with respect to their control and management of the Plan's assets throughout the class period by choosing to utilize forfeited funds in the Plan for the benefit of Nordstrom rather than solely in the interest of the Plan participants and beneficiaries.

242.    Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce or eliminate the administrative expenses charged to their individual accounts, Defendant Plan Committee discretionarily chose, as fiduciaries, to use Plan assets for the exclusive purpose of reducing Nordstrom's outstanding and future contributions to the Plan, thereby saving Nordstrom tens of millions of dollars at the expense of the Plan which received decreased company contributions and its participants and beneficiaries who were forced to incur avoidable expense deductions to their individual accounts or did not receive administrative credits for Plan expenses to their individual accounts.

243.    In making this decision, Defendant Plan Committee was motivated primarily or exclusively by their own self-interest rather than the interests of the Plan's participants and beneficiaries.

244.    As a direct and proximate result of Defendant Plan Committee's fiduciary

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 46

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

breaches described herein, the Plan suffered injury and loss for which it is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

245.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**SIXTH CLAIM FOR RELIEF**
**Breach of Duty of Prudence**
**(Plaintiffs, On Behalf Of Themselves and Class, Against**
**Defendant Plan Committee – Misallocation Of Forfeitures)**

246.    Plaintiffs restate the above allegations as if fully set forth herein.

247.    Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant Plan Committee was required to discharge its duties with respect to the Nordstrom Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

248.    Defendant Plan Committee has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the class period by declining to use the forfeited funds in the Plan to either eliminate the administrative expenses charged to participant accounts or provide administrative credits to participant accounts, and instead used such Plan assets to reduce Nordstrom's own future contributions to the Plan.

249.    In deciding how to allocate forfeitures, Defendant Plan Committee utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own future contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

250.    By refusing to use forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce Nordstrom's own future contribution expenses, Defendant Plan Committee caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses.

251.    As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

252.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**SEVENTH CLAIM FOR RELIEF**
**Fiduciary Prohibited Transactions**
**(Plaintiffs, On Behalf Of Themselves and Class,**
**Against Plan Committee – Self-Dealing With Forfeitures)**

253.    Plaintiff restates the above allegations as if fully set forth herein.

254.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

255.    Defendant Plan Committee violated this prohibition in its management and control of forfeiture funds in the Plan.  By allocating these Plan assets toward offsetting Nordstrom's future contributions owing to the Plan, thereby saving Nordstrom tens of millions of dollars in contribution expenses, Defendant Plan Committee dealt with the assets of the Plan in their own interest and for their own account.

256.    As a result of this prohibited conduct, Defendant Plan Committee caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer future contributions and the lost investment returns on those assets.

257.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

**EIGHTH CLAIM FOR RELIEF**
**Failure to Adequately Monitor Other Fiduciaries**
**(Plaintiffs, on behalf of Themselves and Class,**
**Against Defendants Nordstrom and Board – Misallocation of Forfeitures)**

258.    Plaintiffs restate the above allegations as if fully set forth herein.

259.    Defendants Nordstrom and Board had the authority to appoint and remove members or individuals responsible for Plan forfeitures on the Plan Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

260.    In light of this authority, Defendants Nordstrom and Board had a duty to monitor those individuals responsible for Plan forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Nordstrom Plan in the event that these individuals were not fulfilling those duties.

261.    Defendants Nordstrom and Board had a duty to ensure that the individuals

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

responsible for Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Nordstrom Plan's forfeitures; and reported regularly to Defendants Nordstrom and Board.

262. The objectively disloyal, imprudent, and conflicted manner in which Defendant Plan Committee handled Plan forfeitures inferentially establish that Defendants Nordstrom and Board breached their duty to monitor by, among other things:

    (a)    Failing to monitor and evaluate the performance of individuals responsible for Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the Nordstrom Plan misallocated Plan forfeiture for Nordstrom's benefit;

    (b)    Failing to monitor the process by which the Plan Committee was evaluated and failing to investigate the proper use of Plan forfeitures; and

    (c)    Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures for the benefit of Nordstrom.

263. As the consequences of the breaches of the duty to monitor for Plan forfeitures, the Plaintiffs and Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

264. Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants Nordstrom and Board are liable to restore to the Nordstrom Plan all losses caused by their failure to adequately monitor individuals responsible for Plan forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

    A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 50

B.  Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.  A Declaration the Defendants are fiduciaries, have breached their fiduciary duties of loyalty and prudence under ERISA, and engaged in fiduciary prohibited transactions, causing harm to Plan participants and beneficiaries;

D.  An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty and prohibited transactions, including restoring to the Plan all losses resulting from paying unreasonable Bundled RKA fees, managed account fees, and misallocating Plan forfeitures, and restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.  An Order requiring Nordstrom to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Nordstrom as necessary to effectuate relief, and to prevent Nordstrom's unjust enrichment;

F.  An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

G.  Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary/consultant or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

H.  An award of pre-judgment interest;

I.  An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.  Such other and further relief as the Court deems equitable and just.

DATED this 1st day of November, 2024.

By: */s Erin M. Riley*
Erin M. Riley, WSBA #30401

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
Tel.: 206) 623-1900
Fax: (206) 623-3384
eriley@kellerrohrback.com

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 51

By: */s Paul M. Secunda*
Paul M. Secunda (admitted *pro hac vice*)

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
Tel.: (414) 828-2372
Fax: (262) 565-6469
psecunda@walcheskeluzi.com

By: */s Todd M. Schneider*
Todd M. Schneider (admitted *pro hac vice*)

By: */s James A. Bloom*
James A. Bloom (admitted *pro hac vice*)

SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel.: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com

***Attorneys for Plaintiffs and the Proposed Class***

CLASS ACTION AMENDED COMPLAINT
(2:24-cv-1230) - 52

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384