1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURTIS MCWASHINGTON, EDWARD M.
MESHURIS, EMILY SANCHEZ, JAMES
ALBRIGHT, and CORY R. CROUCHLEY,
individually as participants in the Nordstrom
401(k) Plan and as representatives of all
persons similarly situated,

        Plaintiffs,

    v.

NORDSTROM, INC., BOARD OF
DIRECTORS OF NORDSTROM, INC., and
NORDSTROM 401K PLAN RETIREMENT
COMMITTEE,

        Defendants.

CASE NO. 2:24-cv-01230-JNW

**MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR:

January 24, 2025

ORAL ARGUMENT REQUESTED

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

## TABLE OF CONTENTS

Page

I.      MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 4

II.     INTRODUCTION ...................................................................................................... 4

III.    FACTUAL ALLEGATIONS ....................................................................................... 5

        A.      The Parties And The Plan ............................................................................... 5

        B.      The Plan's Recordkeeping Fees ..................................................................... 5

        C.      The Plan's Managed Account Service ............................................................ 6

        D.      The Plan's Allocation Of Forfeited Contributions........................................ 6

IV.     LEGAL STANDARD .................................................................................................. 7

V.      ARGUMENT ............................................................................................................... 8

        A.      Plaintiffs' Claim For Excessive Recordkeeping Fees Fails ........................... 8

                1.      Plaintiffs fail to allege that the Plan is "similarly situated and
                        sized" to the comparators ................................................................... 8

                2.      Plaintiffs fail to allege that the Plan received the "same set of
                        services" from Alight as the comparators received from their
                        recordkeepers ................................................................................... 11

                        a.      Plaintiffs' allegations of "similar" services make no sense ........ 11

                        b.      The documents Plaintiffs rely on contradict their
                                allegations of similar services ............................................ 12

                        c.      Plaintiffs are wrong that a single mutual service code
                                renders plans comparable to each other ...................................... 14

                3.      Plaintiffs use a flawed and inconsistent methodology to estimate
                        RKA fees across plans ............................................................................. 14

                        a.      Plaintiffs' new "methodology" for guessing at Alight's
                                compensation still generates a fee estimate that is
                                implausible ............................................................................... 15

                        b.      Plaintiffs compare Nordstrom's alleged average fee
                                between 2018 and 2023 to a single year from the
                                comparators ................................................................................ 16

                        c.      Plaintiffs ignore their own allegations that say Alight
                                receives no meaningful indirect compensation for RKA
                                fees ............................................................................................... 17

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

**TABLE OF CONTENTS**
(continued)

Page

d.    Plaintiffs inflate their estimate for Nordstrom's payments to Alight by including "trustee" fees for Bank of New York Mellon but make no similar adjustment for any other comparators .................................................................. 18

4.    Plaintiffs' comparators are irrelevant because they are premised on data not available to other plans ............................................... 19

B.    Plaintiffs' MAS Claim Is Inadequate .................................................... 20

1.    The Complaint does not allege facts showing the Plan and comparators obtained similar MAS services ........................................... 21

2.    The Complaint does not allege facts establishing Nordstrom overpaid for managed account services ................................................ 22

C.    Plaintiffs' Forfeiture Claims Fail ........................................................... 23

1.    Nordstrom's forfeiture allocations were not made in a fiduciary capacity ............................................................................................ 24

2.    Nordstrom's allocations did not constitute a fiduciary breach ............... 26

D.    Plaintiffs' Prohibited Transactions Claim Fails ..................................... 27

E.    Plaintiffs' Derivative Failure To Monitor Claims Fail ........................... 28

VI.    CONCLUSION ........................................................................................ 28

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) .........................................................................................17

*Atkins v. Rios*,
    2022 WL 4281098 (E.D. Cal. Sept. 15, 2022)...........................................................21

*Beck v. PACE Int'l Union*,
    551 U.S. 96 (2007).................................................................................................24, 25

*Beldock v. Microsoft Corp.*,
    2023 WL 1798171 (W.D. Wash. Feb. 7, 2023)...........................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................7

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ....................................................................................7

*Cotter v. Matthews Int'l Corp.*,
    2023 WL 9321285 (E.D. Wis. Aug. 9, 2023) ...........................................................16

*Coulter v. Morgan Stanley & Co. Inc.*,
    753 F.3d 361 (2d Cir. 2014)......................................................................................25

*Cunningham v. USI Ins. Servs., LLC*,
    2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ...........................................................14

*Cunningham v. USI Ins. Servs., LLC*,
    2023 WL 8603123 (S.D.N.Y. Dec. 12, 2023) ..........................................................17

*Dimou v. Thermo Fisher Scientific Inc. & Mgmt. Committee*,
    No. 23-cv-1732, ECF 43 (S.D. Cal. Sept. 19, 2024) ...............................................27

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1   *Disney ERISA Litig.*, 2017 WL 1505129 (C.D. Cal. Apr. 21, 2017), *aff'd sub nom.*

2       *Wilson v. Fid. Mgmt. Tr. Co.*, 755 F. App'x 697 (9th Cir. 2019) ............................................20

3   *First Nat'l Bank of Chi. v. Comptroller of Currency*,

4       956 F.2d 1360 (7th Cir. 1992) ............................................................27

5   *Fritton v. Taylor Corp.*,

6       2022 WL 17584416 (D. Minn. Dec. 12, 2022) ............................................19

7   *Guyes v. Nestle USA, Inc.*,

8       2023 WL 9321363 (E.D. Wis. Aug. 23, 2023) ............................................10

9   *Jacobsen v. Long Island Cmty. Hosp.*,

10      No. 24-cv-386 (E.D.N.Y. July 22, 2024) ............................................20

11  *McManus v. The Clorox Company et al.*,

12      No. 4:23-cv-05325, ECF 44 (N.D. Cal. November 1, 2024)................................26, 27

13  *Miller v. Packaging Corp. of Am., Inc.*,

14      2023 WL 2705818 (W.D. Mich. Mar. 30, 2023) ............................................15, 16, 22

15  *Miller v. Pfizer Inc.*,

16      No. 1:23-cv-00594, ECF 24 ............................................15, 16, 17

17  *Munt v. WEC Energy Grp., Inc.*,

18      2024 WL 2864712 (E.D. Wis. Mar. 29, 2024) ............................................15

19  *Naylor v. BAE Sys., Inc.*,

20      2024 WL 4112322 (E.D. Va. Sept. 5, 2024)................................25, 26, 28

21  *Nokia ERISA Litig.*, 2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011)................................28

22  *Patrida v. Schenker Inc.*,

23      2024 WL 1354432 (N.D. Cal. Mar. 29, 2024) ............................................11

24  *Pegram v. Herdrich*,

25      530 U.S. 211 (2000)............................................24

26

1  *Pinnell v. Teva Pharms. USA, Inc.*,

2      2020 WL 1531870 (E.D. Pa. Mar. 31, 2020).................................................................7

3  *Ruebel v. Tyson Foods, Inc.*,

4      2024 WL 3682230 (W.D. Ark. Aug. 6, 2024)..........................................................9, 10, 13

5  *Scott v. Cal. Afr. Amer. Museum*,

6      2015 WL 12803454 (C.D. Cal. Feb. 23, 2015)........................................................21

7  *Sec'y of Lab. v. Macy's, Inc.*,

8      2021 WL 5359769 (S.D. Ohio Nov. 17, 2021)........................................................11

9  *Sellers v. Trustees of Boston Coll.*,

10     647 F. Supp. 3d 14 (D. Mass. 2022) ........................................................20

11 *Sigetich v. Kroger Co.*,

12     2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) ........................................................10

13 *Szalanski v. Arnold*,

14     609 F. Supp. 3d 698 (W.D. Wis. 2022) ........................................................28

15 *Woznicki v. Aurora Health Care Inc.*,

16     2022 WL 1720093 (E.D. Wis. May 27, 2022)........................................................18

17 *Wright v. Oregon Metallurgical Corp.*,

18     360 F.3d 1090 (9th Cir. 2004) ........................................................26

19 **Statutes**

20 29 U.S.C. § 1002(2)(A) and § 1002(34) ........................................................2

21 29 U.S.C. § 1104(a)(1)(D) ........................................................23

22 29 U.S.C. § 1106(b) ........................................................24

23 29 U.S.C. § 1144(d) ........................................................24

24 **Other Authorities**

25 29 C.F.R. § 2550.404a-5 ........................................................13, 19

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

3
MOTION TO DISMISS AMENDED COMPLAINT

1   **I.      MEMORANDUM OF POINTS AND AUTHORITIES**

2          Defendants Nordstrom, Inc., the Board of Directors of Nordstrom, Inc., and the Nordstrom

3   401k Plan Retirement Committee move to dismiss Plaintiffs' amended complaint for failure to

4   state a claim upon which relief may be granted (the "Motion"). Defendants' Motion is based on

5   the Memorandum of Points and Authorities set forth below, Defendants' Request for Judicial

6   Notice and Incorporation by Reference, and upon such other matters as may be presented before

7   or at the time of the hearing of this Motion. Pursuant to Rule 5.6 of this Court's Chambers

8   Procedures, the parties conferred on this Motion on December 4, 2024, and were unable to reach

9   a resolution.

