The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURTIS MCWASHINGTON,
EDWARD M. MESHURIS, EMILY
SANCHEZ, JAMES ALBRIGHT, and
CORY R. CROUCHLEY, individually as
participants in the Nordstrom 401(k) Plan
and as representatives of all persons
similarly situated,

                              Plaintiffs,

        v.

NORDSTROM, INC., BOARD OF
DIRECTORS OF NORDSTROM, INC.,
NORDSTROM 401K PLAN RETIREMENT
COMMITTEE,

                              Defendants.

CASE NO. 2:24-cv-01230-JNW

**PLAINTIFFS RESPONSE IN
OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

NOTE ON MOTION CALENDAR:

January 24, 2025

ORAL ARGUMENT REQUESTED

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

**TABLE OF CONTENTS**

I.     ERISA STANDARDS ................................................................................ 2

II.    MOTION TO DISMISS STANDARDS ................................................... 2

III.   ARGUMENT ........................................................................................... 3

     A.    Plaintiffs state a plausible claim (Count I) for breach of the duty of prudence based on excessive Bundled RKA Fees. ............................... 3

           1.    Plaintiffs' allegations establish a plausible inference that Defendants breached their duty of prudence by paying excessive Bundled RKA fees to Alight during the Class Period. .......................................................................................... 4

           2.    Plaintiffs' allegations are plausible because Alight performed Bundled RKA services comparable to those performed by recordkeepers for seven other comparator plans. ............................................................................................. 6

           3.    Plaintiffs allege plausible facts that seven comparator plans during two different Class periods are meaningful benchmarks. ............................................................................ 10

           4.    Plaintiffs have stated a plausible claim (Count III) for fiduciary breach based on MA services being excessive in relation to the services rendered because FE MA services are commoditized and fungible. ............................................... 13

     B.    Plaintiffs state a plausible claim (Counts V-VII) for breach of the duties of loyalty and prudence, and for fiduciary prohibited transactions, with regard to Defendants misuse of Plan forfeitures ................... 16

           1.    Defendants are "fiduciaries" that breached both their duty of loyalty and prudence by using Plan forfeitures for their own benefit. .......................................................................... 16

           2.    Defendants engaged in fiduciary prohibited transaction when they used their discretion to engage in self-dealing with regard to using Plan forfeitures to reduce their employer contributions to the Plan. ....................................... 21

           3.    Plaintiffs allege a plausible breach (Counts II, IV, and VIII) of the duty to monitor. .......................................................... 23

CONCLUSION ................................................................................................ 23

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(2:24-cv-1230) - i

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Allen v. GreatBanc Tr. Co.*,
4
    835 F.3d 670 (7th Cir. 2016) ...................................................................3

5

*Amgen Inc. v. Harris*,
    577 U.S. 308 (2016) ...............................................................................19
6

*Anderson v. Intel Corp. Inv. Pol. Comm.*,
7
    579 F. Supp. 3d 1133 (N.D. Cal. 2022)..................................................10

8

*Ashcroft v. Iqbal*,
9
    556 U.S. 662 (2009) .................................................................................3

10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................3
11

*Bouvy v. Analog Devices, Inc.*,
12
    2020 WL 3448385 (S.D. Cal. June 24, 2020)..........................................7

13

*Bracalente v. Cisco Systems*,
14
    2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) .......................................23

15

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...................................................................3
16

*Coppel v. SeaWorld Parks & Ent., Inc.*,
17
    2023 WL 2942462 (S.D. Cal. Mar. 22, 2023) ........................... 7, 11, 16

18

*Cotter v. Matthews Int'l Corp.*,
19
    2024 WL 218417 (E.D. Wis. Jan. 19, 2024) ...........................................8

20

*Cryer v. Franklin Templeton Res., Inc.*,
    2017 WL 818788 (N.D. Cal. Jan. 17, 2017)............................................3
21

*Cunningham v. USI Ins. Servs., LLC*,
22
    2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ...........................................8

23

*Dionicio v. U.S. Bancorp*,
24
    2024 WL 1216519 (D. Minn. Mar. 21, 2024), *motion to certify appeal denied*,
    2024 WL 2830693 (D. Minn. June 4, 2024)........................................9, 10

25

*Fifth Third Bancorp v. Dudenhoeffer*,
26
    573 U.S. 409 (2014) ..........................................................................19, 20

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

*Glick v. ThedaCare, Inc.*,
   2024 WL 233370 (E.D. Wis. Jan 22, 2024) ............................................. 8, 9

*Guyes v. Nestlé USA Inc.*,
   2024 WL 218420 (E.D. Wis. Jan. 19, 2024) ................................................ 8

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir. 1996) ................................................................... 2

*Hughes v. Northwestern Univ.*,
   595 U.S. 170 (2022) ................................................................................... 3

*Hughes v. Nw. Univ.*,
   63 F.4th 615 (7th Cir. 2023) .......................................................... 9, 16, 19

*Hutchins v. HP, Inc.*,
   2024 WL 3049456 (N.D. Cal. June 17, 2024) ................................ 18, 19, 22

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................................................... 3

*In re Nokia ERISA Litig.*,
   2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) ............................................. 23

*In re Sutter Health ERISA Litig.*,
   No. 20-cv-1007, 2023 WL 1868865 (E.D. Cal. Feb. 9, 2023) ...................... 4

*Jacobsen v. Long Island Cmty. Hosp.*,
   No. 24-cv-386, ECF No. 30 (E.D.N.Y. July 22, 2024) ............................... 12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
   250 F. Supp. 3d 460 (N.D. Cal. 2017) ........................................................ 5

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .................................................................... 11

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ................................................................... 3

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ................................................................................. 22

*Lopez v. Embry-Riddle Aeronautical Univ., Inc.*,
   2023 WL 7129858 (M.D. Fla. July 12, 2023) .............................................. 3

*Mator v. Wesco Distrib. Inc.*,
   102 F.4th 172 (3d Cir. 2024) .................................................................... 11

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

*McManus v. The Clorox Company et al.*,
No. 4:23-cv-05325, ECF 44 (N.D. Cal. November 1, 2024)...................................19

*Meinhard v. Salmon*,
164 N.E. 545 (N.Y. 1928)....................................................................................17

*Miller v. Pfizer, Inc.*,
Case No. 1:23-cv-594, Dkt. 64 (W.D. Mich. Oct. 17, 2024)...........................7, 12

*Munt v. WEC Energy Grp.*,
728 F. Supp. 3d 957 (E.D. Wis. 2024) .................................................................8, 9

*Nagy v. CEP Am., LLC*,
2024 WL 2808648 (N.D. Cal. May 30, 2024)................................................*passim*

*Naylor v. BAE Systems, Inc.*,
2024 WL 4112322 (E.D. Va. Sept. 5, 2024) .....................................................19, 22

*Partida v. Schenker Inc.*,
2024 WL 1354432 (N.D. Cal. Mar. 29, 2024)..........................................................7

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .........................................................................................16, 17

*Perez-Cruet v. Qualcomm Inc.*,
2024 WL 2702207 (S.D. Cal. May 24, 2024)..............................................2, 20, 21

*Remied v. NorthShore Univ. Hosp.*,
2024 WL 3251331 (N.D. Ill. July 1, 2024) .........................................................8, 9

