1

2

3

4

5

6

7

8

9

HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CURTIS MCWASHINGTON, EDWARD M.
MESHURIS, EMILY SANCHEZ, JAMES
ALBRIGHT, and CORY R. CROUCHLEY,
individually as participants in the Nordstrom
401(k) Plan and as representatives of all
persons similarly situated,

    Plaintiffs,

    v.

NORDSTROM,      INC.,      BOARD      OF
DIRECTORS OF NORDSTROM, INC., and
NORDSTROM 401K PLAN RETIREMENT
COMMITTEE,

    Defendants.

CASE NO. 2:24-cv-01230-JNW

**REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

NOTE ON MOTION CALENDAR:

January 24, 2025

ORAL ARGUMENT REQUESTED

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 2:24-cv-01230-JNW

1

2

**TABLE OF CONTENTS**

**Page**

3    I.    INTRODUCTION ...........................................................................................................1

4    II.   ARGUMENT ................................................................................................................1

5            A.    Plaintiffs' Excessive Recordkeeping Fees Claim Fails ..........................................1

6                    1.    Plaintiffs fail to identify similarly-sized plans.............................................2

7                    2.    Plaintiffs fail to identify plans that received similar services. ....................3

8                            i.    Plaintiffs' conclusory allegations of fungibility do not salvage the
                                  FAC.................................................................................................3
9
                            ii.   Minimal "apparent overlap" in service codes does not render plans
10                                 comparable. .....................................................................................5

11                          iii.  The Court should consider the Forms 5500 and Instructions. .........5

12                  3.    Plaintiffs' miscalculations and methodological errors doom the FAC.......6

13                          i.    The Court can consider Nordstrom's arguments. ............................6

14                          ii.   Plaintiffs' miscalculations and methodological errors require
                                  dismissal..........................................................................................7
15
         B.    Plaintiffs' MAS Claim Fails ..........................................................................8
16
                    1.    Plaintiffs do not allege what participants paid for MAS...............................8
17
                    2.    Plaintiffs' MAS allegations do not include all services............................10
18
         C.    Plaintiffs' Forfeiture Claims Fail ....................................................................10
19
         D.    Plaintiffs' Prohibited Transactions and Monitoring Claims Fail ...........................12
20
     III.   CONCLUSION............................................................................................................13
21

22

23

24

25

26

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**Cases**

4
5
*Barragan v. Honeywell Int'l Inc.*,
  2024 WL 5165330 (D.N.J. Dec. 19, 2024)......................................................................11, 12

6
*Bouvy v. Analog Devices, Inc.*,
  2020 WL 3448385 (S.D. Cal. June 24, 2020).............................................................................4

7
8
*Boyette v. Montefiore Med. Ctr.*,
  2025 WL 48108 (2d Cir. Jan. 8, 2025) ..................................................................................2, 3

9
10
*Coppel v. SeaWorld Parks & Entertainment., Inc.*,
  2023 WL 2942462 (S.D. Cal. Mar. 22, 2023) ...........................................................................4

11
*Coppell v. SeaWorld*,
  2024 WL 3086702 (S.D. Cal. Jan. 31, 2024)..........................................................................4, 9

12
13
*Cotter v. Matthews Int'l Corp.*,
  2023 WL 9321285 (E.D. Wis Aug. 9, 2023) .............................................................................7

14
15
*Dimou v. Thermo Fisher Scientific Inc. & Mgmt. Comm.*,
  2024 WL 4508450 (S.D. Cal. Sept. 19, 2024).........................................................................11

16
*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)................................................................................................................1, 11

17
18
*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022)...................................................................................................................11

19
20
*Hutchins v. HP Inc.*,
  2024 WL 3049456 (N.D. Cal. June 17, 2024).............................................................11, 12, 13

21
*Korman v. ILWU-PMA Claims Off.*,
  2019 WL 1324021 (C.D. Cal. Mar. 19, 2019)...........................................................................6

22
23
*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) .................................................................................................3

24
25
*Mator v. Wesco Distribution, Inc.*,
  102 F.4th 172 (3d Cir. 2024) ....................................................................................................5

26

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

*McManus v. Clorox Co.*,
  2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ...................................................................11, 13

*Miller v. Pfizer Inc.*,
  No. 23-cv-00594, Dkt. 24 (W.D. Mich. Oct. 17, 2024).........................................................6