10  **II.     INTRODUCTION**

11         Nordstrom Inc. ("Nordstrom") provides its employees with retirement benefits through the

12  Nordstrom 401(k) Plan ("Plan"), which is governed by the Employee Retirement Income Security

13  Act of 1974 ("ERISA"). In their original complaint, Plaintiffs (current or former Nordstrom

14  employees) alleged that the Plan overpaid for recordkeeping and managed account services, and

15  that Nordstrom's allocation of forfeited contributions to future contributions instead of plan

16  expenses breached a fiduciary duty. In moving to dismiss that pleading, Nordstrom explained,

17  among other things, that Plaintiffs' claims failed because Plaintiffs did not identify similar plans

18  that received similar services to the Plan (so their comparisons were meaningless), and Plaintiffs'

19  forfeiture claim failed because the Plan required the challenged allocations (so there was no

20  discretionary conduct triggering fiduciary behavior). *See generally* Dkt. 22.

21         Plaintiffs' first amended complaint ("FAC") does not rectify the dispositive shortcomings

22  that doomed their original pleading. As with the original complaint, the FAC fails to compare the

23  Plan to similarly situated comparators, assumes an implausible recordkeeping fee, and propounds

24  a sweeping, context-free theory of forfeiture allocations that courts nationwide have rejected.

25  Those failures remain fatal to Plaintiffs' case.

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

But the FAC also introduces new problems. To begin, in an attempt to address the glaring shortcomings their original comparators presented, Plaintiffs copy and paste several *identical* comparators from another recently dismissed case where the court concluded that the copied comparators were useless. Plaintiffs also abandon their old approach for estimating fees (which used the *midpoint* of Nordstrom's disclosed fee range) for a "methodology" that assumes without explanation the *top end* of the disclosed range for the entire putative class period. And even though Nordstrom's disclosed fee range already includes trustee fees, Plaintiffs now purport to add third-party trustee fees to Nordstrom's recordkeeping fees without making a similar upward adjustment for any other comparator. The Court should grant the Motion.

## III.    FACTUAL ALLEGATIONS[1]

### A.    The Parties And The Plan

The Plan is an individual account, defined contribution benefit plan under ERISA, 29 U.S.C. § 1002(2)(A) and § 1002(34). FAC ¶ 40. Participants can invest a portion of their compensation in the Plan each year, with a matching contribution by Nordstrom. *Id.* ¶¶ 42, 163. The Complaint states that as of December 31, 2023, the Plan had over $3.9 billion in assets and approximately 111,352 participants. *Id.* ¶ 6. The Nordstrom 401(k) Retirement Plan Committee ("Committee") administers the Plan. *Id.* ¶ 18.

### B.    The Plan's Recordkeeping Fees

Plans often retain third parties to handle specific administrative tasks. One key service provider is a "recordkeeper." FAC ¶ 50. Recordkeepers offer a wide range of administrative services for fiduciaries to choose from, including maintaining records, tracking account balances, overseeing investment elections, processing transactions, providing call center support and participant communications, and others. *Id.* ¶¶ 50, 55. At all times relevant here, the Plan's recordkeeper was Alight Solutions, LLC ("Alight"). According to Plaintiffs, Alight is "one of the

---

[1] Defendants assume the truth of the FAC's factual allegations for purposes of this Motion only.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

largest" recordkeepers offering what they call bundled recordkeeping services. *Id.* ¶ 50. Recordkeepers are compensated for the services they provide. Some collect administrative fees by deducting expenses directly from participants' individual accounts on a per-participant basis. Others collect revenue indirectly, using "revenue-sharing" arrangements, whereby the managers of investment funds in a plan may share with the recordkeeper a portion of the investment fees charged to participants. "Substantially all the administrative expenses, including recordkeeping, trustee and other fees, incurred in connection with the Plan are paid by the Plan through an allocation to participant accounts." *Id.* ¶ 59.

### C. The Plan's Managed Account Service

The Plan offers several kinds of investment products and services, including a diverse menu of investment options, as well as target date funds. For Plan participants who want assistance creating an individualized investment strategy, the Plan offers a managed account service through Alight Financial Advisors, which is an optional service for a fee that makes investment decisions for the participant within the confines of a plan and its fund options. FAC ¶¶ 22, 135–37.

### D. The Plan's Allocation Of Forfeited Contributions

Plan participants may start allocating a portion of their compensation to their Plan accounts as soon as they begin working at Nordstrom. Participants' accounts also receive "matching" contributions from Nordstrom, measured as a percentage of their own contributions. FAC ¶¶ 162–63. Participants do not become entitled to those Nordstrom contributions until the participant completes the years of service the Plan's vesting schedule requires. *Id.* ¶ 166. Sometimes, employees leave Nordstrom before the employer contributions vest. Those employees forfeit the right to "nonvested" Nordstrom contributions, *id.* ¶ 167, after which the Plan requires Nordstrom to allocate forfeitures "first to restore any previously forfeited amounts" and "then to reduce Company contributions." *Id.* ¶ 169.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

## IV.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal citations omitted). ERISA requires that plan fiduciaries "discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Hughes*, 595 U.S. at 172 (*quoting* 29 U.S.C. § 1104(a)(1)(B)). That test is fundamentally procedural; the question is "whether a fiduciary employed the appropriate methods to investigate and determine the merits" of its chosen course of action. *Beldock v. Microsoft Corp.*, 2023 WL 1798171, at *6 (W.D. Wash. Feb. 7, 2023).

Plaintiffs may state a breach of the duty of prudence either through "direct allegations of the fiduciary's 'knowledge, methods, or investigations at the relevant times' or 'circumstantial factual allegations from which the Court may reasonably infer from what is alleged that the process was flawed.'" *Bracalente*, 2023 WL 5184138, at *3 (citation omitted). When a plaintiff seeks to rely on "circumstantial factual allegations" by pointing to plan outcomes rather than the defendants' decision-making process, those allegations "must be 'suggestive of, rather than merely consistent with, a finding of misconduct.'" *Id.* at *5 (citation omitted) (granting motion to dismiss fiduciary duty claims). Further, "plaintiffs relying on such circumstantial evidence to sustain their claims for breach of fiduciary duties 'must provide a sound basis for comparison—a meaningful benchmark'—to show a prudent fiduciary" would have acted differently. *Pinnell v. Teva Pharms. USA, Inc.*, 2020 WL 1531870, at *4 (E.D. Pa. Mar. 31, 2020) (citation omitted).

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

V. **ARGUMENT**

A. **Plaintiffs' Claim For Excessive Recordkeeping Fees Fails**

While Plaintiffs allege the Plan followed an imprudent process for choosing and retaining its recordkeeper, they make no direct allegations about that process. Instead, Plaintiffs rely solely on circumstantial evidence, contending that other allegedly comparable plans received similar services for less, so Defendants' process must have been inadequate. FAC ¶ 121. But Plaintiffs' circumstantial allegations do not raise a plausible inference of misconduct for several reasons.