*Rodriguez v. Intuit Inc.*,
2024 WL 3755367 (N.D. Cal. Aug. 12, 2024) ...............................................*passim*

*Ruebel v. Tyson Foods, Inc.*,
2024 WL 3682230 (W.D. Ark. Aug. 6, 2024)......................................................8, 9

*Russell v. Illinois Tool Works*,
2024 WL 2892837 (N.D. Ill. June 10, 2024)...........................................................8

*Sigetich v. Kroger Co.*,
2023 WL 2431667 (S.D. Ohio Mar. 9, 2023)...........................................................7

*Solis v. Webb*,
931 F. Supp. 2d 936 (N.D. Cal. 2012)...................................................................23

*Tibble v. Edison Int'l.*,
135 S. Ct. 1823 (2015) ............................................................................................2

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

*Tibble v. Edison Int'l,*
    843 F.3d 1187 (9th Cir. 2016) ........................................................................... 2, 4

*Wehner v. Genentech, Inc.,*
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...................................................... 4, 6, 7

*Wright v. Oregon Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004) ....................................................................... 16, 20

**Statutes**

29 U.S.C. § 1001(a)–(b) ........................................................................................ 2

29 U.S.C. § 1002(21)(A)(iii) ................................................................................ 18

29 U.S.C. § 1104(a)(1) .......................................................................................... 2

29 U.S.C. § 1106(b) ......................................................................................... 2, 17

29 U.S.C. § 1106(b)(1) ................................................................................... 21, 22

29 U.S.C. § 1132(a)(2) .......................................................................................... 1

29 U.S.C. § 1132(a)(3) .......................................................................................... 1

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .......................................................................... 2, 11, 20

Fed. R. Civ. P. 23 ................................................................................................. 1

**Other Authorities**

29 C.F.R. 404a-5 .................................................................................................. 12

29 C.F.R. § 2509.75-8 ......................................................................................... 23

*Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12,282, 12,283
    (Feb. 27, 2023) ................................................................................................ 21

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs Curtis McWashington, Edward M. Meshuris, Emily Sanchez, James Albright, and Cory R. Crouchley ("Plaintiffs"), are participants in the Nordstrom 401(k) Plan ("Plan" or "Nordstrom Plan"). They bring this ERISA action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3), and under Fed. R. Civ. P. 23 as representatives of a class of participants and beneficiaries of the Plan, against defendants Nordstrom, Inc. ("Nordstrom"), the Board of Directors of Nordstrom, Inc. ("Board"), and the Nordstrom 401(k) Plan Retirement Committee ("Plan Committee") (collectively, "Defendants"), for breach of ERISA's fiduciary duties and transactions prohibited by ERISA.

Plaintiffs' allegations are detailed and serious. "Defendants, as fiduciaries of the Plan, failed to fulfill their fiduciary duties to prudently and loyally ensure the Plan's bundled recordkeeping and administrative ("Bundled RKA") and managed account ("MA") expenses were reasonable and not excessive, as well as engaged in self-dealing with regard to Plan forfeitures in violation of ERISA fiduciary prohibited transaction rules by favoring their own selfish interests instead those of Plan participants." Dkt # 29 ("FAC") at ¶ 7. Plaintiffs also allege that Nordstrom and its Board failed to monitor those on the Plan Committee responsible for Plan RKA and MA fees, as well as for allocation of Plan forfeitures. *Id.*, ¶¶ 213-219, 231-237, 258-264.

Defendants in their motion to dismiss offer no justification for the excessive fees paid to the recordkeeper, Alight Solutions, LLC ("Alight"), or to the managed account service provider, Alight Financial Advisors, LLC ("AFA"), subadvised by Financial Engines ("FE"). The Plan charged almost **two times** more for fungible Bundled Plan RKA services ($39 per participants vs. $21 per participant), FAC, ¶¶ 115-116, 118, and more than **three times** more for fungible MA services (60 bps v. 18.3 bps), FAC, ¶ 151, than what they should have paid for the same fungible and commoditized RKA and managed account services available from equally-qualified recordkeepers and managed account providers during the Class Period. Moreover, with regard to

Plaintiffs' 401(k) Plan forfeiture claims, numerous courts have permitted substantially identical breach of fiduciary duty and prohibited transaction claims to survive motions to dismiss under materially similar circumstances. *See Rodriguez v. Intuit Inc.,* 2024 WL 3755367 (N.D. Cal. Aug. 12, 2024); *Perez-Cruet v. Qualcomm Inc.,* 2024 WL 2702207 (S.D. Cal. May 24, 2024).

Defendants' motion to dismiss should be denied in its entirety.

## I.    ERISA STANDARDS

ERISA protects the "financial soundness" of retirement plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(a)–(b). ERISA's fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)).

Fiduciaries must act "solely in the interest of the participants and beneficiaries" and to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1). Further, "a trustee has a continuing duty to monitor trust investments and remove imprudent ones … separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Tibble*, 843 F.3d at 1197 (*quoting Tibble v. Edison Int'l.*, 135 S. Ct. 1823, 1828 (2015)). "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *See Tibble*, 575 U.S. at 535. Finally, in deciding to use Plan forfeiture, plan fiduciaries must deal with plan assets without a conflict of interest or engage in self-dealing in administering the Plan. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under 29 U.S.C. § 1106(b).

## II.    MOTION TO DISMISS STANDARDS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "On a motion under Rule 12(b)(6) for failure to

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 818788, at *3 (N.D. Cal. Jan. 17, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Rule 8 does not require a plaintiff to plead facts tending to rebut all possible lawful explanation for a defendant's conduct." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Courts must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

### III.    ARGUMENT

**A.    Plaintiffs state a plausible claim (Count I) for breach of the duty of prudence based on excessive Bundled RKA Fees.**

Defendants challenge the FAC as not alleging facts regarding the fiduciary process Defendants used to select the Plan recordkeeper, Alight, but "ERISA plaintiffs generally do not have 'inside information' regarding the fiduciary's process" and "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which [they have] no access, as long as the facts alleged tell a plausible story." *See Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, 2023 WL 7129858, at *5 (M.D. Fla. July 12, 2023) (citing *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016); *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022) ("*Hughes I*")). Defendants' motion to dismiss regarding the Nordstrom Plan's excessive RKA and MA fees fails for numerous reasons.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(2:24-cv-1230) - 3

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

1

2

**1.    Plaintiffs' allegations establish a plausible inference that Defendants breached their duty of prudence by paying excessive Bundled RKA fees to Aight during the Class Period.**

3

4    The duty of prudence includes a continuing duty to monitor plan expenses and "incur

5    only costs that are reasonable." *Tibble*, 843 F.3d at 1197. Defendants cite to a number of Ninth

6    Circuit cases in order to have the FAC dismissed. However, as a district court in the Ninth

7    Circuit recently explained, in a case exactly on point:

8

9    Courts have taken slightly different approaches at the motion to dismiss stage to
     evaluating the viability of causes of action averring excessive recordkeeping and
     administrative fees. *Compare In re Sutter Health ERISA Litig.*, No. 20-cv-1007,
10   2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (finding allegation of specific
     facts supporting claims of excessive fees sufficient), *with Wehner v. Genentech,
11   Inc.*, No. 20-cv-6894, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (holding
     "a plaintiff must plead administrative fees that are excessive in relation to
12   the *specific* services the recordkeeper provided to the *specific* plan at issue").
     In *White [v. Chevron Corp.]*, the court (applying the latter approach) dismissed
13   breach of duty of prudence claims in part because the plaintiffs did not "allege
     any facts from which one could infer that the same services were available for less
14   on the market." 2016 WL 4502808, at *14. These approaches are perhaps most
     clearly distinguished by the extent of the burden they place, respectively, on
15   plaintiffs to plead that fees were excessive.