*Nagy v. CEP Am., LLC*,
  2024 WL 2808648 (N.D. Cal. May 30, 2024) .........................................................3, 4, 10

*Naylor v. BAE Sys., Inc.*,
  2024 WL 4112322 (E.D. Va. Sept. 5, 2024).......................................................................11, 12

*Ohnemus v. Tel. & Data Sys., Inc.*,
  No. 4:24-cv-00081, Dkt. 32 (S.D. Iowa Nov. 6, 2024) ....................................................4

*Patrida v. Schenker Inc.*,
  2024 WL 1354432 (N.D. Cal. Mar. 29, 2024)....................................................................3

*Paulsen v. CNF Inc.*,
  559 F.3d 1061 (9th Cir. 2009) ..............................................................................................6

*Pension Benefit Guar. Corp. v. Morgan Stanley*,
  712 F.3d 705 (2d Cir. 2013)....................................................................................................5

*Perez-Cruet v. Qualcomm Inc.*,
  2024 WL 2702207 (S.D. Cal. May 24, 2024).....................................................................11, 12

*Rodriguez v. Intuit Inc.*,
  2024 WL 3755367 (N.D. Cal. Aug. 12, 2024) ........................................................................11

*Ruebel v. Tyson Foods, Inc.*,
  2024 WL 3682230 (W.D. Ark. Aug. 6, 2024) .................................................................2

*Sigetich v. Kroger Co.*,
  2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) ........................................................................2

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024) .............................................................................3, 4, 5, 7

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ..............................................................................................5

*Wehner v. Genentech, Inc.*,
  2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ........................................................................3

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - iii
Case No. 2:24-cv-01230-JNW

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1

**Statutes**

2

29 U.S.C. § 1106(b) ......................................................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    I.      **INTRODUCTION**

2          The opposition confirms that Plaintiffs have failed to state a cognizable claim against

3    Nordstrom. The First Amended Complaint ("FAC") should be dismissed with prejudice. ***First***,

4    Plaintiffs' excessive-fee claim fails at every stage because they do not allege facts showing that

5    comparable plans obtained better pricing for similar services. Plaintiffs' opposition asserts that

6    their comparisons are sufficient, but neither the plans they point to nor the services those plans

7    received are comparable to the Plan they attack. Thus, Plaintiffs have failed to state a claim.

8          ***Second***, Plaintiffs' managed account service ("MAS") claim fares no better. Plaintiffs do

9    not allege facts enough to determine how much Nordstrom participants who elected to use the

10   MAS paid, let alone facts showing that other plans' participants paid less. They also confessedly

11   compare services Nordstrom participants obtained from *two* vendors to services others received

12   from *one* vendor. That does not establish imprudence.

13         ***Third***, Plaintiffs' forfeiture claim is against the great weight of authority and foreclosed by

14   the Plan's text. Of the cases Plaintiffs include in their brief, one does not support their position and

15   the other has rightly and repeatedly been criticized as conclusory at best. Thus, Plaintiffs' position

16   is effectively unsupported.

17         ***Finally***, Plaintiffs hardly muster a defense of their prohibited transaction and failure-to-

18   monitor claims. If the Court dismisses Plaintiffs' other claims, these derivative claims should be

19   dismissed too.

20   II.     **ARGUMENT**

21         A.      **Plaintiffs' Excessive Recordkeeping Fees Claim Fails**

22         To plausibly plead an excessive-fee claim, Plaintiffs must show that Nordstrom paid too

23   much for the recordkeeping services it obtained. Nordstrom explained that the FAC should be

24   dismissed because it does not contain allegations showing that similar plans paid less for similar

25

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 1
Case No. 2:24-cv-01230-JNW

1    services. Plaintiffs contend that they do not need such allegations at this stage, but that is contrary

2    to the case law routinely dismissing complaints that lack such allegations.

3        **1.    Plaintiffs fail to identify similarly-sized plans**

4        First, Nordstrom explained that because the number of participants and amount of assets

5    in a plan are relevant to its bargaining power, Plaintiffs cannot satisfy their pleading obligation by

6    pointing to plans with substantially more (or fewer) assets. Dkt. 30 ("Mot.") at 8-11. As

7    Nordstrom's Motion demonstrated, Plaintiffs' comparators are wildly dissimilar. *Id.* Indeed,

8    Plaintiffs' counsel brought a similar claim against Tyson Foods (which plan *is* similarly-sized to

9    Nordstrom's) involving many of the same comparators, only to have it dismissed for exactly this

10   reason. *Id.* at 9 (quoting *Ruebel v. Tyson Foods, Inc.*, 2024 WL 3682230, at *4 (W.D. Ark. Aug.