*First*, Plaintiffs' comparators are not comparable to the Plan. Some of the comparators have *more than $20 billion* more in assets than the Plan; others have *less than half* the number of participants. Such disparate plans preclude any meaningful comparison. *Second*, Plaintiffs fail to allege that the Plan received the same set of services from Alight as the comparators received from their recordkeepers. Plaintiffs' allegations on this point make no sense, are contradicted by the documents they rely on, and misunderstand what the law requires. *Third*, Plaintiffs' methodology is flawed. Among other things, Plaintiffs allege millions in indirect fees to Alight while ignoring their own allegation that Alight received "substantially all" its compensation directly, and they include third-party trustee fees when guessing at Alight's compensation without making similar adjustments for other comparators. *Fourth*, Plaintiffs rely on confidential disclosures that were not available to the Plan, nevertheless arguing that Defendants would have known about the existence of purportedly lower fees had they only looked. Since prudence depends on what a reasonable person would have done in similar circumstances, it makes no sense to fault Nordstrom for not utilizing data to which it had no access.

1. **Plaintiffs fail to allege that the Plan is "similarly situated and sized" to the comparators**

Plaintiffs assert that when comparing recordkeeping and administrative ("RKA") fees across plans, plan size matters. As they explain, fee comparisons across plans are only helpful "against similarly situated and sized plans," and that when it comes to size, both the "number of

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

plan participants and the amount of plan assets" are crucial data points. FAC ¶¶ 96–97. Nevertheless, Plaintiffs proffer comparators that are either much larger or smaller than the Plan, in both assets and number of participants.

Start with asset size. As shown in the table below, the comparators range from less than 40% of the assets of the Plan to 587% of the assets of the Plan. *All* of the comparators have at least a billion dollars more or less than the Plan, and the largest comparator has *$20.18 billion dollars* more than the Plan. FAC ¶ 116. Thus, none of the comparators are similar enough to allow for a meaningful comparison.

| Plan | Assets | Difference from Nordstrom Plan | % Difference |
|---|---|---|---|
| Nordstrom (2021) | $4,146,880,456 | n/a | **n/a** |
| Leidos (2021) | $10,028,148,473 | $5,881,268,017 | **242%** |
| Aldi (2021) | $1,559,687,491 | -$2,587,192,965 | **38%** |
| Fidelity (2020) | $24,332,734,660 | $20,185,854,204 | **587%** |
| Deloitte (2021) | $9,949,148,795 | $5,802,268,339 | **240%** |
| UPS (2021) | $13,766,529,403 | $9,619,648,947 | **332%** |
| Lowes (2021) | $5,619,838,861 | $1,472,958,405 | **136%** |

Courts regularly dismiss complaints where plaintiffs rely on comparators with significantly greater or fewer assets than the targeted plan. For example, in *Ruebel v. Tyson Foods, Inc.*, 2024 WL 3682230, at *4 (W.D. Ark. Aug. 6, 2024), the plaintiffs (represented by Plaintiffs' counsel in this case) attempted to compare a plan with $3.7 billion in assets (nearly the size of Nordstrom's plan here) to many of the *identical* comparators Plaintiffs proffer here, including Leidos, Aldi, Fidelity, and Deloitte. The court concluded that because the "comparators range from half the size to seven times larger than Tyson's plan, . . . none of Plaintiffs' comparators' plans are similar enough to Tyson's to provide meaningful benchmarks." *Id.* at *5. As shown in the table above, the same is true here.

Plaintiffs' failure to identify comparators similar in asset size to the Plan is enough to dismiss their claim. To resist that conclusion, Plaintiffs include conclusory allegations that cost depends "mostly" and "primarily" on the number of plan participants, such that asset size is less

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

relevant. FAC ¶¶ 52–53. But Plaintiffs' other allegations contradict that assertion. For example, Plaintiffs allege that bids should include "the amount of plan assets as of a specified date," FAC ¶ 97, and that the Plan had "enormous bargaining power" because it had "nearly four billions [sic] dollars in assets." *Id.* ¶¶ 109–10. Accordingly, the Court should reject Plaintiffs' counsel's latest attempt to argue that asset size is irrelevant to RKA fees. *Ruebel*, 2024 WL 3682230, at *4 (rejecting Plaintiffs' counsel's argument "that a plan can be 'similar' to another if the number of plan participants is roughly the same, regardless of the amount of assets").

In any event, Plaintiffs' comparators don't have similar participant numbers either. Plaintiffs allege that the cost of RKA services depends on the number of plan participants. FAC ¶ 52. Yet all but one of their comparators has at least 40,000 *fewer* participants, or at least 29,000 *more* participants, than the Plan. *Id.* ¶ 116.

| Plan | Participants | Difference from Nordstrom Plan | % Difference |
|---|---|---|---|
| Nordstrom (2021) | 105,901 | n/a | **n/a** |
| Leidos (2021) | 46,995 | -58,906 | **44%** |
| Aldi (2021) | 56,577 | -49,324 | **53%** |
| Fidelity (2020) | 64,113 | -41,788 | **61%** |
| Deloitte (2021) | 98,051 | -7,850 | **93%** |
| UPS (2021) | 135,312 | 29,411 | **128%** |
| Lowes (2021) | 154,402 | 48,501 | **146%** |

Like the differences in asset sizes between the Plan and the comparators, the massive discrepancies in participant numbers also preclude apples-to-apples comparisons. *See*, *e.g.*, *Sigetich v. Kroger Co.*, 2023 WL 2431667, at *10 (S.D. Ohio Mar. 9, 2023) (dismissing RKA fees claim where the targeted plan had "90,005 participants, yet Plaintiff chooses 'comparable plans' ranging from 47,358 participants [52% of the target] to 154,402 participants [171% of the target]," and the targeted plan "had around $4.9 billion in assets, yet Plaintiff chooses 'comparable plans' ranging from around $3.1 billion [63% of the target] to around $7.4 billion [151% of the target] in assets"); *Guyes v. Nestle USA, Inc.*, 2023 WL 9321363, at *5 (E.D. Wis. Aug. 23, 2023), *report and recommendation adopted*, 2024 WL 218420 (E.D. Wis. Jan. 19, 2024) (similar).

**2.    Plaintiffs fail to allege that the Plan received the "same set of services" from Alight as the comparators received from their recordkeepers**

In addition to identifying similarly sized plans, ERISA plaintiffs must also identify plans that received similar services. *See*, *e.g.*, *Patrida v. Schenker Inc.*, 2024 WL 1354432, at *8 (N.D. Cal. Mar. 29, 2024) (dismissing excessive fees claim where the plaintiff failed to allege that "the service provider fees were excessive in relation to the specific services provided to the specific plan at issue") (citation omitted); *Wehner*, 2021 WL 507599, at *5 ("A plaintiff must allege facts from which one could infer that the same services were available for less on the market."). Here, Plaintiffs have failed to do so.

**a.    Plaintiffs' allegations of "similar" services make no sense**

Plaintiffs' allegations that Alight provided to Nordstrom the "same set of services" the comparators received from their recordkeepers, FAC ¶¶ 61–92, are contradictory and incoherent. For example, Plaintiffs allege both that Alight *charges* "trustee fees," FAC ¶ 69, and that Alight does *not* "include trustee fees" in its charges. *Id.* ¶ 64. Plaintiffs allege that they are focused only on the RKA fees paid *to Alight*, *id.* ¶ 63, but also say that the RKA fees they challenge include *BNYM's* fees. *Id.* ¶ 64. Plaintiffs allege that *Alight* paid BNYM, *id.* ¶ 64, while also alleging that the *Plan* paid BNYM. *Id.* ¶ 65. And perhaps most tellingly, Plaintiffs insist that there is nothing "exceptional, unusual, or customized" about the RKA services Alight provided to the Plan, *id.* ¶ 62, but also allege that *Alight is an exception to the industry standard* in what it includes in its recordkeeping fees. *Id.* ¶ 71. Plaintiffs' inability to allege a coherent narrative about the sameness of services undercuts any argument that the putative comparators provide meaningful benchmarks. *See*, *e.g.*, *Sec'y of Lab. v. Macy's, Inc.*, 2021 WL 5359769, at *5 (S.D. Ohio Nov. 17, 2021) (dismissing ERISA claims and noting that "internally inconsistent allegations . . . need not (and indeed cannot) be accepted as true for purposes of a motion to dismiss").