16   *See Nagy v. CEP Am., LLC*, 2024 WL 2808648, at *3 (N.D. Cal. May 30, 2024) (emphasis in

17   original).

18   The plaintiffs in *Nagy* had alleged, among other things, that Schwab, the Plan

19   recordkeeper, offered "standard services typical of other recordkeepers despite receiving . . .

20   higher fees." *Id.* at *4. Further, "[t]o contextualize the fees paid to Schwab, Plaintiffs point to

21   data evaluated by a defense expert in another case about recordkeeping fees for nine plans with

22   between 2,500 and 15,000 participants where 'the range of fees was $48.00 to $86.15 in 2017 . . .

23   Defendants do not contest that the fees paid in these nine comparator cases were for

24   recordkeeping services alone." *Id.* Although the defendants in *Nagy* did contest that "Plaintiffs'

25   proffered comparator plans are unhelpful because the 'allegations about the Plan's fees refer to

26   payment to two parties for *two different types of services* (recordkeeping and general

     administration)," *id.* (emphasis in original), the court rejected that argument, instead finding that,

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(2:24-cv-1230) - 4

1    "Plaintiffs . . . explicitly allege that the fees the Plan paid Schwab simply for ordinary

2    recordkeeping services . . . dwarfed those paid to recordkeepers across a range of comparable

3    plans." *Id.* (citing *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 467 (N.D.

4    Cal. 2017) (finding claimed breaches of duties of prudence and loyalty plausible where

5    "recordkeeping expenses were five to ten times higher than average for similarly-sized plans

6    with over $1 billion in assets"). Finally, the court in *Nagy* observed that, "Plaintiffs need not

7    provide even more granular, micro-level 'apples to apples' comparisons, based on data to which

8    they may not yet have access, in order to survive a motion to dismiss." *Id.* Under all these

9    circumstances, the court in *Nagy* concluded that, "Plaintiffs have done enough to support a

10    plausible inference that Defendants breached their duty of prudence by paying excessive

11    administrative fees to Schwab." *Id.*

12         The same is true here. Plaintiffs have alleged that Alight provided the Nordstrom Plan

13    standard, non-customized services typical of other recordkeepers, FAC, ¶ 56 ("These Bundled

14    RKA services are fungible and commoditized, and are standard services provided by all major

15    recordkeepers for massive ERISA 401(k) plans, like the Nordstrom Plan."); Plaintiffs have

16    contextualized the fees here by comparing Bundled RKA fees paid to the recordkeepers by seven

17    other comparator plans over a variety of years within the Class Period, FAC, ¶ 115; and

18    Defendants cannot, and do not, contest that the fees paid by these seven comparator cases were

19    not for recordkeeping services alone. FAC, ¶¶ 67-71. Moreover, although Defendants here use

20    the same playbook as the defendants in *Nagy* and make similar arguments regarding

21    incomparability of recordkeeping versus administrative and trustee fees, Dkt. # 30 at 11-14,[1] like

22

23

24    [1] Defendants spill much ink on whether trustee fees are included in the Bundled RKA number.
     Dkt. # 30 at 11, 18-19. They are. Plaintiffs allege that "Because Alight is a recordkeeper only
25    and does not provide custodial or trustee services, Alight's payment to Bank of New York
     Mellon for trustee services is included in the Bundled RKA fee to make an apples-to-apples
26    comparison with regard to the selected comparator plans which include trustee fees," FAC, ¶ 64,
     and "the Bundled RKA analysis focused on recordkeeping (Codes 15 and 64) *and trustee fees*
     (codes 21, 25, 50, 99) provided by Alight is an appropriate method to make an apples-to-apples

RESPONSE IN OPPOSITION TO MOTION TO DISMISS          **WALCHESKE & LUZI LLC**
(2:24-cv-1230) - 5                                    235 N. Executive Drive, Suite 240
                                                     Brookfield, WI 53005
                                                     TEL.: (414) 828-2372

the plaintiffs in *Nagy*, Plaintiffs allege essentially that the fees the Plan paid to Alight "for ordinary recordkeeping services . . . dwarfed those paid to recordkeepers across a range of comparable plans." FAC, ¶¶ 120 ("[A] hypothetical prudent plan fiduciary would not agree to pay **an over 85% premium** for what they could otherwise pay for the materially similar level and quality of Bundled RKA services.") (emphasis in original).[2] Under these circumstances, this Court should follow the well-reasoned opinion in *Nagy* and find that Plaintiffs "need not provide even more granular, micro-level 'apples to apples' comparisons, based on data to which they may not yet have access, in order to survive a motion to dismiss." *See Nagy*, 2024 WL 2808648, at *4.

Thus, as in *Nagy,* this Court should conclude that Plaintiffs have done enough to support a plausible inference that Defendants breached their duty of prudence by paying excessive Bundled RKA fees to Alight.

2.     **Plaintiffs' allegations are plausible because Alight performed Bundled RKA services comparable to those performed by recordkeepers for seven other comparator plans.**

Even Defendants' cited authority helps to show that Plaintiffs have stated a claim for fiduciary breach under ERISA. In *Wehner v. Genentech, Inc.*, 2021 WL 507599 (N.D. Cal. Feb 9, 2021), the court specifically noted that where a plaintiff alleges 401(k) plan administrative fee comparators are "'similarly-sized plans' or are 'plans like those at issue'" dismissal is not appropriate because plaintiff's claims of excessive fees are "plausible." *Id.* at *7; *see also* and

_____

comparison, and then infer a flawed fiduciary process from the disparity in RKA fees." *Id.,* ¶ 69 (emphasis added).

[2] Defendants maintain that they pointed out in the initial complaint that "even if Plaintiffs' methodology worked, the numbers were wrong because Nordstrom's fee range for every year except 2023 was $2–$3 per month." Dkt. # 30 at 15-16. In fact, in 2023, the range was $2-$5 per month. FAC, ¶ 60 ("According to the Plan October 2023 Annual Fee Disclosure Statement to Participants, 'administrative fees' includes 'Plan services such as trustee, legal, recordkeeping, and accounting services . . . . *Historically*, these fees have ranged from $2-$5 each month.") (emphasis added). Thus, there is nothing inconsistent with the Bundled RKA numbers calculated by Plaintiffs for the Nordstrom Plan, which found fees of $34-$35 per year from 2018 to 2022 and $57 a year for 2023, leading to an average of $39 over the Class Period. FAC, ¶ 115.