11   6, 2024)).

12       Plaintiffs' response, after citing cases where other plaintiffs, challenging other plans and

13   using other comparators, cleared the pleading bar, is to baldly assert that "this case does not have

14   the same wide disparities" that led to dismissal in *Ruebel* and other cases. Dkt. 34 ("Opp.") at 8.

15       They are wrong: the disparity here is almost exactly like that in *Ruebel*. Tyson's plan had

16   about $3.7 billion, which is comparable to the roughly $4.1 billion in Nordstrom's plan. *See* Mot.

17   at 9. Plaintiffs' counsel used almost the exact same set of comparators in *Ruebel* as here. *Id.* Thus,

18   the difference between Nordstrom and those comparators is almost *exactly* the discrepancy that

19   rendered Plaintiffs' counsel's pleading inadequate in *Ruebel*. This case is also similar to other

20   cases where courts have found similar discrepancies in plan size too large to permit comparison.

21   *See, e.g.*, *Boyette v. Montefiore Med. Ctr.*, 2025 WL 48108, at *2 (2d Cir. Jan. 8, 2025) ("We are

22   not persuaded that the Fidelity plan, which had twice as many participants with five times the

23   assets as the Plan here, is a relevant comparator."); *Sigetich v. Kroger Co.*, 2023 WL 2431667, at

24   *10 (S.D. Ohio Mar. 9, 2023) (similar). Those cases' logic applies here: Plaintiffs' comparators

25   are too dissimilar to shed any light on the prudence of Nordstrom's conduct.

26

**2.**     **Plaintiffs fail to identify plans that received similar services.**

Nordstrom's Motion also explained that Plaintiffs failed to identify comparators that received similar *services* to those the Plan received. Despite spending seven pages of the FAC detailing how services can differ across plans, Plaintiffs now argue that they need not allege in any meaningful detail that the services were similar; all they need to allege is that all recordkeeping services are "fungible." Opp. 4-8. Alternatively, they argue that any overlap in services across plans is enough to satisfy this requirement. They are wrong on both points.

        i.    <u>Plaintiffs' conclusory allegations of fungibility do not salvage the FAC.</u>

Courts in the Ninth Circuit and elsewhere routinely require that ERISA plaintiffs allege that fees were excessive "in relation to the specific services provided to the specific plan at issue." Mot. at 11 (citing *Patrida v. Schenker Inc.*, 2024 WL 1354432, at *8 (N.D. Cal. Mar. 29, 2024), and *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *4 (N.D. Cal. Feb. 9, 2021)); *see also*, *e.g.*, *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148-49 (10th Cir. 2023) ("A court cannot reasonably draw an inference of imprudence simply from the allegation that a cost disparity exists; rather, the complaint must state facts to show the funds or services being compared are, indeed, comparable."); *Boyette*, 2025 WL 48108, at *1 (plaintiff must use "'apple[s]-to-apple[s]' comparators in terms of services provided'"); *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) ("[P]laintiffs need plausibly to allege that challenged fees were excessive relative to services rendered.") (internal quotation marks omitted).

Plaintiffs argue that this Court should instead credit their conclusory assertion that the recordkeeping services provided by all major recordkeepers to large 401(k) plans are "fungible and commoditized." FAC ¶ 56; Opp. at 5 (citing *Nagy v. CEP Am., LLC*, 2024 WL 2808648, at *3 (N.D. Cal. May 30, 2024)). But *Nagy* does not stand for the rule Plaintiffs seek. According to the *Nagy* complaint, the plan had a significantly different recordkeeping arrangement than here. That plan allegedly hired Schwab to provide "various services to the Plan in its capacity as

1    recordkeeper," while a second vendor, Vituity, "provided the Plan with (and charged for)

2    administrative services." *Id.* The plan in *Nagy* was allegedly charging participants $250-$450 per

3    participant for Schwab's services **and** $236-$411 per participant for Vituity's services. *Id.* at *1-

4    2. The plaintiffs alleged that these fees were unreasonable and that the plan sponsor tolerated the

5    high fees paid to Schwab because Schwab also administered the company's pension plan, for

6    which it "charged no fees." *Id.* at *1. "The Plan, in other words, was subsidizing the Pension Plan."