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

MOTION TO DISMISS AMENDED COMPLAINT

**b.    The documents Plaintiffs rely on contradict their allegations of similar services**

Moreover, Plaintiffs' claim that Alight's and the comparators' services are basically the same is demonstrably wrong. As an initial matter, Plaintiffs' Form 5500 service code chart demonstrates that services reported in the 5500s differed drastically across plans. FAC ¶ 68. For example, the Aldi 5500 lists 14 service codes, while Deloitte's lists two. *Id.* These plans are nowhere near similar enough to allow for meaningful comparison. *See*, *e.g.*, *England*, 2023 WL 4851878, at *4 (granting motion to dismiss where "the form 5500s show variations in reported services for the comparable plans"). Further, Plaintiffs acknowledge that the "record does not reveal the codes' precise meanings." FAC ¶ 73. That admission "undermines the validity of the Form 5500s as an effective tool for comparing RKA fees—yet the forms are the main source of [Plaintiffs'] allegation that the Plan was paying too much for those fees." *Probst*, 2023 WL 1782611, at *11 (acknowledging plaintiffs' admission that "the service codes are not an 'exact science'").

In addition to ignoring the vast differences in service codes the 5500s reflect, Plaintiffs also misunderstand what those forms say. Plaintiffs allege that all the comparators' plans include "recordkeeping fees" and "trustee/custodial services." FAC ¶ 71. Even if the 5500s were definitive (they aren't), those forms don't show that all the comparators received trustee services from their recordkeepers. For example, neither Fidelity's nor Deloitte's 5500 reflects recordkeeper fees for trustee services. Fidelity's 5500 shows service codes 15, 50, 64, 65, and 71. FAC ¶ 68. Those service codes are for "recordkeeping and information management," "direct payment from the plan," "recordkeeping fees," "account maintenance fees," and "securities brokerage commissions and fees," respectively. Declaration of Ankur Mandhania ("Mandhania Decl.") Ex. 1, at 5.[2] Similarly, the Deloitte plan shows service codes 15 and 37, FAC ¶ 68, which are for

---

[2] The Court may consider the documents attached to the Declaration of Ankur Mandhania for the reasons explained in Defendants' Request for Judicial Notice and Incorporation By Reference filed concurrently herewith.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1    "recordkeeping and information management," and "participant loan processing." Mandhania

2    Decl. Ex. 1, at 5. Nevertheless, Plaintiffs do not include any payments those plans made to separate

3    trustees in their comparison, while increasing the Plan's fee to account for the purported lack of

4    trustee services. FAC ¶ 64. That is not a proper comparison.

5        Beyond the Form 5500s, Plaintiffs' reading of the fee disclosures[3] is problematic. Plaintiffs

6    base their estimates of RKA fees "on information provided by the Plan fiduciaries to Plan

7    participants in the Participant Required Disclosures under Section 404(a)(5) and in audited

8    financial statements." FAC ¶ 115. Nordstrom's fee disclosure includes a single fee range for

9    "trustee, legal, recordkeeping, and accounting services." FAC ¶ 60; Mandhania Decl. Exs. 2 A-F,

10   at 1, 2. ***No other comparator discloses fees for this same mix of services.*** Indeed, Plaintiffs admit

11   that Leidos, Aldi, and Fidelity "do not include legal and accounting" services. FAC ¶ 72. The same

12   is true for UPS, which discloses only a "recordkeeping fee." Mandhania Decl. Ex. 3, at 2. That

13   leaves only Deloitte and Lowes, but unlike Nordstrom—and like the rest of the comparators—

14   those disclosures both exclude trustee services. Mandhania Decl. Exs. 4, at 3, Ex. 5, at 4.

15       Faced with the obvious differences in service the disclosures illuminate, Plaintiffs ask the

16   Court to ignore any information in those disclosures that contradicts their theory as mere

17   "boilerplate." FAC ¶ 72. There is no reason to do so. Federal law mandates the disclosures, and

18   Plaintiffs provide no basis to assume they mean anything other than what they say. *See*, *e.g.*, *Ruebel*,

19   2024 WL 3682230, at *3 (dismissing RKA fee claim where the plan's disclosure stated that its

20   recordkeeping fee may also include services that the comparators did not).

21

22

23

24

25
_____
26   [3] Plan fiduciaries must disclose to participants the fees and expenses of participant-directed
     individual account plans. *See* 29 C.F.R. § 2550.404a-5(b).

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

MOTION TO DISMISS AMENDED COMPLAINT

### c.    Plaintiffs are wrong that a single mutual service code renders plans comparable to each other

Plaintiffs admit that the Plan and the comparators "use different service codes." FAC ¶ 67. Yet they allege that because all the plans list a code for "recordkeeping" in their 5500s, that is enough under the law to render them comparable. *Id.* It is not.

Where plaintiffs rely on the service codes disclosed in Form 5500s to allege comparable services, the codes "at the very least" must reflect that the plans "provide the same 'basket of services.'" *Cunningham v. USI Ins. Servs., LLC*, 2022 WL 889164, at *4 (S.D.N.Y. Mar. 25, 2022) (citation omitted); *see also Mateya*, 2023 WL 4608536, at *5 (dismissing recordkeeping fee claims where the Form 5500s showed that the "plans purchased different *mixes of services* that intuitively cost different amounts") (emphasis added). Thus, ERISA plaintiffs cannot point to one or two overlapping service codes, ignore vast swathes of non-overlapping codes, and declare the services the plans received were comparable.

Yet that's what Plaintiffs attempt to do here. The comparators' service codes are not even similar to each other, much less the Plan. For example, Lowes, Leidos, and Aldi reflect some trustee services, while Deloitte, UPS, and Fidelity do not. FAC ¶ 68; Ex. 1 at 5. Deloitte, Leidos, and Aldi reflect "participant loan processing," but not the other comparators. And only Aldi reflects "investment management" services, while only Leidos reflects "consulting" and "securities brokerage" services. *Id.* These are not similar.

### 3.    Plaintiffs use a flawed and inconsistent methodology to estimate RKA fees across plans

Even if the comparators had been similarly sized to and received similar services as the Plan, Plaintiffs' revised methodology for comparing them suffers from several dispositive defects. *First*, Plaintiffs' "estimate" of the Plan fee at $39 per participant exceeds the top end of all but one year of Nordstrom's disclosed fee ranges and is thus implausible. *Second*, Plaintiffs compare the Plan's multi-year RKA fee average against a single year for the comparators. *Third*, Plaintiffs allege that Alight received millions of dollars in RKA fees via *indirect* compensation but ignore

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

MOTION TO DISMISS AMENDED COMPLAINT

their own allegations that say Alight received "substantially all" its RKA compensation *directly*. *Fourth*, Plaintiffs inflate their estimate for Nordstrom's payments to Alight by including BNYM's "trustee" fees, but make no similar adjustment for any other comparators, including comparators that, like Nordstrom, do not disclose recordkeeper-provided trustee services in their 5500s. These methodological problems preclude any meaningful comparison.

a.   **Plaintiffs' new "methodology" for guessing at Alight's compensation still generates a fee estimate that is implausible**

In their original complaint, Plaintiffs took the "midpoint" of Nordstrom's 2023 fee range of $2-$5 per month—which expressly includes trustee services—and applied it to the entire putative class period, for an estimate of $42 annually to Alight for RKA fees (i.e., $3.50 monthly). Dkt. No. 1 ¶¶ 105–06. Nordstrom pointed out that even if Plaintiffs' methodology worked, the numbers were wrong because Nordstrom's fee range for every year *except* 2023 was $2–$3 per month. Dkt. No. 22 17–18. ***If Plaintiffs used their old methodology but the right numbers, the average annual fee across the class period would be $32***—a number Plaintiffs' counsel has in other cases alleged would be reasonable for a "mega"[4] plan like Nordstrom's.[5] But presumably since their old methodology doesn't churn out a sufficiently high number, Plaintiffs abandoned the "midpoint" method for something that makes even less sense—"adding" BNYM's trustee fees to Alight's compensation (even though the disclosed fee Plaintiffs rely on already includes trustee services) without making a similar "adjustment" for other recordkeepers. *Infra* § V.A.3.d. Plaintiffs' unexplained and self-serving change in methodology undermines their recordkeeping claim.[6] *Cf. Munt v. WEC Energy Grp., Inc.*, 2024 WL 2864712, at *11 n.11 (E.D. Wis. Mar. 29,

---

[4] "Mega" plans are often described, including by Plaintiffs' counsel, as plans "with more than $500 million dollars in assets." *Miller*, 2023 WL 2705818, at *1.