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
T E L . :   ( 4 1 4 )   8 2 8 - 2 3 7 2

*Partida v. Schenker Inc.*, 2024 WL 1354432, at *8 (N.D. Cal. Mar. 29, 2024) ("[T]o plausibly plead a claim for excessive recordkeeping fees, Plaintiff must allege facts regarding the specific services provided and how the "fees were excessive in relation to the specific services [] provided to the specific plan at issue."). While the plaintiffs in *Wehner* and *Partida* made no such allegations, and therefore the court granted dismissal, Plaintiffs here allege even more than what *Wehner* and *Partida* require. *See* FAC ¶¶ 58 ("[T]he Plan provided participants all the fungible and commoditized Bundled RKA services provided to all other very large 401(k) plan participants."); *id.,* ¶ 76 ("Industry experts have maintained for years that for very large retirement plans like the Plan, prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price. ['Custody and recordkeeping are 'commodity' services. Like any commodity, given equal quality, the key benchmark for these services is price. The cheaper you can find competent custody and recordkeeping services, the better for participants.'"] (citing Eric Droblyen, Evaluating 401(k) Providers: Separating Commodity from Value-Added Services, https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services.")).

Moreover, and significantly, in addition to *Nagy* discussed above, district courts in the Ninth Circuit "have repeatedly found allegations like these sufficient to state a claim of imprudence based on excessive recordkeeping fees." *See Coppel v. SeaWorld Parks & Ent., Inc.*, 2023 WL 2942462, at *14 (S.D. Cal. Mar. 22, 2023); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *11 (S.D. Cal. June 24, 2020) (finding plaintiffs stated a claim for breach of fiduciary duty under ERISA by alleging "the amount of fees charged and the availability of cheaper, readily available recordkeeping services."). On the other hand, most of the case cited by Defendants to the contrary are either not Ninth Circuit cases or do not involve the same commodification and fungibility allegations present here. *See, e.g., Sigetich v. Kroger Co.,* 2023 WL 2431667 (S.D. Ohio Mar. 9, 2023)*; Miller v. Pfizer, Inc.*, Case No. 1:23-cv-594, Dkt. 64

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(2:24-cv-1230) - 7

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

(W.D. Mich. Oct. 17, 2024); *Cunningham v. USI Ins. Servs., LLC*, 2022 WL 889164, at *4 (S.D.N.Y. Mar. 25, 2022).

Additionally, numerous cases Defendants rely upon have underlying allegations involving participant and asset size not even applicable to this case. For instance, unlike *Ruebel v. Tyson Foods, Inc.*, 2024 WL 3682230 (W.D. Ark. Aug. 6, 2024) (no asset allegations one reason case dismissed); *Munt v. WEC Energy Grp.*, 728 F. Supp. 3d 957 (E.D. Wis. 2024) (30x more participants between smaller and largest comparators); *Guyes v. Nestlé USA Inc.*, 2024 WL 218420 (E.D. Wis. Jan. 19, 2024) (6x more participants between smaller and largest comparators); *Cotter v. Matthews Int'l Corp.*, 2024 WL 218417 (E.D. Wis. Jan. 19, 2024) (19x more participants between smaller and largest comparators), this case does not have the same wide disparities in comparator plan participant size, asset size, or both. Rather, the comparators in the FAC are very similar in size to the Nordstrom Plan. FAC, ¶ 115 (showing participant disparity of a little more than 3x), and therefore, this case is materially similar to other cases with comparator plans closer in size and where the court found plausible claims. *See Glick v. ThedaCare, Inc.*, 2024 WL 233370 (E.D. Wis. Jan 22, 2024) (3x more participants between smaller and largest comparators); *Remied v. NorthShore Univ. Hosp.*, 2024 WL 3251331 (N.D. Ill. July 1, 2024) (1.6x more participants between smaller and largest comparators); *Russell v. Illinois Tool Works*, 2024 WL 2892837 (N.D. Ill. June 10, 2024) (2x more participants between smaller and largest comparators); and *Shaw,* attached as Exhibit A, at 23-28 (E.D. Wis. Oct. 18, 2024) (discussing *Guyes, Nohara, Remied*, *Russell*, *Cotter,* and *Glick*, and finding that the comparator plans in *Shaw* were close enough in size (2x more participants) to infer a plausible ERISA breach of the duty of prudence claim).

Moreover, *Shaw* found that asset size comparators are less important than participant size comparisons because "[t]here's some other courts that have approved even bigger differences in asset size, maybe suggesting that the number of participants is more probative than asset size, although it's not clear." *Id.* at 28 (citing *Glick*, 2023 WL 9327209, at *3, *6) (largest plan had 11

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

times more assets under management than the smallest plan); *Remied*, 2024 WL 3251331, at *9 (observing that "the largest plan was 254 times larger than the smallest plan, which seems a whopping discrepancy, and which is why it almost hints that the number of participants is the more relevant factor than asset size."). The asset comparison here, which was totally absent in *Ruebel*, has the largest plan 18 times larger than the smallest plan which is similar to *Glick* at 11x. In any event, *Shaw* concluded that "[b]ut I don't think I have to decide [the relevancy of asset numbers] to conclude that in this case the comparator plans listed in the amended complaint are sufficiently comparable, both in terms of participant size and the amount of assets under management." Exhibit A at 28-29. Because the seven comparator plans listed in FAC are sufficiently comparable, both in terms of participant size and the amount of assets under management, these comparators provide a sound comparison. *See also Dionicio v. U.S. Bancorp*, 2024 WL 1216519, at *3 (D. Minn. Mar. 21, 2024), *motion to certify appeal denied*, 2024 WL 2830693 (D. Minn. June 4, 2024) ("Even if a comparator has similar total assets, defendants will complain that it has too many or too few participants, and even if a comparator has similar total participants, defendants will complain that it has too many or too few assets.")

Finally, courts in other Circuits have come to persuasive, similar conclusions in dismissing motions to dismiss regarding excessive RKA claims where well-pled fungibility and commodification allegations have been made. *See, e.g., Munt*, 728 F. Supp. 3d at 973 n. 10 ("To the extent that Defendants implicitly argue . . . that Plaintiffs are required to allege with specificity what recordkeeping services the Plan and comparator plans each received, the Court does not adopt that specific argument. Plaintiffs' allegations that other recordkeepers provided a similar level and quality of service as Fidelity did to the Plan are sufficient to meet the *Hughes II* pleading standard.") (citing *Hughes v. Nw. Univ.*, 63 F.4th 615, 630–31 (7th Cir. 2023) ("*Hughes II*")). Indeed, after exhaustively reviewing case law on whether fungibility and commodification allegations allow a plausible inference that the recordkeeping fees were excessive relative to the services rendered, *Dionicio* observed that "[a]lthough no clear consensus

has emerged, the majority of judges addressing specific allegations regarding the fungibility and commodification of recordkeeping services have found the excessive-fees claims to be plausible." *Id.* at *4 (collecting cases).

### 3.    Plaintiffs allege plausible facts that seven comparator plans during two different Class periods are meaningful benchmarks.

Defendants also maintain that the seven comparator plans are not "meaningful benchmarks" for purposes of the comparison of Bundled RKA fees paid by the Nordstrom Plan. Dkt. # 30 at 11-13.[3] Plaintiffs have, however, plainly alleged meaningful benchmarks here and have alleged more than enough facts to that Defendants failed to meet those meaningful benchmarks.