7    *Id.* The court also credited plaintiffs' allegations that "the scope of services Schwab offered the

8    Plan was limited" in comparison to the services provided to the comparator plans, in part because

9    Vituity was providing (and charging for) administrative services "not provided by Schwab." *Id.* at

10   *4. Moreover, the defendants in *Nagy* did "not contest that the fees paid in [the] nine comparator

11   cases were for recordkeeping services alone." *Id.* The court in *Nagy* found that the plaintiffs

12   provided sufficient allegations "regarding how Schwab provided the same basket (or potentially

13   even a smaller basket) of recordkeeping services relative to the comparator plans." *Id.* Here, the

14   FAC contains no similar allegations.[1]

15       Multiple courts have rejected Plaintiffs' fungibility argument, and the Court should do so

16   here. *See, e.g.*, *Singh*, 123 F.4th at 95; *Ohnemus v. Tel. & Data Sys., Inc.*, No. 4:24-cv-00081, Dkt.

17   32 at 3 (S.D. Iowa Nov. 6, 2024) (dismissing complaint relying on allegation that "recordkeeping

18   services are commoditized"). Indeed, requiring service-specific allegations beyond fungibility

19   makes sense because a "prudent fiduciary might select a higher-priced recordkeeping arrangement

20

21   _____

22   [1] Plaintiffs also cite in passing *Coppel v. SeaWorld Parks & Entertainment., Inc.*, 2023 WL
     2942462, at *14 (S.D. Cal. Mar. 22, 2023), and *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385,

23   at *11 (S.D. Cal. June 24, 2020), but neither case helps them. *Coppell* concerned allegations that
     the same service provider provided the same service over many years but increased fees over 360%;

24   there was no issue of whether other plans received similar services. *Coppel*, 2023 WL 2942462, at
     *13-14. And *Bouvy* concerned allegations of "*detailed facts* to support a conclusion that

25   Transamerica's fees were higher than normal." *Bouvy*, 2020 WL 3448385, at *11 (emphasis
     added). To the extent these cases are relevant, they therefore support Nordstrom's position.

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 4
Case No. 2:24-cv-01230-JNW

1   depending on, *inter alia*, the nature and quality of the services provided." *Singh*, 123 F.4th at 94.

2   Accordingly, "[a] court cannot reasonably draw an inference of imprudence simply from the

3   allegation that a cost disparity exists." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th

4   Cir. 2022). To conclude otherwise would mean that any plaintiff whose plan paid more than the

5   lowest possible price for RKA services could proceed to discovery based on nothing more than an

6   allegation that those services are "fungible." But "the prospect of discovery in a suit claiming

7   breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and

8   costly inquiries and document requests." *Pension Benefit Guar. Corp. v. Morgan Stanley*, 712 F.3d

9   705, 719 (2d Cir. 2013).

10          ii.     Minimal "apparent overlap" in service codes does not render plans

11                  comparable.

12          Citing *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 186 (3d Cir. 2024), Plaintiffs next

13   argue that an overlap of a *single* service code renders their comparators' services "similar" to

14   Nordstrom's. Opp. 10-11. *Mator* does not support that argument; there, the challenged plan's 5500

15   showed *six* services from 2015 to 2019. 102 F.4th at 185. One of the comparators had service

16   codes that "*exactly match* the Plan's six service codes." *Id.* at 186 (emphasis added). The targeted

17   plan later changed recordkeepers and added several new service codes; other comparators *also*

18   *listed those precise service codes* "in addition" to other services that "apparently overlap[ped]"

19   with the challenged plan's services. *Id.* Plaintiffs' allegation of a single overlapping code (and no

20   detail about services) is nothing like the allegations found sufficient in *Mator*.

21          iii.    The Court should consider the Forms 5500 and Instructions.

22          Even though Plaintiffs extensively cite the Plan's and comparator plans' Forms 5500, they

23   ask the Court to ignore those documents "to the extent" the documents contradict Plaintiffs'

24   narrative. Opp. 11 n.4. But as Nordstrom explained, those documents are incorporated by reference

25   into the complaint and, in any event, are subject to judicial notice. Dkt. 32 at 2-4. Plaintiffs'

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 5
Case No. 2:24-cv-01230-JNW

1    response—that these documents create questions of fact in light of their contrary allegations—is

2    wrong. *See*, *e.g.*, *Korman v. ILWU-PMA Claims Off.*, 2019 WL 1324021, at *4 (C.D. Cal. Mar.