[5] *See*, *e.g.*, *Miller v. Pfizer Inc.*, No. 1:23-cv-00594, ECF 24 at 11 (Plaintiffs' counsel proffering comparators for a "mega" plan with total RKA fees of $33 and $32).

[6] Plaintiffs also moved the goalposts in another way—by reducing their "estimate" of a "reasonable" RKA fee from $22, Dkt. 1 ¶ 101, to $21. FAC ¶ 118. Plaintiffs do not explain why their estimate decreased between complaints.

MOTION TO DISMISS AMENDED COMPLAINT

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

2024) (dismissing an amended complaint where the "Plaintiffs *now* deduce other plans' recordkeeping fees and the Plan's fees from different documents," which lent "further doubt" to plaintiffs' fee figures) (emphasis added).

And even at face value, Plaintiffs' new methodology generates implausible results. Plaintiffs' new "methodology" generates a $39 annual fee, or $3.25 per month. However, a monthly fee of $3.25 for bundled RKA services is still not plausible when the *top end* of Nordstrom's disclosed fee range for *all* recordkeeping *and* legal, accounting, and trustee services for all but one year of the class period was $3.[7]

**b.      Plaintiffs compare Nordstrom's alleged average fee between 2018 and 2023 to a single year from the comparators**

Plaintiffs allege that "from the years 2018 through 2023 . . . the Plan paid an effective average annual Bundled RKA fee of $39 per participant." FAC ¶ 115. Plaintiffs then attempt to compare the Plan's estimated multi-year average to a single year for each of the comparators (except Aldi, where Plaintiffs use 2020 and 2021 numbers). FAC ¶ 116; Mandhania Decl. Exs. 6 A–B. But ERISA plaintiffs cannot compare a single year for a putative comparator against a challenged plan's multi-year average.

For example, in *Miller v. Pfizer Inc.*, No. 1:23-cv-00594, ECF 24 (W.D. Mich. Oct. 17, 2024), the plaintiff alleged that Pfizer's plan paid an average of $52 in recordkeeping fees between 2017 and 2021, but compared that plan to six "comparator" plans that showed totals for "2018 only." *Id.* at 7–8. The court noted that the plaintiff's "methodology permits him to cherry-pick data," and concluded that the plaintiff's "apples-to-oranges comparison warrants dismissal." *Id.* at 8; *see also Cotter v. Matthews Int'l Corp.*, 2023 WL 9321285, at *5 (E.D. Wis. Aug. 9, 2023), *report and recommendation adopted*, 2024 WL 218417 (E.D. Wis. Jan. 19, 2024) (dismissing

---

[7] In addition, Plaintiffs' allegation here that a $39 fee was unreasonable contradicts Plaintiffs' counsel's allegations in other cases, where plans with allegedly similar fees were alleged to be reasonable. *See, e.g.*, *Miller v. Packaging Corp. of Am., Inc.*, 2023 WL 2705818, at *4 (W.D. Mich. Mar. 30, 2023) (Plaintiffs' counsel comparing a mega plan to other allegedly similar plans whose 2018 "fees ranged from $20 to $48, with an average of $38").

recordkeeping claim where the plaintiff compared "the average fee" the targeted "plan paid over five years (2014 to 2018) with the fees paid by the comparator plans in just one year (usually 2018).").

The same is true here. Plaintiffs' attempt to compare the Plan's alleged average fees across many years to a single year of the comparators precludes "finding a plausible claim." *Miller*, at 8. And Plaintiffs' attempted comparison is especially problematic because their 2023 estimate for the Plan of $57 in bundled RKA fees drastically skews their estimated average across the class period, FAC ¶ 118, yet they do not provide a single comparator with 2023 data.

### c.    Plaintiffs ignore their own allegations that say Alight receives no meaningful indirect compensation for RKA fees

Plaintiffs allege that Alight received $17,023,719 in total direct compensation, which includes more than just the bundled RKA fees Plaintiffs challenge. FAC ¶ 65; *see also id.* ¶¶ 79-82. Yet Plaintiffs base their bundled RKA fee estimate of $39 annually on their allegation that the Plan paid "objectively unreasonable [bundled RKA] fees to Alight" of $21,537,162[8] during the putative class period. FAC ¶¶ 114-15. To reach that larger number, Plaintiffs allege that Alight received substantial indirect compensation. FAC ¶¶ 91, 131. But Plaintiffs' allegations foreclose that possibility.

Recordkeepers receive compensation either directly or indirectly (or both). For direct compensation, plans pay recordkeepers directly, while "[i]ndirect compensation refers to revenue-sharing arrangements in which some of the money raised via expense ratios for investment-management fees is shared with the recordkeeper." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022). With indirect compensation, funds, not plans, pay recordkeepers. *See*, *e.g.*, *Cunningham v. USI Ins. Servs., LLC*, 2023 WL 8603123, at *1 (S.D.N.Y. Dec. 12, 2023) (dismissing excessive fees claim and noting that indirect compensation is "where the mutual fund

---

[8] This total was obtained by adding the per-year fees listed in the table following paragraph 115.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

MOTION TO DISMISS AMENDED COMPLAINT

1  plan participants choose to invest in pays the plan's recordkeeper for administrative and

2  recordkeeping services").

3          Here, Plaintiffs allege, and Nordstrom's financial statements appended to the 5500 confirm,

4  that "***Substantially all*** of the administrative expenses, ***including recordkeeping***, trustee and other

5  fees, incurred in connection with the Plan are paid ***by the Plan*** through an allocation to participant

6  accounts." FAC ¶ 59 (emphases added); Mandhania Decl. Ex. 10, Nordstrom 401(k) Plan Notes

7  to Financial Statements, Note Two. Thus, whatever compensation Alight received for bundled

8  RKA services, "substantially all" of it came as ***direct*** compensation, not indirect compensation.

9  Because Plaintiffs allege that "substantially all" of Alight's RKA fees came from direct

10 compensation of $17,023,719, FAC ¶ 65, their allegations that Alight received over $21.5 million

11 for bundled RKA fees cannot be correct. *See*, *e.g.*, *Woznicki v. Aurora Health Care Inc.*, 2022 WL

12 1720093, at *3 (E.D. Wis. May 27, 2022) ("Normally, given the trajectory of inferences at the

13 pleading stage, the Court would accept a plaintiff's back-of-the-napkin math as good enough.

14 Deference to an approximation is inappropriate, though, when, as here, the calculations are facially

15 and demonstrably wrong.") (citation omitted).

16          **d.    Plaintiffs inflate their estimate for Nordstrom's payments to Alight by**
               **including "trustee" fees for Bank of New York Mellon but make no**
17             **similar adjustment for any other comparators**

18          Nor can Plaintiffs explain the difference between the $17 million in Alight's total alleged

19 direct compensation and the roughly $21.5 million Plaintiffs assert Alight received (for bundled

20 RKA services only) by pointing to compensation other third parties allegedly received from the

21 Plan. Plaintiffs state that because Alight allegedly "is a recordkeeper only and does not provide

22 custodial or trustee services," Plaintiffs purport to include payment to another party—Bank of New

23 York Mellon—"for trustee services . . . in the Bundled RKA Fee." FAC ¶ 64. That post hoc

24 combination of services is itself problematic—Plaintiffs "cannot rely on the total amounts [they]

25 allege[] the Plan paid for RKA services to all providers when [their] claims are focused solely on

26 what the Plan paid to Alight." *Probst*, 2023 WL 1782611, at *12.