**First.** Defendants are wrong that Plaintiffs are comparing all of the RKA fees paid by the Nordstrom Plan to just some of the RKA fees paid by the comparator plans. Dkt. # 30 at 14-15. Instead, Plaintiffs allege that "[t]he Plan paid both direct and indirect RKA fees during the Class Period to Alight," and "[t]he comparator plans either paid direct and indirect RKA fees or only direct RKA fees, but either way, the same methodology was utilized and indirect compensation was taken into consideration for both the Plan and the comparator plans." FAC, ¶¶ 91-92; *see also id.*, ¶ 131. Plaintiffs even emphasizes that "[t]his action focuses only on Plan Bundled RKA fees paid to Alight and related to recordkeeping and trustee services, including recordkeeping services (code 15) and undisclosed direct payments from the plan (code 50), as outlined in Schedule C of the 2018-2023 Department of Labor ("DOL") 5500 Forms filed by the Nordstrom Plan fiduciaries." *Id.*, ¶ 63.

It is true that comparator plans, like the Leidos, Inc. Retirement Plan, Aldi Inc. Retirement Savings Plan, Fidelity Retirement Savings Plan, Deloitte 401K Plan, UPS 401(K) Savings Plan, and Lowes 401(K) Plan, all use different service codes on their 5500 Forms than

---

[3] The Ninth Circuit has not formally adopted the "meaningful benchmark" standard in the recordkeeping fee context. *See Anderson v. Intel Corp. Inv. Pol. Comm.*, 579 F. Supp. 3d 1133, 1147–48 (N.D. Cal. 2022) (only applying "meaningful benchmark" standard to investment performance claims).

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

the Nordstrom Plan. FAC, ¶¶ 67-68.[4] However, and as the Third Circuit recently observed in

*Mator v. Wesco Distrib, Inc.*, "the different service codes do not undermine the [plan]

comparisons because they apparently overlap, " 102 F.4th 172 (3d Cir. 2024), and "[a]t this

stage, the record does not reveal the [5500 Form] codes' precise meanings, nor whether all plans

define the codes consistently. But given that all the plans received some portion of an

overlapping constellation of recordkeeping services, the comparisons help nudge the [plaintiffs']

claims across the line from possible to plausible." *See id.* at 186.[5]

  **Second.** Defendants attack Plaintiffs' calculations. Dkt. # 30 at 14-20. In other words,

this is a dispute between the parties over the components of the Plaintiffs' calculations of the

comparator's fees and the source documents (5500 Forms) that led to those calculations and

comparison with the Nordstrom Plan fees. That is exactly the kind of factual dispute that is *not*

appropriate for a motion to dismiss under Rule 12(b)(6). *See Shaw*, Case No. 20-cv-1645-pp,

Dkt. 56, at 22 ("For the Court to go through and pick through these form 5500's submitted by the

defendant at this stage to try to question whether the plaintiff included the exact fees paid by the

defendant and the comparator plans for the exact same service is basically this Court going

outside the four corners of the complaint to challenge . . . the truth of the allegations . . . in the

complaint. I am required at this stage, 12(b)(6) stage, to accept as true the allegations in the

FAC.").

---

[4] Defendants assert that "[i]n addition to ignoring the vast differences in service codes the 5500s reflect, Plaintiffs also misunderstand what those forms say." Dkt. # 30 at 12. In this regard, the Ninth Circuit has held that a court may not take judicial notice of any disputed facts in such documents. *See Coppel,* 2023 WL 2942462, at *10 n.12 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1000 (9th Cir. 2018)). The Court should therefore deny Defendants' request for judicial notice for Exhibits 1-11 to the extent 5500 Forms (including instructions) or other disclosures are being utilized by Defendants to advance disputed facts or calculations in support of their motion. ECF No. 32 at 1-2.

[5] Defendants also argue that "Plaintiffs admit that Leidos, Aldi, and Fidelity 'do not include legal and accounting' services. FAC, ¶ 72." Dkt. # 30 at p. 13. Anticipating this argument, Plaintiffs establish that consideration of such fees do not undermine the disparity between the Nordstrom Plan and the comparator plans given how little they cost per participant. FAC, ¶ 127.

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

**Third.** Defendants contend that Plaintiffs must compare every year in the Class Period (2018-2023) with every year for the comparator plans, citing to one district court opinion in the Western District of Michigan. Dkt. # 30 at pp. 16-17 (citing *Miller,* No. 1:23-cv-00594, ECF 24). Yet, Plaintiffs have two "table[s] and graph[s] [that] illustrate the annual Bundled RKA fees paid by other similarly-sized, comparable plans, receiving a materially similar level and quality of commoditized and fungible Bundled RKA services, compared to the average annual Bundled RKA fees paid by the Plan (as identified in the table above), *during different times periods of the Class Period,*" including from 2018 to 2022 and 2023. FAC, ¶ 116 (emphasis added). Moreover, Plaintiffs allege that "Aldi's fee changed from $25 in 2020 to $23 in 2021." *Id.* Plaintiffs also allege that, "[b]y the start of, and during the entire Class Period, the level of fees that recordkeepers and other service providers have been willing to accept for providing Bundled RKA has stabilized, and has not materially changed for very large plans, including the Plan." FAC, ¶ 88. Finally, and most significantly**, there is no requirement** in the Ninth Circuit that every year in the Class Period must be compared, as no case in this Circuit has ever so held. Indeed, *Nagy* chastised defendants for a similar argument and held that plaintiffs "need not provide even more granular, micro-level 'apples to apples' comparisons, based on data to which they may not yet have access, in order to survive a motion to dismiss." *Nagy*, 2024 WL 2808648, at *3.

**Fourth.** Defendants make a throw-away, straw-man argument that "Plaintiffs' information for . . . comparator plans comes from disclosures the comparators made to their participants under 29 C.F.R. 404a-5. Those disclosures are not public, so Nordstrom would not have had contemporaneous access to them." Dkt. # 30 at 19-20 (citing *Jacobsen v. Long Island Cmty. Hosp.*, No. 24-cv-386, ECF No. 30 (E.D.N.Y. July 22, 2024)). First, Plaintiffs never made such an allegation. *See* FAC, ¶ 132 ("During the entirety of the Class Period, and had Defendants engaged in regular and/or reasonable examination and competitive comparison of the Bundled RKA fees it paid to Alight, it would have realized that the Plan was compensating Alight

unreasonably and inappropriately for its size and scale, passing these objectively unreasonable and excessive fee burdens to Plaintiffs and other Plan participants."). Plaintiffs do not allege that Defendants needed to know participant fee disclosure information from other plans in order to receive a reasonable examination or competitive comparison of Bundled RKA fee. Instead, Plaintiffs allege that "[i]t is the standard of care prevailing among industry experts to solicit competitive bids every three to five years," FAC, ¶ 95, and "Defendants failed to regularly solicit quotes and/or competitive bids from RKA providers, including but not limited to Alight, in order to avoid paying unreasonable Bundled RKA fees." *Id.,* ¶ 113. The Bundled RKA for comparator plans only establishes the Bundled RKA bids Defendants could have received for RKA services in the prevailing market at the time in question, not that they needed to know what other Plan paid.

For all these reasons, then, Plaintiffs have stated a plausible claim for breach of the duty of prudence based on excessive Bundled RKA fees and the Court should deny Defendants' motion to dismiss the FAC.

### 4. Plaintiffs have stated a plausible claim (Count III) for fiduciary breach based on MA services being excessive in relation to the services rendered because FE MA services are commoditized and fungible.