3    19, 2019) ("If a document incorporated by reference in a complaint contradicts the plaintiff's

4    conclusory allegations in the complaint, the court need not accept as true the plaintiff's

5    contradictory allegations.") (citing *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009)).

6          **3.    Plaintiffs' miscalculations and methodological errors doom the FAC.**

7                 i.    <u>The Court can consider Nordstrom's arguments</u>.

8          In the Motion, Nordstrom demonstrated that Plaintiffs' estimated fee range was

9    implausible because it (a) misrepresented Nordstrom's disclosures, (b) wrongly compared

10   Nordstrom's yearly "average" to a single year per comparator, (c) used contradictory allegations

11   about indirect compensation and (d) made an upward cost adjustment for *only* Nordstrom's fees.

12   Mot. 14-20. Plaintiffs' main response is to assert that these are factual disputes that preclude

13   dismissal. Mot. 11. Not so.

14         For example, there is no dispute about whether Plaintiffs are comparing a multiyear

15   average to a single year per comparator; obviously they are. Mot. 16-17. The parties' dispute is

16   about whether such a comparison is sufficient, which is a legal question courts routinely resolve

17   at this stage. *See*, *e.g.*, *Miller v. Pfizer Inc.*, No. 23-cv-00594, Dkt. 24 (W.D. Mich. Oct. 17, 2024)

18   (dismissing where plaintiffs attempted to compare a multiyear average against a single year for the

19   comparators). Nor are there any factual disputes about indirect compensation, because

20   Nordstrom's argument assumes the truth of what Plaintiffs *themselves* allege about the direct

21   compensation (and the lack of indirect compensation) to Alight. *See* FAC ¶¶ 65, 59. Pointing out

22   the inconsistencies in Plaintiffs' own allegations does not create a factual dispute. And regarding

23   fee adjustments, Plaintiffs admit that they made this adjustment for Nordstrom, Opp. 5 n.1, but say

24   nothing about their comparators. That is Nordstrom's point: Plaintiffs made an upward adjustment

25

26

1    for Nordstrom but not for the comparators. Thus, Plaintiffs cannot show any factual disagreement

2    that precludes dismissal.

3              ii.        <u>Plaintiffs' miscalculations and methodological errors require dismissal</u>.

4              First, Plaintiffs claim that it is appropriate to compare a multiyear average for the Plan

5    against a single year for each comparator. Opp. 12. Plaintiffs rely heavily on Nordstrom's 2023

6    disclosure for their fee estimate but point to no 2023 fee level from any comparator. As courts

7    have found, this "inconsistent methodology is especially problematic," defies common sense, and

8    is grounds for dismissal. *Cotter v. Matthews Int'l Corp.*, 2023 WL 9321285, at *5 (E.D. Wis Aug.

9    9, 2023); *see also Singh*, 123 F.4th 88, 95-96 (rejecting attempt to compare fees across five years

10   with fees from one year).

11             Next, Plaintiffs do not substantively address two arguments Nordstrom made in the

12   Motion: (1) that Plaintiffs inflate their estimate of Nordstrom's fees by adding trustee services

13   from Bank of New York Mellon ("BNYM") without making a similar adjustment for the other

14   comparators, Mot. 18-19, and (2) that Plaintiffs' allegations of Alight's indirect compensation are

15   implausible in light of their allegations that substantially all of Alights' compensation is direct,

16   Mot. 17-18. As to the first point, Plaintiffs say only that trustee services are "included in the

17   Bundled RKA number" and recite their conclusory allegation that "selected comparator plans . . .

18   include trustee fees." Opp. 5 n.1 (citing FAC ¶ 64). But, as Nordstrom explained, some of the

19   comparators' Forms 5500 also include amounts paid to third-party trustees for trustee services that

20   Plaintiff did not include in calculating fees. *See*, *e.g.*, Dkt. 31, Mandhania Decl. Ex. 7, Schedule

21   C, Part 2 (UPS's Form 5500 listing no trustee services for Voya but showing trustee services (code

22   21) for State Street Bank and BNYM). Plaintiffs also wholly fail to address Nordstrom's argument

23   that their allegations of Alight's indirect compensation (which Plaintiffs need in order to represent

24   Alight's compensation as excessive) are implausible in light of their own allegation that

25   substantially all of Alight's compensation is direct. Mot. 17-18.