And Plaintiffs make an even more fundamental mistake: They make no similar adjustment for *other* plans whose 5500s do not reflect recordkeeper-provided trustee services. For example, UPS does not disclose in its 5500 that its recordkeeper, Voya, provides any trustee services, nor does it state in its participant disclosure that its $23 fee (which Plaintiffs use to compare against the Plan) includes trustee services. *See* Mandhania Decl. Ex. 7, Schedule C, Part 2 (listing no trustee service codes for Voya); Ex. 3, at 2. The same is true for Deloitte. Mandhania Decl. Ex. 8, Schedule C, Part 2 (listing no trustee service codes for Deloitte's recordkeeper, Vanguard); Ex. 4, at 3. And as discussed above, *none* of the comparators' disclosures on which Plaintiffs rely state that the disclosed fee includes trustee services. *Supra* § V.A.2.b; Mandhania Decl. Exs. 3, at 2; 4, at 3; 5, at 4; 11, at 3. Yet Plaintiffs purport to compare the Plan to the comparators only after adding certain fees for "trustee" services from BNYM for Nordstrom ***without making a similar upward adjustment for the comparators***. That is a dispositive methodological shortcoming. *See*, *e.g.*, *Fritton v. Taylor Corp.*, 2022 WL 17584416, at *7 (D. Minn. Dec. 12, 2022) ("The bottom line is that, because the math Plaintiffs used to calculate the [targeted] Plan's annual per-participant recordkeeping fee differs so fundamentally from the math Plaintiffs used to calculate these other plans' 2018 per-participant recordkeeping fees, these other plans' fees are not plausible comparators . . . .").

### 4.    Plaintiffs' comparators are irrelevant because they are premised on data not available to other plans

Beyond Plaintiffs' insurmountable comparator problems, the data they rely on dooms their claim. Plaintiffs claim that if Nordstrom had looked at what comparator plans were paying in recordkeeping fees, it would have realized that Alight was overcharging. FAC ¶ 132. But as Nordstrom explained in its motion to dismiss the original complaint, Dkt. No. 22 at 18–19, Plaintiffs' information for those comparator plans comes from disclosures the comparators made to their participants under 29 C.F.R. 404a-5. FAC ¶ 117. Those disclosures are not public, so Nordstrom would not have had contemporaneous access to them. 29 CFR § 2550.404a-5(a) (404a-

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1   5 disclosures are provided to participants and beneficiaries, not the public). The lack of

2   contemporaneous access to the comparator disclosures Plaintiffs accuse Nordstrom of ignoring is

3   fatal to their claims because "the content of the duty of prudence turns on the circumstances

4   prevailing *at the time the fiduciary acts*." *In re Disney ERISA Litig.*, 2017 WL 1505129, at *3 (C.D.

5   Cal. Apr. 21, 2017) (emphasis added).

6         Courts have rejected complaints that rely on such non-public documents. *See*, *e.g.*, Pre Mot.

7   Conf. Hr'g Tr. 30:7-16, *Jacobsen v. Long Island Cmty. Hosp.*, No. 24-cv-386 (E.D.N.Y. July 22,

8   2024), ECF No. 30 (granting motion to dismiss claim in part because plaintiffs crafted comparators

9   using 404a-5 disclosures, which were "confidential documents" that the defendant would "not

10  have had access to"). Materials made public years after the fact in litigation are not a valid basis

11  for benchmarking; "nothing in ERISA requires plan administrators to scour" public litigation

12  dockets for confidential disclosures made to other plans. *Cf. Sellers v. Trustees of Boston Coll.*,

13  647 F. Supp. 3d 14, 31 (D. Mass. 2022) ("[I]t would not be reasonable to impugn Boston College

14  with the duty to scour every published court opinion for any mention of a fund included in their

15  plan."). Thus, the confidential comparators' disclosures cannot establish that Nordstrom had an

16  inadequate fiduciary process for evaluating expenses—which means Plaintiffs cannot establish an

17  excessive fee claim.

18         **B.    <u>Plaintiffs' MAS Claim Is Inadequate</u>**

19         The Amended Complaint retains only one of Plaintiffs' original theories regarding the

20  managed account services ("MAS") provided to Plan participants. Plaintiffs now argue only that

21  the Professional Management Program ("PMP") paid too much in fees as compared to other MAS

22  providers. But this claim retains the flaws Nordstrom pointed out in its first motion to dismiss:

23  Plaintiffs do not allege sufficient facts from which to infer that the PMP charged too much for the

24  services it provided.

25

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1

2

**1.    The Complaint does not allege facts showing the Plan and comparators obtained similar MAS services**

On services, Nordstrom previously identified a critical distinction between Nordstrom and Plaintiffs' comparators—Nordstrom received MAS services through a subcontract between Alight and Financial Engines, while others contracted directly with Financial Engines. Dkt. 22 at 23. But the Complaint contained no allegations about whether Alight was providing services to the Plan in addition to those provided by Financial Engines; thus, its allegations did not establish whether the Plan was overpaying for the MAS services it received. *Id.* at 23-24.

Plaintiffs' amended complaint tries to avoid this problem in the simplest possible way: Retaining the same set of comparators, they simply omit their earlier allegation that Financial Engines contracted directly with the comparators and not with Nordstrom. FAC ¶ 151 (listing "Financial Engines" as "Managed Account Provider" for all comparators and Nordstrom). But that contradicts Plaintiffs' earlier allegation that Nordstrom—and *only* Nordstrom—subcontracted for these services. And "[w]here allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true and may, in fact, strike the changed allegations as 'false and sham.'" *Scott v. Cal. Afr. Amer. Museum*, 2015 WL 12803454, at *3 (C.D. Cal. Feb. 23, 2015) (citation omitted).

This renders Plaintiffs' claim implausible: They say that the Plan overpaid for the MAS services it received, and point to the compensation that it paid to Financial Engines *and* Alight. If the baseline they've identified is what others have paid for *only* Financial Engines' services (without the additional services the Plan received from Alight), their complaint is a textbook apples-to-oranges comparison.

Plaintiffs' problems don't end there. They allege that Financial Engines' services are "materially" the same, FAC ¶ 139. But materiality is a *legal* conclusion, so the amended complaint needs to allege facts supporting that conclusion. *See*, *e.g.*, *Atkins v. Rios*, 2022 WL 4281098, at *10 (E.D. Cal. Sept. 15, 2022) (finding that objection to statement regarding materiality "should

21

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

be sustained for Plaintiff's statement is plainly an improper legal conclusion"). As with the original Complaint, Plaintiffs provide no specifics regarding the managed account services provided to the Plan or comparators, which are needed to state a claim. *See*, *e.g*., *Dionicio*, 2024 WL 1216519, at *5 (dismissing MAS claim because "plaintiffs' allegations that managed-account-service providers 'generally offer the same basic service' is insufficient. There are no allegations about the different 'inputs,' investment strategies, or risk profiles from which participants can choose."); *Miller*, 2023 WL 2705818, at *12 (dismissing allegation that "managed account services provided to mega plans are materially identical" as "conclusory because it is unsupported by any facts").

The amended complaint alleges further facts that undermine its "all-Financial-Engines services-are-the-same" theory. For example, Plaintiffs allege that one of the main ways that Financial Engines chooses which funds to recommend for an individual investor is "the plan lineup made available by the Plan Committee." FAC ¶ 143. But Plaintiffs make no allegations about how Financial Engines provides services to the allegedly comparable plans, and specifically about whether the provided service also relies on the existing investment funds in the Plan. Thus, the Complaint does not establish a meaningful benchmark to plausibly challenge the cost of the services from Financial Engines.

### 2. The Complaint does not allege facts establishing Nordstrom overpaid for managed account services

Even if the FAC established that Nordstrom and the comparator plans received the same basket of managed account services, Plaintiffs would still need to show that Nordstrom overpaid for those services. They fail to do so.