Plaintiffs have provided similar and *very specific* evidence of fungibility and commoditization for MA services provided by FE to the Nordstrom Plan. FAC, ¶¶ 139-144, 148-151. In this vein, Plaintiffs allege that "Financial Engines provides a MA strategy distinctive from its two main competitors, Morningstar and Fidelity," *id.*, ¶ 140, "[u]nlike Morningstar and Fidelity, Financial Engines provides the same core asset allocation services to all plans for which it acts as the MA service provider," *id.*, ¶ 141, and "plans that use FE all receive the same MA services and methodology which feature the same key drivers of asset allocation risk level:

      (a)      A participant's selected retirement age and selected risk preference will drive allocation;

(b)    Majority of participants use default age (65) and risk preference ("typical");

(c)    "Typical" asset allocation primarily based on DIY participant asset allocations;

(d)    Outside account composition will affect asset allocation (not amount of assets); and,

(e)    Other factors such as income and savings may affect retirement income forecast but not managed asset allocations.

*Id.*, ¶ 142. Finally, "[a]cross service plans, FE will primarily select the passive managers in a given plan, and the primary drivers will be fees, turnover, analysis of representative asset class, and FE may also continue to hold investments a participant already holds." *Id.*, ¶ 144.

Yet, in the face of all of these specific allegations regarding the fungibility and commoditization of FE MA services that the Nordstrom Plan received, Defendants insist that "Plaintiffs . . . argue only that the [MA service] paid too much in fees as compared to other MA[ ] providers . . . Plaintiffs do not allege sufficient facts from which to infer that the PMP charged too much for the services it provided." Dkt. # 30 at 20. It is hard to imagine what "sufficient facts" exactly might mean to Defendants given the very specific allegations of FE's MA services being fungible and commoditized that Plaintiffs make, and given that Plaintiffs have shown, based on seven comparator plans that receive those same fungible MA services from FE, that Defendants substantially overpaid for these MA services. FAC, ¶ 152 ("Nordstrom continues to pay unreasonable and excessive MA fees for the materially same FE MA services being received by these other comparator plans with similar numbers of participants and assets."); *see also id.*, ¶¶ 146-151. Defendants makes four arguments to try to refute Plaintiffs' excessive MA allegations.

**First.** Defendants contend that "Nordstrom received MAS services through a subcontract between Alight and Financial Engines, while others contracted directly with Financial Engines." But as Plaintiffs allege, an allegation that must be taken as true, "[t]he MA services provided by

Financial Engines to plans are materially[6] the same whether provided directly by Financial Engines or whether they sub-advise through another entity like AFA, Empower, or Vanguard," *Id.*, ¶ 139. At minimum, this is a factual dispute over the nature of MA services provided by FE directly or by sub-advising, including "whether Alight was providing services to the Plan in addition to those provided by Financial Engines." Dkt. # 30 at 21. This dispute cannot be determined on a 12(b)(6) motion.

**Second.** Defendants attack the MA fees paid by comparator plans by maintaining that "Plaintiffs do not establish how much the comparators were charged through the class period." Dkt. # 30 at 22. Yet, Plaintiffs purposefully allege managed account fees charged by FE throughout the entire Class Period to meet this very concern. FAC, ¶ 150 (showing specific FE fees for comparators from 2019, 2020, 2021, and 2023). These allegations establish that lower MA fees were available from FE for similarly sized plans as Nordstrom's throughout the Class Period. *Id.*, ¶ 151. In any event, and as discussed previously with Bundled RKA fees, *there is no requirement* in the Ninth Circuit that every year in the Class Period must be compared, as no case in this Circuit has ever so held. *See Nagy*, 2024 WL 2808648, at *3.

**Third.** Defendants make a curious argument that Plaintiffs cannot compare Bundled RKA fees on a flat fee basis, while at the same time comparing MA fees based on a percentage or asset-based basis. Dkt. # 30 at p. 23. Defendants also claim that, "it is not possible from [Plaintiffs'] comparison to determine whether the Plan actually paid more than these comparators for managed account services, let alone whether it paid so much more as to render its costs imprudent for the services rendered." *Id.* Unsurprisingly, Defendants cite *zero* cases either in this Circuit or anywhere else for these surprising propositions. In any event, ERISA case law is

---

[6] Defendants creatively jump on the use of the word "materially" here to argue that "materiality is a legal conclusion, so the amended complaint needs to allege facts supporting that conclusion." Dkt. # 30 at 21-22. Of course, "materially" and "materiality" are not even the same word, as one is an adjective meaning "substantially; considerably" (materially) and the other is a legal term meaning "something is important, significant, or essential, and that knowledge of it would affect a person's decision-making" (materiality).

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

replete with cases alleging plausible claims for relief in excessive fee cases where the asset-based fees are being compared percentage to percentage between plans. *See, e.g.*, *Coppel*, 2024 WL 3086702, at *13 (claim that certain Plan investments "benefitted the Plan's recordkeeper and other service providers through revenue sharing payments for unreasonably excessive asset-based fees."). Moreover, although Plaintiffs' MA chart does show total amount of direct compensation paid by each of the comparator plans and the Nordstrom Plan, FAC, ¶ 153, comparing the total amount paid in MA fees is irrelevant. What is relevant is that if Defendants negotiated for lower rates from AFA and FE, its participants could have paid over three times less for the same MA services. *Id.*, ¶ 153 ("Whereas Nordstrom pays 60 basis points in fees for the first $100,000 in account balances (which accounts for the fees paid by most managed account participants), the comparators plans pay an average of 18.3 basis points for at least the first $100,000 in plan accounts (and sometimes for the entire plan account no matter the balance"). Just as with the Bundled RKA allegations, Plaintiffs rely on these comparators to plausibly infer an imprudent decision-making process with regard to MA services for the Nordstrom Plan. *See Hughes II*, 63 F.4th at 633.

For all these reasons, Plaintiffs have plausibly established that the Nordstrom Plan and the comparator plans received the same basket of MA services from FE and that the Nordstrom Plan overpaid for this same basket of MA services.

**B.    Plaintiffs state a plausible claim (Counts V-VII) for breach of the duties of loyalty and prudence, and for fiduciary prohibited transactions, with regard to Defendants misuse of Plan forfeitures.**

**1.    Defendants are "fiduciaries" that breached both their duty of loyalty and prudence by using Plan forfeitures for their own benefit.**

With regard to Plan forfeitures, the ERISA duty of loyalty requires fiduciaries to act with an "eye single" to the interests of participants. *See Pegram v. Herdrich*, 530 U.S. 211, 234–5 (2000); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1093–94 (9th Cir. 2004). "Perhaps the most fundamental duty of a [fiduciary] is that he must display ... complete loyalty

to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Pegram*, 530 U.S. at 224; *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.). Furthermore, in deciding to use Plan forfeiture to benefit itself as far as reducing future company contributions through use of plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates the ERISA fiduciary prohibited transaction rules under 29 U.S.C. § 1106(b).

With regard to misallocation of Plan forfeitures, Plaintiffs allege that "[p]articipants are fully vested in their salary deferrals plus actual earnings thereon. Vesting in Employer contributions is based on years of qualified service and vest fully after two years of service," and "[f]orfeitures are the nonvested portion of a participant's account that is lost upon termination of employment." FAC, ¶¶ 166-167. More specifically, and relying on the Nordstrom 401(k) Plan document, Plaintiffs allege that:

> Nordstrom's Plan gave the Retirement Committee a choice about how to use the forfeitures each year. In particular, the Retirement Committee could allocate the forfeited funds to reduce the Plan's expenses, thereby saving the Participants (who otherwise pay those expenses) money, or the Retirement Committee could elect to use the forfeited funds to offset Nordstrom's own obligation to make matching contributions.