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 7
Case No. 2:24-cv-01230-JNW

1    Finally, Plaintiffs concede that Nordstrom could not have used the confidential fee

2  disclosures Plaintiffs rely upon as negotiating leverage during the class period. Instead, Plaintiffs

3  say they are using those disclosures as evidence of what Nordstrom "could have received" if it

4  solicited bids. Opp. 12-13. But as Nordstrom has explained, Plaintiffs have not established that the

5  plans associated with those disclosures are similarly situated to Nordstrom, whether in size or in

6  services received. Thus, the disclosures are not probative of what Nordstrom could have received.

7        **B.    Plaintiffs' MAS Claim Fails**

8    To adequately plead a claim that Nordstrom's MAS was too expensive, Plaintiffs must

9  plead facts showing that Nordstrom participants (1) paid more for (2) equivalent service than other

10  plans' participants. The FAC does not do so.

11        **1.    Plaintiffs do not allege what participants paid for MAS.**

12    First, the FAC does not allege how much each participant actually paid for MAS services.

13  Instead, it discusses the *total* amount each plan paid for MAS services. Dkt. 29 ¶ 153. By that

14  metric, Nordstrom excelled; when compared to the seven plans Plaintiffs cherry-picked,

15  Nordstrom's total payment for MAS ranks third-lowest. *Id.* To get around that, Plaintiffs say the

16  relevant comparison is their "Calculated Fee (%) @Avg Account Balance." *Id.* But they provide

17  no explanation of how they calculated these averages. *Id.* And while Plaintiffs list the total assets

18  in each plan, they do not identify how many participants (or assets) were enrolled in MAS. Thus,

19  it is impossible to know the ***actual amount*** that any individual plan participant paid for MAS

20  services under Plaintiffs' methodology—let alone determine that Nordstrom's participants paid

21  too much.

22    Plaintiffs' sole response is that "ERISA case law is replete with cases alleging plausible

23  claims for relief in excessive fee cases where the asset-based fees are being compared percentage

24  to percentage between plans." Opp. at 15-16. In support, they cite a single case—*Coppell v.*

25  *SeaWorld*, 2024 WL 3086702 (S.D. Cal. Jan. 31, 2024)—whose holding they misrepresent. In

26

*Coppell*, the plaintiffs challenged their plan's choice to have "higher cost share classes," alleging that the "exact same mutual funds with the same attributes" could have been obtained with lower expense ratios. *Id.* at *13. There, it made sense to evaluate the share classes based on the expense ratio—the amount of plan assets at any given time is fixed, so switching to a lower expense ratio will (all else equal) yield a lower cost.

But here, the question is which of eight different plans, with *different amounts of assets*, paid more for MAS. The same "higher percentage means excessive" logic does not apply because, as Nordstrom explained in its opening brief, a MAS provider—like any vendor—has unavoidable fixed costs. Mot. at 26. Suppose, for example, that a MAS provider must obtain at least $100,000 in revenue to cover fixed costs. A plan with $10 million in MAS-enrolled assets will have to pay 1% of its assets to cover that cost; a plan with $100 million in MAS-enrolled assets will have to pay only 0.1%. The takeaway is not that the first plan should have negotiated a 0.1% fee; the vendor would not agree to a fee that does not offset its fixed costs. Plaintiffs do not respond to this basic economic point, which is fatal to their claim that Nordstrom's 0.6% fee—no matter what it translates to in dollars and cents—was too high.

In addition, Plaintiffs acknowledge that the FAC identifies a single year's fee for each of their comparators—and that year is not the same for each. Opp. at 21. Nordstrom explained that this is "fatally flawed," because Plaintiffs do not explain how they chose which year's fee to use from each plan. Mot. at 22-23. Plaintiffs do not respond to, and therefore concede, that point. Nordstrom also explained that a single year's comparison is not enough; Plaintiffs needed more data. *Id.* Plaintiffs claim that there is no requirement that they provide a yearly comparison, citing *Nagy*, 2024 WL 2808648. Opp. at 15. Again, that case is irrelevant: *Nagy* says nothing about whether "each year in the Class Period must be compared." *Id.* And as explained above, *supra* § II.A.3.ii, and in the Motion, Plaintiffs' claims do, in fact, require comparators for each year where they claim damages.