*First*, Plaintiffs do not establish how much the comparators were charged through the class period. Plaintiffs provide only a single year's expenses for each comparator—not even the same year for all of them—and provide no explanation for how these plans and years were chosen or why they are meaningful comparators, despite their wide variance in plan size and participant types. *See* FAC ¶ 202 (listing 2023 fees for AT&T and Bristol-Myers, alongside 2020 fees for

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1  IBM and Dell, 2019 fees for Cisco, and 2021 fees for American Airlines). Like Plaintiffs'

2  recordkeeping claim, which also lacked this detail and was subject to manipulation via cherry-

3  picked comparators, *supra* V.A.3.b, Plaintiffs' PMP claim is thus fatally flawed.

4        *Second*, despite pleading their recordkeeping claim based on *total* recordkeeping fees,

5  Plaintiffs' base their managed account service fee on the *percentage* charged to the Plan. *Compare*

6  FAC ¶ 116 (comparing per-participant and total fee amounts for recordkeeping claim) *with id*. at

7  ¶ 151 (providing only a comparison of the "Fee (%) @ Avg Account Balance"[9]). But a percentage

8  comparison is not meaningful: Like any vendor, a managed account service provider has fixed and

9  variable costs. If the number of plan participants who opt into the service is low, the per-participant

10 fee may be high because each participant has to cover more of the vendor's fixed costs. In addition,

11 if a vendor needs to generate a certain level of revenue in order to sustain itself, it will need to

12 charge a higher percentage when the average participant balance is low than it will when the

13 average balance is high. Plaintiffs' analysis does not account for any of these factors. Thus, it is

14 not possible from their comparison to determine whether the Plan actually paid more than these

15 comparators for managed account services, let alone whether it paid so much more as to render its

16 costs imprudent for the services rendered. Accordingly, Plaintiffs' conclusory managed account

17 services claim fails.

18       **C.**    **Plaintiffs' Forfeiture Claims Fail**

19       Plaintiffs allege that Defendants impermissibly chose to use forfeited funds to match

20 employees' contributions instead of defraying Plan expenses, thereby breaching their fiduciary

21 duties of loyalty and prudence. FAC ¶¶ 168, 182–88. These claims fail because the allocation of

22 which Plaintiffs complain was not taken by Nordstrom in its capacity as Plan fiduciary, and even

23 if Nordstrom acted in a fiduciary capacity, Plaintiffs allege no facts that could raise a plausible

24 inference of breach.

25

26 [9] Plaintiffs also do not explain how they calculated these average account balances—or even what
   that average balance is for any of the plans they cite.

1    **1.    Nordstrom's forfeiture allocations were not made in a fiduciary capacity**

No one is an ERISA fiduciary all the time; fiduciary status "depends upon the nature of the function" at issue. *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007). Thus, "[i]n every case charging breach of ERISA fiduciary duty," "the threshold question is … whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Here, the decisions related to forfeitures were not made in a fiduciary capacity because the Plan required the allocations of which Plaintiffs complain, and decisions about plan structure and funding contributions are settlor functions.

***The Plan Required the Forfeiture Allocations***. Section 6.5.3 of the Plan provides that forfeited amounts in "[t]he forfeiture suspense account will be used first to restore any previously forfeited amounts under Section 10.8.2, *and then to reduce Company contributions* as provided under Section 5.1.2." Mandhania Decl. Ex. 9 § 6.5.3 (emphasis added).[10] Further, Section 8.6 of the Plan, titled "Forfeiture Reallocation," provides that, in the event of severance for any reason other those provided in Section 8.2 (i.e., fraud, embezzlement, etc.), "the forfeited portion of a Participant's account *shall* be allocated . . . as provided in Section 6.5." *Id.* § 8.6 (emphasis added). Thus, while Section 5.1.2 states that the Committee has "discretion" to "reduce the Employer contribution expenses or to pay expenses of Plan administration," Section 6.5.3 circumscribes that discretion: forfeited funds must first be used to restore previously forfeited amounts and, second, to reduce company contributions. *Id.*

Plaintiffs resist this conclusion, alleging that the "combination" of Sections 6.5.3 and 5.1.2 gave Nordstrom unfettered discretion to allocate forfeitures as it allegedly did here, and that concluding otherwise would render Section 6.5.3 "superfluous." FAC ¶¶ 171–72. They are wrong again. Indeed, courts analyzing similar plan provisions have rejected Plaintiffs' precise arguments.

---

[10] Plaintiffs rely on the 2021 version of the Plan, but the 2014 and 2019 versions contain materially indistinguishable provisions in their respective Sections 6.5.3.

MOTION TO DISMISS AMENDED COMPLAINT

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1    For example, in *Naylor v. BAE Systems*, the plan provided that forfeitures "*shall*" be used
2    to reduce future employer contributions, and also that "as directed by the Administrative
3    Committee, expenses to be paid from the Trust Fund *may* be drawn from . . . forfeitures." 2024
4    WL 4112322, at *5 (emphases added). The court concluded that the provision suggesting that the
5    committee had discretion could "only be reasonably read to confer discretion in those situations
6    where such forfeitures are not needed to satisfy their required, mandatory use under [the sections
7    requiring forfeitures to be applied to plan contributions] as any other reading essentially nullifies
8    these mandatory-use provisions." *Naylor*, 2024 WL 4112322, at *6. The court rejected the
9    argument (which Plaintiffs make here) that the defendant's interpretation would render certain
10   plan provisions superfluous, acknowledging that while the "circumstances under which such
11   discretion could be exercised appear limited," the section conferring discretion did "not become a
12   nullity under this reading since there are circumstances where such discretion might be exercised,
13   such as where the Employer suspends its contributions for financial reasons." *Id.*

14   So too here. The Plan's statement regarding the Committee's discretion does not allow the
15   Committee "to disregard the [other] terms of the Plan and, contrary to the terms of the Plan,
16   prioritize the use of forfeitures for, inter alia, the payment of administrative costs or a windfall to
17   Plan participants." *Naylor*, 2024 WL 4112322, at *6. Accordingly, Plaintiffs' claim that the
18   Committee "chose" to improperly allocate forfeitures contradicts the Plan documents and fails as
19   a matter of law.

20   ***Nordstrom Acted as a Settlor***. Courts refer to an employer's decisions "regarding the form
21   or structure of a plan," such as whether to have a plan at all, as "settlor function[s]," which are
22   "immune from ERISA's fiduciary obligations." *Beck*, 551 U.S. at 101–02. "[D]ecisions relating to
23   the timing and amount of contributions" to a plan are settlor, not fiduciary, functions. *Coulter v.
24   Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014). Accordingly, Plaintiffs' forfeiture
25   theory fails as a matter of law because Nordstrom did not make allocation decisions to fund future
26   contributions in a fiduciary capacity, it made them in a settlor capacity. *Naylor v. BAE Sys., Inc.*,

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

2024 WL 4112322, at *7 (E.D. Va. Sept. 5, 2024) (dismissing forfeiture claims and noting that when an employer adheres to plan terms mandating the use of forfeitures, "it [does] so in its capacity as a 'settlor,' which does not give rise to fiduciary duties under ERISA").

### 2.    Nordstrom's allocations did not constitute a fiduciary breach

In any event, the allocations of which Plaintiffs complain did not breach any fiduciary duty. To begin, because the Supreme Court has instructed that "inquiries into fiduciary breaches are 'context specific,'" allegations that broadly attack forfeiture allocations as per se imprudent without alleging "particularized facts or special circumstances" fail to state a fiduciary duty claim. *McManus v. The Clorox Company et al.*, No. 4:23-cv-05325, ECF 44, at 8–10 (N.D. Cal. November 1, 2024) (*quoting Dudenhoeffer*, 573 U.S. at 425) (dismissing forfeiture claim based on "Plaintiff's broad assertion" that "it is necessarily a fiduciary breach to use participant money to pay administrative costs instead of forfeited amounts"). Plaintiffs' forfeiture claim lacks any particularized allegations and is subject to dismissal on that basis alone.

Further, because ERISA requires that a fiduciary discharge its duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III," 29 U.S.C. § 1104(a)(1)(D), a fiduciary does not breach its duties when it complies with a lawful plan document. *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004). Here, Plaintiffs' forfeiture claim fails because they do not allege that any provision of the Plan was unlawful.