The 2021 version of the Plan document has two pertinent provisions:

6.5 <u>Forfeiture Suspense Account</u>.

¶ 6.5.3 <u>Allocation of Forfeitures held in the Forfeiture Suspense Account</u>. The forfeiture suspense account will be used first to restore any previously forfeited amounts under Section 10.8.2, ***and then to reduce Company contributions as provided under Section 5.1.2***. (emphasis added).

In turn, the pertinent provision in Section 5 states:

5.1 <u>Employer Profit Sharing Contribution</u>.

¶ 5.1.2 <u>Forfeitures</u>. To the extent not used to restore amounts previously forfeited under Section 10.8.2, forfeitures under Section 8.3 for the then completed Plan Year *shall be used to reduce the Employer contribution obligations or to pay expenses of Plan administration, as determined by the Retirement Committee in its sole discretion*. (emphasis added).

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

*Id.*, ¶¶ 168-170. Based on these provisions, Plaintiffs allege that "[t]he combination of ¶¶ 6.5.3 and 5.1.2, working in tandem, means that the forfeiture suspense account will be used, after restoring previously forfeited amounts, to ***either*** reduce Company contributions or pay expenses of Plan administration, as determined by the Retirement Committee ***in its sole discretion***." (emphasis added)," and "[t]o read this Plan language to require the Retirement Committee to always use forfeitures to reduce Company contributions would render the "provided under Section 5.1.2" language in ¶ 6.5.3 superfluous." *Id.*, ¶¶ 171-172. Defendants utterly failed to live up to the duty of loyalty standard, placing their own selfish interests above Plan participants in using Plan forfeitures for their own benefit when they had the discretion to use it for the benefit of Plan participants. As alleged, "Defendants have consistently utilized the forfeited funds in the Plan exclusively for the Company's own benefit, to the detriment of the Plan and its participants, by using these Plan assets solely to reduce Nordstrom's obligation to making matching contributions to the Plan." *Id.,* ¶ 185.

Defendants dispute their fiduciary status in deciding how to use the Plan forfeitures. Dkt. # 30 at 23-2. They maintain that "the decisions related to forfeitures were not made in a fiduciary capacity because the Plan required the allocations of which Plaintiffs complain, and decisions about plan structure and funding contributions are settlor functions." *Id.* at 27. Yet, as alleged, it is clear that Defendants were acting as fiduciaries, rather than settlors, because the allocation of forfeited amounts is an administrative decision that fell outside of typical design-related settlor functions and Defendants exercised "sole discretion" under Section 5.1.2 of the Nordstrom Plan. *See Hutchins v. HP, Inc.*, 2024 WL 3049456, at *5 (N.D. Cal. June 17, 2024) ("The Court finds that the decision to allocate forfeited amounts is a fiduciary, as opposed to a settlor, function."); *Rodriguez*, 2024 WL 3755367, at *4 (holding that discretionary responsibility in the administration of the plan' implies that [the employer] is a fiduciary of the plan.") (citing 29 U.S.C. § 1002(21)(A)(iii)). Section 6.5.3 is clear that forfeitures can only be used "to reduce

Company contributions **as provided under Section 5.1.2**. Section 5.1.2, in turn, states unequivocally that "forfeitures shall be used to reduce the Employer contribution obligations or to pay expenses of Plan administration, as determined by the Retirement Committee **in its sole discretion**."[7] This "discretionary" language is simply not "mandatory" in language like that in *Naylor v. BAE Systems, Inc.*, 2024 WL 4112322, at *4, *6 (E.D. Va. Sept. 5, 2024) (no similar "sole discretion" language in forfeiture provisions, rather "discretion [that] . . . appear[ed] limited). In any event, at worst, any disagreement over ambiguous Plan language meaning would benefit from further evidence of intent garnered during discovery.

Defendants also argue "that the allocations of which Plaintiffs complain did not breach any fiduciary duty." Dkt. # 30 at 26 (citing *McManus v. The Clorox Company et al.*, No. 4:23-cv-05325, ECF 44, at 8–10 (N.D. Cal. November 1, 2024)). Yet, *McManus* and *Hutchins* rely on a proposition that Plaintiffs allegations must be "too broad" and should be dismissed as implausible on that basis. *See, e.g., Hutchins*, 2024 WL 3049456, at *6 ("The Court finds that Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible.") (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). This logic is erroneous, as it relies on the inapplicable pleading standard in *Dudenhoeffer*. The United States Supreme Court has made clear that the *Dudenhoeffer* standard only applies in the limited context of employee stock ownership plan ("ESOP") cases. *See Hughes II*, 63 F.4th at 628 ("Since *Dudenhoeffer*, the Court has reaffirmed that the case 'set forth the standards for stating a claim for breach of the duty of prudence against fiduciaries who manage employee stock ownership plans (ESOPs).") (quoting *Amgen Inc. v. Harris*, 577 U.S. 308, 309 (2016)). Instead,

---

[7] Section 8.6 of the Plan, titled "Forfeiture Reallocation," provides that, in the event of severance for any reason other than those provided in Section 8.2 (i.e., fraud, embezzlement, etc.), "the forfeited portion of a Participant's account shall be allocated . . . as provided in Section 6.5." *Id.* § 8.6 (emphasis added). This section does not change the analysis because Section 6.5 sends the reader back Section 5.1.2, where the Plan Committee has the "sole discretion" to use the forfeitures to "to reduce the Employer contribution obligations or to pay expenses of Plan administration." FAC, ¶ 172.

1    *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024), and

2    *Rodriguez*, 2024 WL 3755367, provide more persuasive analyses that do not depend on the

3    heightened *Dudenhoeffer* pleading standard.

4            *Perez-Cruet* involved the same breach of duty of loyalty claim as here: "Plaintiff

5    allege[d] that Defendant Qualcomm breached this duty by choosing to use forfeited funds to

6    reduce its own future contributions to the Plan instead of reducing the administrative expenses

7    which are borne by participants. In this way, it is alleged, Qualcomm chose to put its own

8    interests ahead of the interests of the Plan participants by choosing not to act for the exclusive

9    purpose of benefiting Plan participants." *See Perez-Cruet*, 2024 WL 2702207, at *2. Under these

10   circumstances, *Perez-Cruet* found that "Plaintiff has made out a plausible claim that Defendants

11   violated § 1104" because "[t]hough there is no case on point, the Supreme Court says Rule

12   12(b)(6) requires a context-sensitive inquiry." *Id.*; *see also Rodriguez*, 2024 WL 3755367, at *5

13   (holding that "[t]he complaint plausibly alleges that Intuit acted in contravention of ERISA's

14   mandate to provide benefits solely in the interest of participants and beneficiaries when it chose

15   to use forfeitures to reduce its own contributions during the class period.").