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 9
Case No. 2:24-cv-01230-JNW

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    **2.    Plaintiffs' MAS allegations do not include all services.**

2    Second, the FAC does not contain factual allegations that establish that Nordstrom and the

3    comparators received the same managed account services. Every comparator received services

4    from, and made payments to, only Financial Engines ("FE"). Mot. at 21. Nordstrom, by contrast,

5    received managed account services from both FE *and* Alight. *Id.* Even if the Court assumed—

6    despite insufficient factual allegations, *Id.* at 21-22—that FE provided the same services to all

7    eight plans, it would not follow that Nordstrom received the same MAS as the comparators; after

8    all, Alight might be adding some services of its own. *Id.* at 21.

9    Plaintiffs' response is that they have alleged that "the MA services **provided by Financial**

10    **Engines** to plans are materially the same whether provided directly by Financial Engines" or

11    through Alight. Opp. at 14-15 (emphasis added). But that does not address Nordstrom's point:

12    Since Plaintiffs are challenging what Nordstrom paid to FE *and* Alight, they need to examine

13    services provided by both FE *and* Alight. Otherwise, they are comparing *some* services received

14    by Nordstrom to *all* services received by their comparators, which is akin to complaining that a

15    shave and a haircut cost more than just a haircut. That flaw provides further basis to dismiss the

16    FAC.

17    **C.    Plaintiffs' Forfeiture Claims Fail**

18    Plaintiffs' forfeiture claims also fail. Plaintiffs do not address their failure to allege

19    "particularized facts or special circumstances" concerning their forfeiture claims, which is alone

20    dispositive. Mot. 26. Nor do they dispute their failure to allege that any provision of the Plan was

21    unlawful, which similarly extinguishes their claims. Mot. 26-27.

22    Plaintiffs also do not attempt to distinguish the growing body of caselaw that has rejected

23    identical forfeiture claims to those they press here. *See, e.g.*, *McManus v. Clorox Co.*, 2024 WL

24    4944363, at *6 (N.D. Cal. Nov. 1, 2024); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450,

25    at *9 (S.D. Cal. Sept. 19, 2024); *Hutchins v. HP Inc.*, 2024 WL 3049456, at *6 (N.D. Cal. June

26

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

1   17, 2024); *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330, at *4 (D.N.J. Dec. 19, 2024);

2   *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *5 (E.D. Va. Sept. 5, 2024).[2] Instead, Plaintiffs

3   argue that two outlier cases, *Rodriguez v. Intuit Inc.*, 2024 WL 3755367 (N.D. Cal. Aug. 12, 2024),

4   and *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024), "provide more

5   persuasive analyses." Opp. 20. They do not.

6       In *Rodriguez*, the court found plausible that Intuit violated ERISA by using forfeitures as

7   it did, because the plaintiff alleged that "the Plan did not authorize the specific decisions made by

8   Intuit with respect to the use of forfeited Matching Contributions." 2024 WL 3755367, at *6. Thus,

9   unlike these Plaintiffs, the *Rodriguez* plaintiff alleged that Intuit's conduct **violated** plan terms.

10  And *Perez-Cruet*'s "analysis of whether a decision to reduce employer contributions rather than

11  pay administrative costs is a violation of the duties of loyalty and prudence is conclusory."

12  *Hutchins*, 2024 WL 3049456, at *5 n.1; *see also*, *e.g.*, *Barragan*, 2024 WL 5165330, at *5 n.8

13  (criticizing *Perez-Cruet*'s forfeiture analysis). Nor does *Perez-Cruet* address many of the issues

14  Defendants raise in the Motion, including that the Plan required allocations to future contributions

15  and that funding a plan is a settlor function. Thus, *Perez-Cruet* is "not . . . persuasive." *Hutchins*,

16  2024 WL 3049456, at *5 n.1.

17      Plaintiffs' other arguments are similarly meritless. Plaintiffs say that the holding in *Naylor*,

18  that allocations were mandatory, does not apply here because *Naylor* had mandatory language.

19  Opp. 19. That is wrong: as Nordstrom explained in the Motion, the *Naylor* plan had language

20  similar to the language here. Mot. 24-25. Plaintiffs also insist that Nordstrom acted in a fiduciary

21

22      [2] Plaintiffs incorrectly say *McManus* and *Hutchins* rely on a "heightened . . . pleading standard"
23  applicable only in ESOP cases. Opp. 20. Instead, those courts relied on the Supreme Court's oft-
    cited admonition that the prudence inquiry "will necessarily be context specific." *Fifth Third*
24  *Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The context-specific inquiry applies beyond
    the ESOP context, so these cases are not cabined as Plaintiffs claim. *Hughes v. Nw. Univ.*, 595 U.S.
25  170, 177 (2022) (requiring context-specific allegations in non-ESOP case).