Nor could they. "ERISA does no more than protect the benefits which are due to an employee under a plan." *Wright*, 360 F.3d at 1100. Thus, "it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits" with respect to administrative costs because ERISA creates no "unqualified duty" for plan fiduciaries "to pay administrative costs." *Hutchins*, 2024 WL 3049456, at *6. Indeed, "the settled understanding of Congress and the Treasury Department regarding defined contribution plans" is that forfeitures may "'be reallocated to the remaining participants under a nondiscriminatory formula, used to reduce future employer

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1  contributions, or used to offset administrative expenses of the plan.'" *Hutchins*, 2024 WL 3049456,

2  at \*6 (*quoting* Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12,282, 12,283 (Feb.

3  27, 2023)). In fact, the Treasury has promulgated regulations premised on its understanding that

4  employers may use forfeitures for any of these three purposes. *Id.* And ERISA states that

5  "[n]othing [in ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede

6  any law of the United States . . . *or any rule or regulation issued under any such law*." 29 U.S.C.

7  § 1144(d) (emphasis added). As such, "[t]here can be no violation of ERISA itself" by complying

8  with federal regulations—including the Treasury regulations that expressly allow plans to allocate

9  forfeitures in the manner Plaintiffs challenge. *See*, *e.g.*, *First Nat'l Bank of Chi. v. Comptroller of*

10  *Currency*, 956 F.2d 1360, 1368 (7th Cir. 1992). Plaintiffs' contrary position would "abrogate

11  Treasury regulations" and upset "over 38 years of settled rules regarding defined contribution

12  plans." *Hutchins*, 2024 WL 3049456, at \*6.

13      Accordingly, even if the alleged forfeiture allocations constituted fiduciary conduct, such

14  allocations do not constitute a fiduciary breach. *See*, *e.g.*, *Hutchins*, 2024 WL 3049456 (concluding

15  that an allocation of forfeitures to future contributions did not constitute a breach of fiduciary duty);

16  *Dimou v. Thermo Fisher Scientific Inc. & Mgmt. Committee*, No. 23-cv-1732, ECF 43 (S.D. Cal.

17  Sept. 19, 2024) (same); *McManus*, No. 4:23-cv-05325, ECF 44, at 8–10 (N.D. Cal. November 1,

18  2024) (same).

19      **D.      Plaintiffs' Prohibited Transactions Claim Fails**

20      Plaintiffs allege that the Committee's use of forfeitures constitutes a prohibited transaction

21  under 29 U.S.C. § 1106(b). FAC ¶ 255. They are wrong, for two reasons. *First*, because Plaintiffs

22  have failed to allege a predicate fiduciary breach, there is no basis for a prohibited transactions

23  claim. *See*, *e.g.*, Naylor, 2024 WL 4112322, at \*7 (dismissing prohibited transactions claim based

24  on forfeiture where plan terms required the alleged allocation of forfeitures). *Second*, there can be

25  no prohibited transaction claim here because "the payment of benefits is not a 'transaction' under

26  [ERISA's] prohibited transactions provision." *Hutchins*, 2024 WL 3049456, at \*9 (dismissing

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

prohibited transaction claim and noting that "the fact that reallocation of the forfeited amounts will reduce the amount that HP contributes as matching contributions in the future does not make this a transaction for purposes of § 1106"). Accordingly, the Court should dismiss Plaintiffs' prohibited transactions claim.

### E.    Plaintiffs' Derivative Failure-To-Monitor Claims Fail

Plaintiffs allege derivative failure-to-monitor claims based on their recordkeeping, MAS, and forfeiture claims. *See*, *e.g.*, FAC ¶¶ 217 (recordkeeping), 235 (MAS), 262 (forfeiture). But a failure to monitor claim "is only viable when there is an underlying claim for breach of fiduciary duty." *Partida*, 2024 WL 1354432, at *9 (N.D. Cal. Mar. 29, 2024). Because Plaintiffs' excessive fee, MAS, and forfeiture claims fail, their monitoring claims fail too.

In addition, Plaintiffs' failure-to-monitor claims independently fail because they must offer a "specific factual basis to support [a] conclusory allegation of a lack of legally sufficient monitoring by Defendants." *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011); *Szalanski v. Arnold*, 609 F. Supp. 3d 698, 706 (W.D. Wis. 2022) (dismissing duty to monitor claims where plaintiff failed to allege defendant's monitoring process). But instead of a specific factual basis, Plaintiffs' allegations on this score are conclusory. *See*, *e.g.*, FAC ¶¶ 217, 235, 262. For these reasons, Plaintiffs' monitoring claims fail to state a claim.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1    Dated: December 6, 2024

2

FOSTER GARVEY PC

By: /s/ Matthew Kelly
3                    Steven R. Peltin, WSBA #28862
                   Matthew Kelly, WSBA #48050

4

MAYER BROWN LLP
5

By: /s/ Nancy Ross
6                    Nancy Ross

7                    E. Brantley Webb
                   Ankur Mandhania
8                    Jordan C. Hilton

9

Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## CERTIFICATE OF COMPLIANCE

2          The undersigned counsel of record for Defendants certifies that this memorandum contains

3    8,394 words, in compliance with the Local Civil Rules

4

5    Dated: December 6, 2024                    FOSTER GARVEY PC

6                                               By: /s/ Matthew Kelly
                                                   _____
7                                                  Steven R. Peltin, WSBA #28862
                                                   Matthew Kelly, WSBA #48050
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURTIS MCWASHINGTON, EDWARD M. MESHURIS, EMILY SANCHEZ, JAMES ALBRIGHT, and CORY R. CROUCHLEY, individually as participants in the Nordstrom 401(k) Plan and as representatives of all persons similarly situated,

Plaintiffs,

v.

NORDSTROM, INC., BOARD OF DIRECTORS OF NORDSTROM, INC., and NORDSTROM 401K PLAN RETIREMENT COMMITTEE,

Defendants.

CASE NO. 2:24-cv-01230-JNW

**[PROPOSED] ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1    THIS MATTER comes before the Court on Defendants' Motion to Dismiss Plaintiffs' First

2    Amended Complaint. The Court, having reviewed the following:

3    1.  Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion");

4    2.  The Declaration of Ankur Mandhania filed in support of the Motion and the exhibits thereto;

5    3.  Any Opposition to the Motion and any documents or exhibits filed in support thereof; and

6    4.  Any Reply in support of the Motion and any documents or exhibits filed in support thereof;

7    and having reviewed the files and records herein,

8    IT IS HEREBY ORDERED:

9    Plaintiffs' First Amended Complaint is hereby dismissed with prejudice.

10

11   DATED this ___ day of ____, 2025.

12                                              _____
                                                Judge Jamal Whitehead
13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] ORDER GRANTING MOTION TO DISMISS
FIRST AMENDED COMPLAINT

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206 4479700

1

2                                FOSTER GARVEY PC

3

4                       By: */s/ Matthew Kelly*
                              Steven R. Peltin, WSBA #28862
5                             1111 Third Avenue, Suite 3000
                              Seattle, WA 98101-3296
6                             steve.peltin@foster.com
                              Matthew Kelly, WSBA #48050
7                             matthew.kelly@foster.com

8

9                                MAYER BROWN LLP

10

11                      By: */s/ Nancy Ross*
12                            Nancy Ross, Bar No. 6190243
                              (*Pro Hac Vice*)
13                            71 South Wacker Drive
                              Chicago, IL 60606
14                            nross@mayerbrown.com

15                            E. Brantley Webb, Bar No. 1014561
16                            (*Pro Hac Vice*)
                              1999 K. Street, NW
17                            Washington, DC 20006-1101
                              bwebb@mayerbrown.com
18
                              Ankur Mandhania, Bar No. 302373
19                            (*Pro Hac Vice*)
                              575 Market Street, Suite 2500
20                            San Francisco, CA 94105
                              amandhania@mayerbrown.com
21
22                            Jordan Hilton, Bar No. 17506
                              (*Pro Hac Vice*)
23                            201 S. Main Street, Suite 1100
                              Salt Lake City, UT 84111
24                            jhilton@mayerbrown.com

25                            *Attorneys for Defendants*

26

[PROPOSED] ORDER GRANTING MOTION TO DISMISS
FIRST AMENDED COMPLAINT