16           *Rodriguez* rejects Defendants' contention, Dkt, 30 at p. 26, that Nordstrom "did not

17   breach its duty of loyalty because their conduct expressly complied with the terms of the Plan

18   Document, which were not unlawful." *See Rodriguez*, 2024 WL 3755367, at *5 (citing *Wright v.*,

19   360 F.3d at 1100). Because plaintiff plausibly established that Plan fiduciaries had discretion to

20   use plan forfeitures to reduce plan expense, the Court found that *Wright* was not controlling at

21   the pleading stage of the case. *Id.* at *6. In any event, "even if [Nordstrom] had complied with the

22   terms of the Plan Document, that alone would not excuse [Nordstrom] from fulfilling its

23   fiduciary duties under ERISA." (citing *Dudenhoeffer*, 573 U.S. at 421). For all these reasons, the

24   allegations in the FAC plausibly suggest that Nordstrom breached its duty of loyalty by making

25   decisions that were not in the best interest of Plan participants.

26

**Walcheske & Luzi llc**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

As far as the duty of prudence with regard to Plan forfeitures, the same standards apply as discussed with Bundled RKA fees. Defendants had waived their right to contest the duty of prudence claim with regard to forfeitures because they have not provided any arguments or cases concerning this claim. In any event, the FAC alleges that Defendants breached the duty of prudence by "in deciding how to allocate forfeitures, Defendant Plan Committee utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own future contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors." FAC, ¶ 249. Given these allegations, and the lack of Defendants' argument to the contrary, Plaintiffs have plausibly alleged a breach of the duty of prudence. *See Rodriguez*, 2024 WL 3755367, at *7.[8]

In all, Plaintiffs plausibly allege that the Defendants breached their fiduciary duty of loyalty and prudence to Plan participants by making a discretionary, fiduciary choice that put the employer's own interests to reduce their mandatory future Plan contributions above the interests of the Plan participants.

**2.    Defendants engaged in fiduciary prohibited transaction when they used their discretion to engage in self-dealing with regard to using Plan forfeitures to reduce their employer contributions to the Plan.**

29 U.S.C. § 1106(b)(1) prohibits a fiduciary with respect from a plan from dealing with the assets of the plan in his own interest or for his own account. Plaintiffs alleges that Nordstrom "engaged in self-dealing with regard to Plan forfeitures in violation of ERISA fiduciary

---

[8] In a last gasp attempt to avoid plausible claims of fiduciary breaches of prudence and loyalty, Defendants point to a proposed federal regulation, never finalized, that they argue forecloses Plaintiffs' theory of liability. Dkt. # 30 at 26-27 (citing *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12,282, 12,283 (Feb. 27, 2023)). Because this "rule has not yet been adopted, it has no force of law." *See Perez-Cruet*, 2024 WL 2702207, at *7.

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

prohibited transaction rules by favoring their own selfish interests instead those of Plan participants." FAC, ¶ 7.

Defendants move to dismiss Plaintiffs' fiduciary prohibited transaction claims for two reasons. "First, because Plaintiffs have failed to allege a predicate fiduciary breach, there is no basis for a prohibited transactions claim," Dkt. # 30 at p. 27 (citing *Naylor*, 2024 WL 4112322, at *7), and "[s]econd, there can be no prohibited transaction claim here because 'the payment of benefits is not a 'transaction' under [ERISA's] prohibited transactions provision.'" *Id.* (citing *Hutchins*, 2024 WL 3049456, at *9). Both of these contentions can be readily refuted.

First, "[f]or the reasons addressed above, [the argument concerning lack of predicate fiduciary breach] lacks merit because [Plaintiffs have] plausibly pleaded that [Nordstrom] acted as fiduciary and not a settlor with respect to the challenged conduct." *See Rodriguez*, 2024 WL 3755367, at *9. Second, the payment of benefits is a "transaction" under [ERISA's] prohibited transactions provision both because from a common sense perspective, the allegations clearly are "transactions" because Defendants withdrew money from the plan and paid it to Nordstrom and Plaintiffs allege a "transaction" that is consistent with the Supreme Court's interpretation of "dealing with" plan assets for the purposes of 29 U.S.C. § 1106(b)(1). *See id.* at *10. Unlike *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), where the alleged benefit to the employer was distinct and unrelated to any financial risk to the plan itself, Plaintiffs have plausibly alleged that Nordstrom's reallocation of plan assets "reduc[ed] future Company contributions that would otherwise have increased Plan assets and by causing participants to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds," FAC, ¶ 187, a direct threat to the Plan itself. *See Rodriguez*, 2024 WL 3755367 at *9. Thus, Plaintiffs have plausibly stated a claim for prohibited transactions under 29 U.S.C. § 1106(b)(1).

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

### 3. Plaintiffs allege a plausible breach (Counts II, IV, and VIII) of the duty to monitor.

Nordstrom has the power to create and oversee the Plan fiduciary Committee. *See* FAC, ¶¶ 18-19. As such, Nordstrom had a duty to monitor the Plan Committee. *See Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012) ("Implicit within the duty to select and retain fiduciaries is a duty to monitor their performance."). This required Nordstrom and its Board "to ensure that" the Plan Committee complied "with the terms of the plan and statutory standards." 29 C.F.R. § 2509.75-8, at FR–17.

As a consequence, in addition to stating a claim for breaches of the fiduciary duty of prudence and loyalty, and fiduciary prohibited transactions, against Defendant Plan Committee based on excessive RKA and MA fees, as well as misallocation of Plan forfeitures, Plaintiffs have stated a "specific factual basis to support . . . a lack of legally sufficient monitoring by Defendants." *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011); FAC ¶¶ 213-219, 231-237, 258-264. Because the allegations of breach of the fiduciary duties of prudence and loyalty, as well as for engaging in fiduciary prohibited transactions, state a plausible claim, "Plaintiff[s'] derivative claim that Defendants violated the duty to monitor also states a plausible claim for relief, and survives the motion to dismiss." *See Bracalente v. Cisco Systems*, 2023 WL 5184138, at *83-84 (N.D. Cal. Aug. 11, 2023).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss the FAC in its entirety.

DATED this 10th day of January, 2025.

By: */s Paul M. Secunda*
    Paul M. Secunda (admitted *pro hac vice*)
    WALCHESKE & LUZI LLC
    235 N. Executive Drive, Suite 240
    Brookfield, WI 53005
    Tel.: (414) 828-2372
    Fax: (262) 565-6469
    psecunda@walcheskeluzi.com

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(2:24-cv-1230) - 23

**WALCHESKE & LUZI LLC**
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

By: /s Todd M. Schneider
    Todd M. Schneider (admitted *pro hac vice*)

By: /s James A. Bloom
    James A. Bloom (admitted pro hac vice)

SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel.: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com


By: /s Erin M. Riley
    Erin M. Riley, WSBA #30401

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
Tel.: (206) 623-1900
Fax: (206) 623-3384
eriley@kellerrohrback.com

*Attorneys for Plaintiffs and the Proposed Class*

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
(2:24-cv-1230) - 24

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this memorandum contains 8385 words, in compliance with the local civil rules.

Dated: January 10, 2025                    */s/ Paul M. Secunda*
                                           Paul M. Secunda

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 10, 2025, the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss First Amended Complaint was filed via the Court's CM/ECF system, which will send notification to all counsel of record.

                                           */s/ Paul M. Secunda*
                                           Paul M. Secunda

WALCHESKE & LUZI LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
TEL.: (414) 828-2372