26
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 11
Case No. 2:24-cv-01230-JNW

1  capacity, but do not address *Naylor*'s conclusion that, when an employer adheres to plan terms

2  mandating the use of forfeitures, "it [does] so in its capacity as a 'settlor,' which does not give rise

3  to fiduciary duties under ERISA." 2024 WL 4112322, at *7 (E.D. Va. Sept. 5, 2024). Accordingly,

4  Plaintiffs' forfeiture claims fail.[3]

5         **D.**      **Plaintiffs' Prohibited Transactions and Monitoring Claims Fail**

6        Plaintiffs' prohibited transactions and monitoring claims also fail. Regarding their

7  prohibited transactions claim, Plaintiffs say that it is "common sense" that they have alleged a

8  transaction under 29 U.S.C. § 1106(b) because Nordstrom "withdrew money from the plan and

9  paid it to Nordstrom." Opp. 22. But common sense compels the opposite conclusion. *McManus v.*

10  *Clorox Co.*, 2024 WL 4944363, at *7 (N.D. Cal. Nov. 1, 2024) (rejecting argument that "Clorox

11  and the Plan comprise two sides of a transaction"); *see also Hutchins*, 737 F. Supp. 3d at 868

12  (rejecting similar prohibited transactions claim). As in *McManus* and *Hutchins*, the reallocation

13  *within the Plan* that Plaintiffs allege here is exactly the kind of "intra-plan transfer" that does not

14  constitute a "transaction" for § 1106(b) purposes.

15        As for their monitoring claims, Plaintiffs agree with Nordstrom that they are derivative.

16  Opp. 23. Thus, the monitoring claims should be dismissed for the reasons outlined above and in

17  Nordstrom's Motion.

18

19  [3] Plaintiffs make the surprising assertion that "Defendants . . . waived their right to contest the duty
20  of prudence claim with regard to forfeitures because they have not provided any arguments or
21  cases concerning this claim." Opp. 21. That is false. In the Motion, Defendants plainly addressed
both claims. *See*, *e.g.*, Mot. 23 (identifying reasons that Plaintiffs' "claim*s*" alleging breaches of
the "fiduciary duties of loyalty *and prudence*" failed) (emphasis added); *id.* at 26 (explaining that
22  allegations that "attack forfeiture allocations as per se *imprudent*" without alleging particularized
facts fail to state a claim) (emphasis added); *id.* (quoting *Hutchins* and noting that it is "'neither
23  disloyal *nor imprudent* under ERISA to fail to maximize pecuniary benefits' with respect to
administrative costs") (emphasis added, internal quotation marks omitted). And Plaintiffs
24  elsewhere acknowledge that the Motion attacks both the loyalty and prudence forfeiture claims,
25  admitting that Defendants challenge forfeiture "claim*s* of fiduciary breaches of *prudence* and
loyalty." Opp. 21 n.8 (emphasis added).

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 12
Case No. 2:24-cv-01230-JNW

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1    **III.    <u>CONCLUSION</u>**

2    The Court should grant the Motion and dismiss the FAC with prejudice.

3

4    Dated: January 24, 2025                FOSTER GARVEY PC

5
                                            By: */s/ Matthew Kelly*_____
6                                           Steven R. Peltin, WSBA #28862
                                            Matthew Kelly, WSBA #48050
7

8                                           MAYER BROWN LLP

9                                           By: */s/ Nancy Ross*
                                            Nancy Ross
10                                          E. Brantley Webb
                                            Ankur Mandhania
11                                          Jordan C. Hilton

12                                          *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 13
Case No. 2:24-cv-01230-JNW

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

1
## **CERTIFICATE OF COMPLIANCE**

2      The undersigned counsel of record for Defendants certifies that this memorandum contains

3  4,172 words, in compliance with the Local Civil Rules.

4

5      Dated: January 24, 2025                    FOSTER GARVEY PC

6

7                                          By: */s/ Matthew Kelly*
                                            Steven R. Peltin, WSBA #28862
8                                          Matthew Kelly, WSBA #48050

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 14
Case No. 2:24-cv-01230-JNW

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700